# EXHIBIT 1

Laurence May, Esq.
Peter Reiser, Esq.
Eric Aschkenasy, Esq.
EISEMAN LEVINE LEHRHAUPT &
KAKOYIANNIS, P.C.
805 Third Avenue, 10th Floor
New York, New York 10022
*Attorneys for the Non-Class Defendants*

Dennis J. Herman, Esq.
David W. Hall, Esq.
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street Suite 1800
San Francisco, CA. 94104
*Attorneys for the Non-Class Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SUNEDISON INC., *et al.*, | : | Case No. 16-10992 (SMB) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the estates of the Debtors, | : | |
| | : | Adversary Proceeding |
| Plaintiff, | : | No. 16-01257 |
| v. | : | |
| JUAN M. RODRIGUES BELTRAN, PYRAMID HOLDINGS, INC., ABHISHEK AGRAWAL, IRON WORKERS MID-SOUTH PENSION FUND ANTON S. BADRI, MITESH PATEL, COBALT PARTNERS, LP, COBALT PARTNERS II, LP COBALT OFFSHORE MASTER FUND, LP, COBALT KC PARTNERS, LP, OKLAHOMA FIREFIGHTERS SYSTEM, GLENVIEW CAPITAL PARTNERS, L.P., GLENVIEW INSTITUTIONAL PARTNERS, L.P., GLENVIEW CAPITAL MASTER FUND, LTD., GLENVIEW | : | |

1

| | |
|---|---|
| CAPITAL OPPORTUNITY FUND, L.P., GLENVIEW OFFSHORE OPPORTUNITY MASTER FUND LTD., OMEGAL CAPITAL INVESTORS, L.P., OMEGA CAPITAL PARTNERS L.P., OMEGA EQUITY INVESTORS L.P., OMEGA OVERSEAS PARTNERS, LTD., DINA HOROWITZ, KENNETH J. MOODIE, ROBERT KUNZ, ALEXANDER Y.USENKO, JULIE DULL, ERIC O'DAY, ROBERT LINTON, RICHARD A. WHEELER, JAMES GOLDEN, JERRY JONES, CHARLES BLOOM, SHARON BURNSTEIN, TERRAFORM GLOBAL, INC., DARCY CHURCH JOHN CHAMBLEE, KINGDON ASSOCIATES, KINGDON CREDIT MASTER FUND, L.P., KINGDON FAMILY PARTNERSHIP, L.P., M. KINGDON OFFSHORE MASTER FUND, L.P. CANYON CAPITAL ADVISORS LLC CANYON BALANCED MASTER FUND,LTD., CANYON CAQITAL ARBITRAGE MASTER FUND, LTD., CANON-GRF MASTER FUND II, L.P., CANYON VALUE REALIZATION FUND L.P., CANYON VALUE REALIZATION MASTER FUND, L.P., PERMAL CANYON IO LTD., VMT II, LLC, SIMON FRASER, JASON ALDRIDGE, KEARNY INVESTORS S.A R.L, POWELL INVESTORS L.P. and POWELL INVESTORS L.P. and POWERLL INVESTORS II LIMITED PARTNERSHIP | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : |

**RESPONSE OF THE NON-CLASS DEFENDANTS TO THE DEBTORS' REQUEST FOR RELIEF PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 362, BANKRUPTCY RULE 4001 AND LOCAL BANKRUPTCY RULES 4001-1 AND 9019-1 (I) GRANTING LIMITED RELIEF FROM AUTOMATIC STAY, (II) COMPELLING RELEVANT PARTIES TO PARTICIPATE IN MEDIATION, AND (III) TEMPORARILY EXTENDING STAY WITH RESPECT TO DEBTORS' CURRENT AND FORMER DIRECTORS AND OFFICERS PENDING THE OUTCOME OF MEDIATION**

## PRELIMINARY STATEMENT

The Non-Class Defendants[1] submit this response in opposition to the "request" by the Debtors ( the "Debtors' Request") to compel the Non-Class Defendants to participate in a partial mediation with some, but not all, of the defendants in their cases, and to stay all activity in those cases while the mediation is pending. There is no authority to support the requested relief, nor is that relief likely to result in a settlement of the claims under the restrictions that the Debtors have unilaterally imposed on their proposed mediation.

The Debtors, without proper notice or motion, have requested this Court to force participation in a purported global mediation of all the non-bankruptcy claims that have been, or may be, asserted based on the facts, transactions and circumstances that in large measure led to this bankruptcy proceeding. There is no rule, statute or authority that supports the Debtors' Request, which is directed primarily at proceedings and parties that are not before this Court. And, even if there were a basis for the Debtors' Request, the mediation that the Debtors seek to compel is doomed to fail because: (i) they exclude – without acknowledgment, let alone explanation – the banks that underwrote or served as placement agents for the misleading offerings that lie at the heart of the Non-Class Defendants' claims (and whose contribution to settlement will certainly be required in light of the limited insurance proceeds available); and (ii) by requesting a stay of actions that are still in their nascent stages, the Debtors have effectively

---

[1] The Non-Class Defendants are as defined in their Memorandum of Law In Opposition to Plaintiffs' Motion for Declaration to Enforce the Automatic Stay Against Litigation Involving Certain Current and Former Officers and Directors of the Debtors ( Dkt. No.16 in Adversary Proceeding 16-01257, (the "Memorandum") . Capitalized terms not otherwise defined herein are as defined in the Memorandum. As set forth therein, the Non-Class Defendants are plaintiffs in six suits which have been transferred along with several other cases by order of the Judicial Panel on Multi-District Litigation to an MDL proceeding before the Hon. P. Kevin Castel. The Non-Class Defendants' cases were originally commenced in California state court and removed to the United States District Court for the Northern District of California, from where they were transferred to the Southern District of New York by the JPML.

3

eliminated any incentive for defendants to meaningfully confront their potential liability in the actions.

While the Non-Class Defendants are fully prepared to, at an appropriate time, participate in a global mediation convened with the voluntary participation of all the relevant parties, they oppose the Debtors' Request to stay their actions to force a partial mediation involving only some of the parties and claims necessary to effect a settlement. For the reasons set forth below, the Debtors' Request should be denied.

**I**

**THE BANKRPUTCY COURT LACKS THE AUTHORITY TO (I) DIRECT PARTIES TO LITIGATION PENDING IN OTHER COURTS TO MEDIATE THEIR DISPUTES OR (II) ENTER AN ORDER ADVISING OTHER COURTS ON HOW THEY SHOULD ADMINISTER CASES PENDING BEFORE THEM**

The Debtors ask this Court to enter an order directing the Non-Class Defendants, the issuers of the D&O Policies, some of the defendants in the Non-Class Defendants' actions pending before Judge Castel, and others, to immediately proceed to mediation in the MDL Actions, and to stay all activity in the MDL Actions pending the mediation.[2] Respectfully, this Court does not have the authority to grant the Debtors' Request, a proposition with which the Debtors implicitly agree. The Debtors admit that any order that the Court enters is conditional and subject to Judge Castel entering an identical order. If the District Court decides not to enter its own order then the order of this Court would be of no force and effect. The same, of course, cannot be said of an order of the District Court, that is, if Judge Castel directed the parties in the MDL Actions to mediate, he could do so *without* a concurrent order of this Court. Thus, the

---

[2] Although the Debtors would have the MDL Actions stayed as against the underwriter defendants (identified in the Memorandum at 4) they do not include these defendants as participants in the mediation.

4

Debtors are actually seeking an advisory order from this Court, something we submit it should decline to enter.

To the extent that the Debtors maintain that this Court has the authority to direct the parties in the MDL Actions to mediate those actions independent of an order of the District Court directing mediation, they are incorrect. The Debtors rely primarily on *In re Atl. Pipe Corp.*, 304 F.3d 135 (1st Cir. 2002), and Judge Gerber's on the record order in *In re Chemtura Corp.*, Case No. 09-11233 (REG) (Bankr. S.D.N.Y. January 25, 2011),[3] which is based on the holdings in *Atlantic Pipe, supra*, for their argument that the Court has "authority to order participation in mediation." Debtors' Request ¶16. The Non-Class Defendants do not dispute this statement as a general proposition, however, we submit that a court does not have the authority to direct mediation in a litigation not pending before it; and the cases cited by the Debtors are not to the contrary.

According to *In re Atl. Pipe Corp.,* and *In re Chemtura,* (and the Debtors for that matter, *see* Debtors' Request ¶16), the authority to direct a mediation is sourced in the inherent authority of a court to manage its docket or by a statute or a general or local rule. As to the latter, the Debtors cite to §105(d) of the Bankruptcy Code and §1.3 of General Order M-360 of the United States Bankruptcy Court for the Southern District of New York. None of these sources, however, grant a court authority to enter orders directing mediation in matters pending in **other** courts. Indeed to do so would directly interfere with the inherent authority of another court to manage its docket, while effectively seeking to usurp the authority of the judge sitting in that case to exercise his or her own discretion with respect to the administration of matters before it.

---

[3] A copy of the transcript of Judge Gerber's ruling (the "Chemtura Order") was attached as Exhibit C to the Debtors' Request.

In *In re Atl. Pipe Corporation, supra*, the First Circuit set the boundaries of a court's "inherent authority," finding that it derived from the right to manage the cases before it. "District Courts have substantial inherent power to manage and control their calendars." 304 F.3d. at 143. These powers, however, "are not infinite" and one of the limits is that the power be used "in a way reasonably suited to the enhancement of the court's processes…" *Id.* The Debtors' Request asks for an order which affects the administration and disposition of matters ***not*** before this Court. Indeed, any order would amount to nothing more than an advisory opinion from this Court as to how Judge Castel should administer the cases pending before him. There is no "inherent authority" for this Court to issue such an order.

Indeed, it appears plain from the timing of the Debtors' Request that their intent is to seek just such an advisory ruling from this Court on December 6, which they can then bring to Judge Castel's attention prior to the initial case management conference set to take place in the MDL Actions on December 19. There is no other explanation for the Debtors' attempt to couch their request as a "Response" to the Committee's Motion, or to file the request on the eve of Thanksgiving and in a manner calculated to give the parties to the MDL Actions only a few days to respond. Inasmuch as the actions they seek to mediate and stay are pending primarily before Judge Castel, the Debtors' Request should have been presented first to that Court, particularly insofar as it is designed to obtain an advisory opinion that they hope will have persuasive force with another court.

A second source of authority cited by the Debtors as a basis for an order directing mediation in the MDL Actions is §105(d) of the Bankruptcy Code. As with inherent authority, this statute is similarly tied to matters pending before a Bankruptcy Court. The section states:

6

> (d) The court on its own motion or on request of a party-in-interest
>
> > (1) shall hold such status conferences are necessary to further the expeditious and economical resolution of the case; and
> >
> > (2) unless inconsistent with another division of this title or with applicable federal rules of bankruptcy procedure, may issue an order at such conference prescribing such limitations and conditions as a court deems appropriate to insure that the case is handled expeditiously and economically…

Section 105(d) is the statutory analogue to inherent authority. By its very language it is limited to insuring the expeditious and economical resolution of "the case" in which a §105(d) order is entered.

The Debtors have not even attempted to show that an order from this Court requesting or advising Judge Castel that it believes that the actions pending before him should be stayed and ordered to mediation (assuming, *arguendo*, it did hold such a belief) is necessary or appropriate to "insure that [this] case is handled expeditiously and economically." Indeed, as previously shown in the Non-Class Defendants' response to the underlying Commitee Motion that the Debtors purport to "respond" to, the Debtors and their estates have no property interest in the proceeds of the D&O Policies, such that whether and to whom those proceeds are distributed has absolutely no bearing on any of the issues pending in this case. Simply stated, §105 does not "'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *New England Dairies, Inc v. Dairy Mart Convenience Stores, Inc (In re Dairy Mart Convenience Stores, Inc).*, 351 F.2d 86, 92 (2d Cir. 2003) (quoting *United States v. Sutton,* 786 F.3d 1305, 1308 (5th Cir. 1986)).[4]

---

[4] Section 1.3 of this Court's General Order M-390 provides that a contested matter, adversary proceeding or other dispute can be the subject of mediation, but necessarily the matter in dispute must be before the Court. The General Order is not authority for directing mediation of disputes being adjudicated in another Court.

In *In re Chemtura Corp.*, Judge Gerber ordered an insurer to participate in mediation in a contested matter pending in the Bankruptcy Court. *See Chemtura* Order at 62-63. The Court relied upon *Atl. Pipe* in concluding that it had the authority to direct the insurer to participate in mediation and the Court described in some detail the role that the insurer had already played in the contested matter. Unlike the request advanced by the Debtors in this case, Judge Gerber did not order parties to a matter not before him to mediate their disputes. To the contrary, the *only* issue he addressed was whether he had jurisdiction to compel a single recalcitrant insurer to attend and participate in a mediation that the parties to the bankruptcy and other proceedings had already voluntarily agreed to conduct. *Id.* at 62:21-63:6. Moreover, Judge Gerber rested his decision compelling the insurer to mediate on the fact that there were significant coverage disputes under the policies that "would have a dramatic effect on estate interests," as well as the fact that the insurer had filed claims against the estate predicated on those policies. *Id.* at 64-65. Nothing in Judge Gerber's ruling from the bench in that case remotely supports the exercise of inherent authority here to compel the *parties* to other proceedings to mediate their claims under the terms and conditions established by the Debtors in concert with the Committee.[5]

The extraordinary nature of the relief sought by the Debtors is aptly illustrated by the fact that none of the MDL Actions could be involuntarily prosecuted in this Court. If one of those actions *had* been commenced in the Bankruptcy Court it would have been subject to a mandatory withdrawal of the reference under 28 U.S.C. §158(d), as the MDL Actions all involve "'substantial and material considerations of non-Bankruptcy Code federal statutes [e.g. the Securities Act of 1933]…for the resolution of the proceeding'". *In re Ionosphere Clubs.* 922

---

[5] To the extent the parties to the MDL Actions agree to mediate, *Chemtura* does provide authority for this Court to order all of the D&O Insurers to attend and participate in good faith. If *that* is the purpose behind the Debtors' Request, they are putting the cart before the horse. They should first obtain an agreement from all parties to participate (or first ask Judge Castel to compel them to do so, as stated above), and *then* seek an order from this Court compelling attendance by any insurers who refuse to participate.

F.2d 984, 995 (2d Cir. 1990). Inasmuch as the Bankruptcy Code provides that parties to such litigation may not be compelled to prosecute or defend their claims in the Bankruptcy Court, it appears beyond dispute that the Bankruptcy Court has no power to control the conduct of those actions from afar by ordering the parties to mediate their disputes and staying their cases in the interim.

## II

### A MEDIATION WILL NOT SUCCEED WITHOUT THE WILLING PARTICIPATION OF ALL PARTIES, INCLUDING THE BANKS THAT SOLD SECURITIES IN MISLEADING OFFERINGS

The Non-Class Defendants have brought claims under the Securities Act of 1933 and have asserted several state law causes of action arising from four public and private stock offerings by SunEdison Inc. ("SUNE") and/or its captive subsidiary, Terraform Global, Inc. ("GLBL").[6] These claims were brought against the issuer of the underlying securities, their officers and directors, and the banks that underwrote or acted as the placement agent for the offerings. The Non-Class Defendants' claims are based on alleged misrepresentations and omissions concerning SUNE's financial strength and solvency (and its internal controls over such matters), in particular with regard to its borrowing arrangements, liquidity and access to capital and its ability to fund the development of projects needed to realize its aggressive growth forecasts for it and its two yieldcos, including GLBL. All of these claims sound in theories of strict liability, negligence or breach of contract; none sound in fraud or otherwise require proof that a defendant had actual knowledge or recklessly disregarded that the statements in the prospectuses, registration statements or other offering documents were false or would be misleading to investors due to the omission of material information.

---

[6] The claims against SUNE were automatically stayed when this proceeding was commenced. Those claims continue to be prosecuted against SUNE'S D&Os and the banks.

The banks that underwrote or served as placement agents for these offerings are critical parties for the litigation of – and for any attempt to settle – these claims. For example, certain of the Non-Class Defendants assert claims arising from a preferred stock offering that SUNE completed on August 18, 2015, just seven days after it had taken out a $169 million loan with Goldman Sachs – the co-lead underwriter for the offering – at an exorbitant 15% effective interest rate (the "Goldman Loan"). The loan proceeds were needed by SUNE to cure the breach of the debt covenants in another $410 million term loan that SUNE had taken out in January to help fund its $2.4 billion acquisition of First Wind LLC, a key part of its renewable energy growth platform. Neither the existence nor terms of the Goldman Loan, nor the breach of the First Wind borrowing agreement, nor SUNE's inability to cure that breach absent the high-interest borrowing from its underwriter, were disclosed in the preferred offering prospectus and registration statement, and the Non-Class Defendants allege they would not have purchased those securities if those matters had been disclosed. The other offerings at issue in the Non-Class Defendants' actions were similarly completed with the assistance of banks who both underwrote (or served as placement agents for) the offering and loaned money or established credit facilities to provide the capital for SUNE to acquire and develop the renewable energy projects it needed to support forecast growth and dividend payments. Those offerings were similarly marketed and sold to investors through misleading statements and material omissions regarding SUNE's liquidity and internal controls, the ability of its yieldcos to achieve their growth forecasts, and the nature and existence of risks to their ability to do so.

Despite the integral participation of the banks in these claims, the Debtors propose to halt the Non-Class Defendants' actions to force them to attend and participate in a mediation that does not include the banks. Not only do the Debtors propose to exclude the banks from the

10

mediation, they do not bother to explain why – or even to acknowledge to the Court that they are doing so. Instead, the Debtors cleverly exclude the 18 banks that have been named as defendants in the Non-Class Defendants' actions from the list of parties they want to force to mediation (Debtors' Request ¶2), and then, much later, casually refer to their proposal as one "to have a comprehensive mediation process with all other *relevant* parties at the table" (Debtors' Request ¶13, emphasis ours), without once bothering to explain why the banks – all of whom have represented to various federal courts that they are entitled to indemnification from the Debtors and whose indemnification rights were a cornerstone of all of the defendants' arguments for removal of the Non-Class Defendants' actions from California state court and their subsequent transfer to the Southern District of New York – are not "relevant" parties who should be at the table when and if settlement is to be discussed.[7] And this despite their recognition that "to achieve the[] benefits [of mediation], ***all relevant parties must participate***" and notwithstanding their (erroneous) contentions that the proposed mediation will avoid "piecemeal" litigation, facilitate "the prompt and cost-effective resolution of" the MDL Actions, and thereby "minimize the administrative burdens on this Court and the District Court" through the early termination of claims. Debtors' Request ¶¶4, 13.

The simple fact is that, without the participation of and contribution from all of the parties to the MDL Actions, including the banks, a mediation is unlikely to be successful. The benefits that the Debtors assert will flow from the forced mediation they have proposed are illusory. The Non-Class Defendants' claims will continue to be litigated, against the banks for

---

[7] Neither do the Debtors explain why "SUNE's Tranche B Lenders and/or second lien creditors" – that presumably includes many of the banks who underwrote or served as placement agents for the offerings at issue in the Non-Class Defendants' actions – should be allowed to participate in the mediation but only if they "assert[] claims against SUNE directors and officers before the Mediation/Stay Orders are entered". *See* Debtors' Request ¶2. Thus, the Debtors appear to take the curious, and untenable, position that the banks should be entitled to mediate ***their*** claims against the D&Os so as to obtain a share of the D&O insurance policy proceeds, but should ***not*** be required to mediate the claims that have been asserted ***against*** them jointly and severally with the D&Os, and that are similarly covered by the D&O Policies.

11

certain and likely against the D&Os and yieldcos as well due to the difficulty of achieving settlement without all relevant parties at the table and ready and prepared to negotiate. If the Debtors and the other parties are truly interested in participating in a global mediation that is voluntarily attended by all of the parties, including the banks, then the Non-Class Defendants are ready and willing to participate in good faith to determine whether their actions can be resolved at this juncture. Without the willing participation of all parties, however, mediation is futile and the Debtors' request to compel one should be denied.

### III

**STAYING THE ACTIONS PENDING MEDIATION WILL FURTHER UNDERMINE THE CHANCES FOR A SUCCESSFUL OUTCOME**

Even if a mediation involving all the parties is convened, the underlying actions should not be stayed while it is proceeding.[8] Initially, and as previously explained, this Court does not have the power to stay the MDL Actions, which are not before it. *Supra* §I. Even if it did have jurisdiction over those actions, a stay is unnecessary and would be counterproductive to mediation, because all of the MDL Actions are at a very early stage of the proceedings, where mediation can be efficiently conducted without the need for halting the progress of the actions. No substantive rulings on any of the issues raised in any of the actions have been rendered, or – with the sole exception of some of the Non-Class Defendants' claims – even been briefed.[9] Without the pressure of ongoing litigation or the advancement of the claims at issue, parties on

---

[8] And, of course, if the banks are not required to mediate, there is no basis whatsoever for staying the Non-Class Defendants' actions against them.

[9] The Non-Class Defendants have been attempting, for months, to bring the substantive issues involved in their and other related actions to a head. Over the objections of the principal Debtor (before this bankruptcy was commenced) and its yieldcos and their D&Os, the Non-Class Defendants sought and obtained orders from the Northern District of California requiring dispositive briefs to be prepared and filed in their actions. The result is that the merits of claims arising from the SUNE Preferred offering have been fully briefed and pending since July, and dispositive motions involving claims arising from the three GLBL offerings were filed in August. However, due to the extensive procedural fencing by defendants and others that ultimately resulted in the transfer of the cases to Judge Castel in this District, the SUNE claims remain pending without a ruling, and briefing on the GLBL claims has been indefinitely suspended.

both sides will be able to avoid confronting the weaknesses in their positions or the strength of their adversaries' contentions, and therefore will have much less incentive to compromise. It is one thing to prepare a confidential brief for a mediator's eyes, and quite another to prepare a litigation brief for your adversary to respond to and a judge to rule upon. Only if the cases continue to be litigated does mediation have a realistic chance for success.

The need for the actions to continue is even stronger here, where the Debtors seek to convene a global mediation for the apparent purpose of divvying up the D&O Policy proceeds among the Committee and the parties to more than 30 actions involving a wide variety of claims and allegations. Presumably, extensive discussions would occur during such a mediation regarding the relevant strength of the various claims that have been alleged, for purposes of convincing adversaries that certain claims are, or are not, worthy of a greater percentage of the funds available. If all of the actions remain stayed, the parties will have little incentive to compromise, and limited ability to respond to arguments regarding the relative value of their claims or their relative chances of success on the merits. And, to the extent that any of the actions reach a stage where costs are likely to dramatically increase, the parties, with the assistance of the mediator, can revisit the need to stay the action at that time.

The only argument the Debtors advance in favor of a stay is their desire to conserve policy proceeds for settlement. But this conclusory argument ignores both the early stage of the cases – none of the actions are in discovery where litigation costs can escalate dramatically – and the limited additional expense that would be required to simultaneously prepare dispositive pleading motions and mediation briefs. Both will require a detailed analysis of the facts alleged and the legal theories supporting the claims, and there is little reason to suspect that the expense of preparing dispositive motion briefs while mediation is ongoing will significantly increase the

overall expenditure of funds. Thus, the Debtors (and the Committee) have failed to carry their burden of showing good cause to delay the progress of the MDL Actions. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 96 (2d Cir. 2012) (parties seeking a stay bear the burden of showing good cause to delay the progress of the case); *followed by Hicks v. T.L. Cannon Corp.*, 2014 U.S. Dist. LEXIS 144210, at *98-*99 (W.D.N.Y. Oct. 8, 2014) (rejecting defendants' request to stay case pending mediation over plaintiffs' objections, on grounds that court-ordered mediation is intended to take place "in tandem with the ordinary progress of a case and is designed not to introduce delay").

## IV

## CONCLUSION

The Debtors' Request to order a partial mediation of the claims at issue in the MDL Actions and stay those proceedings during its pendency lacks legal authority and is unlikely to result in a global settlement of the claims. The Debtors' Request merely invites delay for no good purpose, and should be denied in its entirety.

Dated: December 1, 2016

                                                EISEMAN LEVINE LEHRHAUPT
                                                & KAKOYIANNIS, P.C.

                                                     /s/ Laurence May
                                                Laurence May, Esq.
                                                Peter Reiser, Esq.
                                                Eric Aschkenasy, Esq.

                                                805 Third Avenue, 10th Floor
                                                New York, New York 10022
                                                212- 752-1000
                                                *Attorneys for the Non-Class Defendants*

                                                     -and-

                ROBBINS GELLER RUDMAN & DOWD LLP
                    Dennis J. Herman, Esq.
                    David W. Hall, Esq.

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA. 94104
415-288-4545
*Attorneys for the Non-Class Defendants*