

| | | |
|---|---|---|
| SIDLEY AUSTIN LLP<br>555 CALIFORNIA STREET<br>SUITE 2000<br>SAN FRANCISCO, CA  94104<br>+1 415 772 1200<br>+1 415 772 7400 FAX<br><br>sbrody@sidley.com<br>+1 415 772 1279 | BEIJING<br>BOSTON<br>BRUSSELS<br>CENTURY CITY<br>CHICAGO<br>DALLAS<br>GENEVA | HONG KONG<br>HOUSTON<br>LONDON<br>LOS ANGELES<br>MUNICH<br>NEW YORK<br>PALO ALTO | SAN FRANCISCO<br>SHANGHAI<br>SINGAPORE<br>SYDNEY<br>TOKYO<br>WASHINGTON, D.C. |
| | FOUNDED 1866 | | |

February 6, 2017

<u>Via ECF</u>

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

   Re:  In re: SunEdison, Inc., Securities Litigation, No. 1:16-md-02742-PKC – Pre-Motion Letter for *Church v. Chatila, et al.*, No. 1:16-cv-07962-PKC

Dear Judge Castel:

  We represent defendants Ahmad Chatila and Brian Wuebbels in *Church v. SunEdison, Inc.,* No. 1:16-cv-07962.  In accordance with the Court's direction at the December 19, 2016 status conference, the Court's subsequent order dated December 19, 2016 (Dkt. No. 94), and the Court's Individual Practices, we respectfully submit this pre-motion letter setting forth the contemplated grounds for proposed motions to dismiss the complaint in this action.

  The *Church* case is not brought by SunEdison shareholders, but by the purchasers of Vivint securities.  In July 2015, SunEdison entered into an agreement to acquire Vivint.  Plaintiffs in *Church* purport to bring claims pursuant to Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 on behalf of a class of those who purchased Vivint securities between the July 20, 2015, announcement that SunEdison intended to acquire Vivint and the March 8, 2016 announcement that Vivint had terminated the deal.  Plaintiffs, in an attempt to piggyback on the claims by SunEdison shareholders, allege that misstatements by SunEdison artificially inflated Vivint's share price and attribute declines in Vivint's share price to alleged corrective disclosures about SunEdison's liquidity and internal controls.

  As a threshold matter, there is a serious question as to whether Plaintiffs have standing to assert claims based on statements by an issuer whose securities they never purchased.  *Ontario Pub. Serv. Emps' Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004) ("Stockholders do not have standing to sue under Section 10(b) and Rule 10b-5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase").



Hon. P. Kevin Castel
February 6, 2017
Page 2

Plaintiffs' claims fail for three additional reasons: (1) the Complaint does not allege an actionable misstatement or omission; (2) the allegations of scienter are deficient; and (3) Plaintiffs' allegations of causation are so attenuated or implausible that they may be properly rejected on a motion to dismiss.

### A. Plaintiffs Do Not Allege An Actionable Misstatement Or Omission.

#### 1. Plaintiffs Challenge Inactionable Forward-Looking Statements, Statements of Opinion, and Statements of General Corporate Optimism.

The alleged false statements that Plaintiffs challenge are not actionable because they are: (1) forward-looking statements protected by the PSLRA's safe harbors, 15 U.S.C. § 78u-5 (*e.g.* Com. ¶¶ 257, 266); (2) statements of opinion absent allegations that Defendants did not subjectively hold the opinions (*e.g.* Com. ¶¶247, 248, 252, 279), *see Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015); or (3) general statements of corporate optimism that are immaterial as a matter of law (*e.g.* Com. ¶ 272).

#### 2. Allegations That Purport To Identify Specific Misstatements And Omissions Do Not Withstand Scrutiny.

Plaintiffs challenge a long list of statements and omissions but none of their allegations withstands scrutiny. Plaintiffs' core allegations – that the Defendants misstated or omitted information about SunEdison's liquidity, loans, trends, and internal controls – are deficient for reasons described below.

<u>Liquidity</u>: Plaintiffs challenge the following statement in SunEdison's 2014 10-K and its first two 2015 10-Qs: "We believe our liquidity will be sufficient to support our operations for the next twelve months, although no assurances can be made if significant adverse events occur, or if we are unable to access project capital needed to execute our business plan." *E.g.*, Com. ¶¶ 247, 248, 249. These allegations fail in at least three ways. ***First***, the challenged statements were couched as management's opinions, and Plaintiffs fail to plead facts showing that Defendants did not subjectively hold those opinions. *Omnicare*, 135 S. Ct. at 1325-27. The fact that liquidity ultimately provide inadequate in 2016 does not support the contention that Defendants' statements were false when made; this is particularly true given the significant events that altered SunEdison's business position over the course of 2015. ***Second***, SunEdison disclosed the facts relating to liquidity in its financial statements; armed with that information, investors could form their own opinions about what the Company's financial position presaged for its future operations. ***Third***, the facts Plaintiffs allege show that some of the challenged representations were objectively *true*: Through at least Q1 2015, SunEdison did in fact have sufficient liquidity to support operations for the next 12 months.



Hon. P. Kevin Castel
February 6, 2017
Page 3

<u>Margin Loan and August 11 Loan</u>:  Plaintiffs challenge statements in SunEdison's August 6, 2015 Form 10-Q on the basis that Defendants failed to disclose (1) an August 7, 2015 margin call on a $410 million loan (the Margin Loan), and (2) a $169 million term loan agreement that SunEdison entered into on August 11, 2015 (the August 11 Loan).  The defect in this claim is obvious.  Even if they had a duty to do so, Defendants could not have disclosed, on August 6, 2015, events that did not occur until August 7 and August 11, 2015.  Defendants also had no duty to disclose the loans in documents related to SunEdison's August 18, 2015 preferred stock offering.  A duty to update prior quarterly filings arises only when the omitted facts represent an "extreme departure from the range of results which could be anticipated based on currently available information."  Plaintiffs allege no fact to show that duty existed in this situation.  *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1210 (1st Cir. 1996); *see also, e.g., In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at ** 6-8 (S.D.N.Y. Mar. 29, 2016); *Stadnick v. Vivint Solar, Inc.*, 2015 WL 8492757, at *11-13 (S.D.N.Y. Dec. 12, 2015).

<u>Loan Classification</u>:  Plaintiffs allege that Defendants defrauded investors by means of a footnote that appears in SunEdison's second-quarter 2015 Forms 10-Q.  The footnote is linked to two line items in a chart of debts, and it states that the footnoted debts are "non-recourse to SunEdison."  But Plaintiffs do not and cannot dispute that in the narrative portions of the Forms 10-Q that more fully describe these specific debts, SunEdison accurately described the debts in a way that made clear that the loans themselves were not recourse to SunEdison, but that SunEdison had, by separate agreement committed to guaranty those loans.  Given the accurate narrative disclosures – which the market digested and understood – Plaintiffs have not alleged facts showing a materially misleading representation.  And it is beyond doubt that Plaintiffs fail to plead facts supporting a cogent and compelling inference of scienter:  Defendants seeking to mislead the market about these debts would not at the same time provide truthful descriptions of them in the very same documents containing the alleged misstatements.

<u>Trends</u>:  Plaintiffs maintain that in connection with each Form 10-Q filed within the class period, Defendants had and breached a duty under Item 303 of Regulation S-K to report as a "trend" the purported fact that SunEdison had a practice of paying vendors late.  With this claim, Plaintiffs seek to push Item 303 far beyond its accepted bounds.  To the extent Plaintiffs characterize SunEdison's payment practices themselves as a "trend," the claim fails because issuers are not required to report internal business strategies – as opposed to macroeconomic, industry-wide or other extrinsic developments – as Item 303 trends.  *See In re Canandaigua Sec. Litig.*, 944 F. Supp 1202, 1211-12 (S.D.N.Y. 1996).  To the extent Plaintiffs claim that the alleged underlying liquidity constraint constituted a "trend," the claim fails too:  SunEdison set forth its liquidity position in detail in its financial statements, and Item 303 does not require an issuer to supplement objective reports with pejorative characterizations of its own business.  *See Lopez v. Ctpartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 35 (S.D.N.Y. 2016).  Finally, Item 303 requires that the "trend" be "known," and Plaintiffs have not sufficiently alleged that Defendants had actual knowledge of any adverse trend at the time the challenged statements



Hon. P. Kevin Castel
February 6, 2017
Page 4

were made.[1]  See 17 C.F.R. § 229.303.  For these reasons, alleged false statements and omission related to Item 303 do not support Plaintiffs' claims.

Internal Controls:  On March 16, 2016 – after Vivint terminated the merger – Sun Edison announced that it had identified material weaknesses in its internal controls over financial reporting, primarily resulting from deficient information technology controls.  Plaintiffs allege in light of this that Defendants' certification of the Company's "disclosure controls and procedures" in prior 10-Qs was deliberately false or misleading.  This theory is flawed for two reasons.  **First**, both this Court and the Second Circuit have recognized that neither financial statement irregularities nor internal control weaknesses are sufficient in themselves to support a Section 10(b) claim, even when later acknowledged by the company.  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 294-99 (S.D.N.Y. 2014) (citing authorities), *aff'd*, 616 Fed. App'x. 442, 445-46 (2d Cir. 2015).  That principle is particularly applicable in this case, where Plaintiffs do not purport to link the alleged internal control issues with any factual inaccuracies in SunEdison's financial reporting.  Indeed, the Audit Committee ultimately found no material misstatements in the Company's financial statements.  **Second**, because Plaintiffs allege only general affirmations that the Company's internal controls were adequate, they have not sufficiently tied the challenged statement to particular internal control weaknesses later announced.  *Carpenters Pension Trust Fund of St. Louis v. Barclays*, 750 F.3d 227, 235-36 (2d Cir. 2014).

### 3. Plaintiffs Largely Ignore SunEdison's Most Significant Disclosures.

Plaintiffs' core theory is that Vivint's share price was inflated on July 20, 2015, because Defendants misrepresented SunEdison's liquidity.  Yet Plaintiffs assert their claims without reference to the most basic sources of information about SunEdison's liquidity – SunEdison's financial statements.  Plaintiffs do not dispute that SunEdison accurately disclosed, on the one side, its revenue and other sources of available cash, and on the other side, its debts to lenders and trade creditors and the terms on which it was obligated to repay those debts.  Instead, Plaintiffs emphasize Defendants' subjective statements that they were "comfortable" with SunEdison's liquidity (Com. ¶ 57), or that the Company's position was "solid" (Com. ¶ 80).  These allegations do little more than attack management's optimistic characterization of objectively reported facts.  Claims of this sort have long been held inadequate.  *E.g., Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *see also, e.g.*, *Solow v. Citigroup, Inc.*, 2012 WL 1813277, at *4 (S.D.N.Y. May 18, 2012) ("[Defendant] was not obligated to characterize its performance or future outlook in negative terms, speculate on future negative results or paint themselves in the most unflattering light possible"), *aff'd*, 507 F. App'x 81 (2d Cir. 2013).

---

[1] We note that there is a Petition for a Writ of Certiorari currently pending before the Supreme Court on the question of whether Item 303 creates a duty to disclose that is actionable under 10(b).  *See* Petition for a Writ of Certiorari, *Leidos, Inc. v. Ind. Pub. Ret. Sys.*, No. 16-581 (U.S. Oct. 31, 2016).



Hon. P. Kevin Castel
February 6, 2017
Page 5

### B.   Plaintiffs' Allegations of Scienter Do Not Suffice.

Plaintiffs have not alleged facts supporting the required cogent and compelling inference of deliberate fraud. Instead, Plaintiffs rely heavily on media pieces and confidential witness statements that cannot suffice. The media pieces are stated in hyperbole and rely on recycled statements that do not meet the legal standards to support Plaintiffs' claims. *E.g*., Com. ¶ 176. *See, e.g., Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); *Ford v. Voxx Internat'l Corp*., 2016 WL 3982466, at *5 (E.D.N.Y. July 22, 2016). As for the confidential witnesses, their hyperbole also undermines Plaintiffs' efforts. For example, Plaintiffs' witnesses are alleged to have said, that SunEdison "never had cash," that "'even the janitor' knew SunEdison didn't have sufficient cash on hand," and that SunEdison "owed everyone tons of money and was always late." Com ¶ 87. Such flippancies fall far short of showing that any challenged statements were false, much less that Defendants consciously misled the market. Because neither the media pieces nor the confidential witness statements satisfy the high standard for allegations of scienter, Plaintiffs Complaint should be dismissed. And plaintiffs do not – because they cannot – allege that either Chatila or Wuebbels sold any SunEdison stock during the class period to support an inference of scienter; in fact, both personally *increased* their SunEdison holdings over the course of the period.[2]

### C.   Plaintiffs Rely On Attenuated And Improbable Allegations Of Reliance And Causation.

#### 1.   Plaintiffs Disregard The Relevant Chronology.

Plaintiffs' claims are rendered implausible by their disregard of the relevant chronology and failure to account for external circumstances and intervening events. As Plaintiffs recognize, SunEdison expanded its business dramatically in 2015 and the Vivint acquisition was "the last of a series of SunEdison purchases." Com. ¶ 3. At the same time, falling oil prices caused an industry-wide collapse of alternative energy stocks, including both Vivint's and SunEdison's. This collapse set events in motion that further weakened both SunEdison's and Vivint's positions. In fact, before any alleged corrective disclosure about SunEdison was made, Vivint's share price had declined more than 30% from its close on July 20 2015, when the merger was announced.

Plaintiffs' allegations fail to account for the obvious alternative explanation that both companies suffered losses during the same period due to industry-wide declines. *Lentell v Merrill Lynch*, 396 F.3d 161, 174 (2nd Cir. 2005) ("[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the

---

[2] SunEdison may have made, on defendants' behalf, routine stock sales under Rule 16b-3 to satisfy tax liability attendant on the vesting of Restricted Stock Units. Plaintiffs do not and cannot allege that such sales are probative of scienter.



Hon. P. Kevin Castel
February 6, 2017
Page 6

plaintiff's loss was caused by the fraud decreases, and a plaintiff's claim fails when it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.") (quotations and citations omitted).  And because Plaintiffs' theory of fraud depends on the flawed position that Defendants could have foreseen and are ultimately responsible for market forces over which they had no control, their allegations amount to a charge of fraud by hindsight that does not amount to a claim. *Novak v. Kasaks,* 216 F.3d 300, 308, 312 (2d Cir. 2000) ("[W]e have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight' . . . allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.") (citations omitted).

## 2.  Alleged Connections Between Vivint's Share Price And Plaintiffs' Misstatements Do Not Withstand Scrutiny.

Plaintiffs rely on highly attenuated causal chains in an attempt to link declines in Vivint's share price to alleged misstatements about SunEdison.  For example, Plaintiffs contend that a decline in Vivint's stock price that followed Vivint's announcement of its own poor earnings was the result of allegedly corrective information that the proposed merger was a "distraction" for Vivint.  Comp. ¶¶204-206.  But the statement that the acquisition was a "distraction" for Vivint did not reveal any allegedly withheld truth about SunEdison, and thus cannot constitute a corrective disclosure.  Plaintiffs also do not plausibly allege that the market reacted to statements about Vivint's "distraction" as opposed to the obvious alternative explanation that the market reacted to Vivint's poor performance.  Nor do Plaintiffs plausibly allege that any "distractions" were caused by Defendants' alleged misstatements as opposed to other aspects of the merger process.  Plaintiffs' "distraction" theory illustrates the speculative and highly attenuated causal chains on which many of Plaintiffs' claims rely, and which courts will reject on a motion to dismiss.  *See, e.g., Lentell*, 396 F.3d at 174 (Section 10(b) claim "will not lie" if the connection between an alleged misstatement and an investment loss is "attenuated"); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 587 (S.D.N.Y. 2014) (dismissing a complaint because the "number of dots the Court must connect to produce an adequate theory of loss causation are too numerous"), *aff'd* 604 F. App'x 62, 2015 U.S. App. LEXIS 8081 (2d Cir. 2015).

## 3.  Plaintiffs' Claims Are Rendered Implausible By An Obvious Alternative Explanation For Their Losses.

Plaintiffs' claims are also implausible in light of the obvious alternative explanation that any decline in Vivint stock attributable to the merger's unraveling constituted the realization of a known risk that the deal would not be consummated, and not a reaction to any particular revelations about SunEdison.  As Plaintiffs allege, the merger announcement itself disclosed the possibility that SunEdison might not be able "obtain the funding needed to complete the merger."  Com. ¶ 77.  And well before any alleged corrective disclosure, both companies' share



Hon. P. Kevin Castel
February 6, 2017
Page 7

prices were tumbling.  The obvious alternative explanation for Plaintiffs' losses is that they were the realization of a known risk that the deal might fail against the backdrop of an industry-wide decline.  This obvious alternative explanation renders Plaintiffs' version of events implausible under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

### 4. Plaintiffs Are Not Entitled To A Fraud On The Market Presumption.

Plaintiffs appear to rely on a fraud-on-the-market presumption but nowhere allege that all publicly available information about SunEdison was reflected in Vivint's share price.  Plaintiffs' fraud-on-the-market allegations pertain only to Vivint and say nothing about the relationship between the mix of information about SunEdison and the mix of information about Vivint.  Com. ¶ 330.  And throughout the Complaint, Plaintiffs refers to SunEdison statements that "misled investors" without specifying whether they misled Vivint investors as opposed to, or in addition to, SunEdison investors.  *See, e.g.,* ¶ 254.

Plaintiffs would like the Court to presume that Vivint's share price reacted to negative news about SunEdison once the merger was announced.  For example, they assert that the fact SunEdison stock declined 38% in the same two day period that Vivint stock declined 11.3% "demonstra[es] that the fall in Vivint's stock price was due to SunEdison's disclosure."  Com. at fn. 10.  But Plaintiffs neglect to mention that in other instances, the stock plainly did not move in tandem.  For example, August 25th, following a purported corrective disclosure, SunEdison's share price dropped 18.8% while Vivint's share price *increased*.  And on October 7, a day on which Plaintiffs allege that SunEdison shares "shot up" over 11% (Com. ¶ 278) based on alleged misstatements about its cash generating ability, Vivint's stock barely moved.  These facts conflict with Plaintiffs' core theory that SunEdison's and Vivint's share prices were linked from the time the merger was announced.  Because that core theory does not withstand scrutiny, Plaintiffs should be required to allege reliance and causation without the benefit of any presumptions.

*  *  *  *

We thank the Court for the opportunity to describe the contemplated grounds for our intended motion to dismiss during the limited stay of this action.  We are available at the Court's convenience should Your Honor have any questions.  We stand ready to file and serve our motion to dismiss and/or discuss our contemplated grounds for dismissal at a pre-motion conference should this case proceed following the expiration of the limited stay on March 31, 2017.



Hon. P. Kevin Castel
February 6, 2017
Page 8

                               Respectfully submitted,

By:   */s/ Sara B. Brody*
       Sara B. Brody
       SIDLEY AUSTIN LLP
       555 California Street, Suite 2000
       San Francisco, California 94104
       Telephone:  (415) 772-1200
       Facsimile:  (415) 772-7400
       sbrody@sidley.com

       *Attorneys for Ahmad Chatila and Brian Wuebbels*

cc:  All Counsel of Record (via ECF)