# POMERANTZLLP

Jeremy A. Lieberman
Managing Partner

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-22-17

February 20, 2017

*Application is granted. Memo to last paragraph*

*SO ORDERED*
*[signature]*
*USDJ 3-22-17*

**VIA ECF AND HAND DELIVERY**

Hon. P. Kevin Castel
United States District Judge
United States District Court for the
 Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *In re: SunEdison, Inc. Sec. Litig.*, No. 1:16-md-02742-PKC –
Response to Pre-Motion Letter in *Chamblee v. TerraForm Power, Inc.*, No. 1:16-cv-08039 (1:16-mc-2742)

Dear Judge Castel:

We represent Lead Plaintiffs Clemens Schlettwein and Jerome Spindler and the proposed Class ("Plaintiffs") in *Chamblee v. TerraForm Power, Inc.*, No. 1:16-cv-08039 (the "Action"). In accordance with the Court's direction at the December 19, 2016 status conference, the Court's December 19, 2016 Order relating thereto (Dkt. No. 94), and the Court's Individual Practices, we respectfully submit this letter in response to defendants pre-motion letter dated February 6, 2017 setting forth the contemplated grounds for a motion to dismiss ("Defendants' Pre-Motion Letter").

This is an action brought on behalf of investors who purchased the securities of Terraform Power, Inc. ("TERP" or the "Company"), between July 18, 2014 and March 15, 2016 (the "Class Period") seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against TERP and certain former directors and senior executive officers of the Company. TERP was formed by its controlling shareholder, SunEdison, Inc. ("SunEdison") to own and operate solar and wind generation assets acquired or "dropped down" primarily from SunEdison. During the Class Period, TERP did not have any employees. SunEdison provided TERP with managerial and administrative services, including accounting, audit, information technology, financial back-

jalieberman@pomlaw.com
600 Third Avenue, New York, New York 10016  tel: 212.661.1100  www.pomerantzlaw.com
NEW YORK    CHICAGO    LOS ANGELES    WESTON, FL

Hon. P. Kevin Castel
February 20, 2017
Page 2

**POMERANTZ LLP**

office and cash-management functions pursuant to a Management Services Agreement between the Company and SunEdison ("MSA"). Additionally, throughout the Class Period, TERP and SunEdison were essentially operated by the same people, sharing significant overlapping officers and directors with SunEdison (and SunEdison's other affiliates.) According to a number of former employees, Defendant Ahmad Chatila ("Chatila")[1] effectively ran everything and made all major decisions at both SunEdison and TERP. Cplt. ¶ 32. TERP's management was controlled by, and beholden to, SunEdison. Management services were provided to the Company in accordance with the MSA and SunEdison determined and paid TERP's management's compensation. Through its stock ownership, Board and managerial control, and TERP's reliance on SunEdison for drop down acquisitions and essential services under the MSA, SunEdison practically exercised unfettered control over the business and affairs of TERP. *See id.* ¶ 30.

Defendants' Pre-Motion Letter mischaracterizes the nature of the action. The theory of the case is not that TERP misled the market concerning its dependence on SunEdison. Defendants' Pre-Motion Letter, at 2. Indeed, the Complaint is replete with allegations that TERP was completely and "admittedly" dependent on SunEdison for all essential services that were provided pursuant to the MSA, as well as drop down acquisitions from SunEdison into TERP for purposes of TERP's stated growth strategy. *See, e.g.*, Cplt. ¶ 6. The thrust of the Action is that Defendants, while disclosing such utter dependence on SunEdison, failed to further disclose their knowledge regarding critical, qualifying information, including that there were inadequate internal financial controls at both companies;[2] that SunEdison was making false representations about its debt and liquidity posing significant risk to TERP's stated growth strategy; and that due to the liquidity crisis, SunEdison was forcing TERP to improperly expend its own cash and resources to fund SunEdison's operations well beyond the requirements of the MSA, thus further masking SunEdison's desperate financial condition. While Defendants add that there were disclosures concerning how weakness at SunEdison would harm TERP (Defendants' Pre-Motion Letter, at 2), TERP's disclosures were nothing more than half-truths.

Defendants state that TERP cannot be held liable for SunEdison's false misrepresentations or omissions regarding its state of liquidity (*id.* at 2), but then concede that this is not the basis for the Action (*id.*). Defendants further state that Plaintiffs allege that TERP's disclosures were misleading because TERP failed to state that SunEdison was misrepresenting its own liquidity condition, but that the challenged statements do not address

---

[1] Defendant Chatila was TERP's Chairman of the Board from January 2014 to November 20, 2015 and remained a director until May 26, 2016. He was also President, Chief Executive Officer ("CEO") and a director of SunEdison and its predecessor from March 2009 to June 22, 2016. He also served as Chairman of the Board of TerraForm Global, Inc. ("Global") until November 20, 2015, and remained a director until May 26, 2016. Cplt. ¶ 18.

[2] Reliability of internal financial controls is paramount to accounting, a service provided by SunEdison to TERP pursuant to the MSA.

**POMERANTZ LLP**

SunEdison's liquidity or SunEdison's disclosures about its liquidity (*id.*). Defendants are wrong. The Complaint states that Defendants Chatila and Wuebbels[3] falsely reassured the market on August 6, 2015 during a joint SunEdison/TERP conference call that SunEdison had "greater than $1 billion" available, and Defendant Hernandez,[4] during that same call, stated: "In addition to [TERP's] balance sheet liquidity we also benefit from incremental liquidity provided by the warehouse facilities we have placed in order with our sponsor SunEdison and our infrastructure partners." "In addition to maintaining significant balance sheet liquidity, the warehouses [credit facility] we have developed with SunEdison and our infrastructure partners provide another important tool to fund [TERP's] growth with significant financial flexibility." This led analysts to comment positively that any liquidity concerns regarding SunEdison "appear [] more of a perception than a reality." Cplt. ¶¶ 67, 114. However, after the end of the Class Period, the market learned that the SEC was investigating SunEdison's disclosures about its liquidity and that the stated $1 billion in available credit included a $500 million warehouse credit facility that SunEdison could not access and should never have been included in SunEdison's liquidity calculations. *Id.* ¶ 67.

Additionally, while TERP told investors that its growth strategy was dependent on SunEdison's ability to acquire new projects to be dropped down into TERP, it omitted the fact that SunEdison was lying about its true state of liquidity which would undoubtedly affect TERP's growth strategy. Indeed, in or about late October 2015, Defendants Domenech[5] and Hernandez raised concerns with SunEdison's Board about SunEdison's liquidity and the accuracy of SunEdison's public statements regarding its financial condition. Defendants,

---

[3] Defendant Brian Wuebbels ("Wuebbels") was a TERP director since January 2014, and the Company's President and CEO from November 20, 2015 until his resignation from the Company on March 30, 2016. Wuebbels held numerous positions at SunEdison and its predecessor since 2007, and served as SunEdison's Chief Financial Officer ("CFO") and Executive Vice President since May 2012, and Chief Administrative Officer since December 2014, until his termination in May 2016. He also served as CEO and President of Global from November 20, 2015 until his resignation from Global on March 30, 2016. Cplt. ¶ 20.

[4] Defendant Alejandro Hernandez ("Hernandez") served as the Company's Executive Vice President and CFO from September 17, 2014 until his termination on November 20, 2015. He also served as Global's Executive Vice President and CFO from October 9, 2015 until his termination on November 20, 2015. He reported directly to Domenech at TERP (and Global). Cplt. ¶ 21.

[5] Defendant Carlos Domenech Zornoza ("Domenech") was President, CEO, and a director of TERP from January 2014 until his termination on November 20, 2015. Domenech also served as Executive Vice President and President of SunEdison and its predecessor from as early as November 2009, and was Executive Vice President of SunEdison when he was terminated on November 20, 2015. He also held management positions at other SunEdison affiliates, including Global where he was CEO since February 2015, and a director since Global's formation in September 2014, until his termination on November 20, 2015. Cplt. ¶ 19.

**POMERANTZ LLP**

however, failed to share this information with the market (Cplt. ¶¶ 70, 152), and now want to escape liability for their failure to disclose such material information.

Next, Defendants argue that Plaintiffs' allegations that TERP failed to disclose that SunEdison was forcing it to make payments in excess of those required by the MSA is not actionable because those allegations do not indicate that payments were actually made or that they were material to TERP, and because these excessive payments did not cause Plaintiffs' alleged losses and are not associated with any corrective disclosure. Again Defendants are incorrect. The Complaint contains detailed allegations from CEO Domenech's top executive assistant that SunEdison, through use of the same officers and directors at both TERP and SunEdison, inappropriately used TERP as its piggybank and misappropriated its funds for its own use because TERP's numbers were better than SunEdison's and SunEdison constantly struggled to pay its bills. Cplt. ¶ 68. It is not necessary to allege the precise amount of money that SunEdison extracted from TERP because the fact that SunEdison was using its assets to keep itself afloat is qualitatively material as it demonstrates SunEdison's financial desperation and the fact that it existed on the precipice of disaster during the Class Period. As to loss causation, TERP's excess payments to SunEdison allowed Defendants to continue to defraud investors by masking SunEdison's liquidity crisis, thereby maintaining the artificially inflated prices of both TERP and SunEdison stock.

Lastly, Defendants' additional list of the Complaint's perceived shortcomings[6] can be responded to with ease and cast aside:

- Defendants contend that Plaintiffs' have not alleged that any financial reporting was false, but the Complaint properly alleges that TERP's statements concerning its internal control over financial reporting were false and misleading and that TERP was *incapable* of producing accurate financial statements. *See* Cplt. ¶¶ 38-55.

- Defendants further argue that a number of the allegations in the complaint are "immaterial as a matter of law" because they reference allegations from two other complaints (Defendants' Pre-Motion Letter at 3), one of which was consolidated in this MDL and the other filed in Delaware. While some district courts in this Circuit have adopted a broad rule that a complaint may never reference allegations from another complaint that has not been decided on the merits, no Second Circuit precedent indicates such a broad rule. The district courts that have adopted such a rule are in the minority. Indeed, a number of courts have found that it makes little sense to say that information which a complaint could unquestionably rely on if it were mentioned in a news clipping is immaterial simply because it was conveyed in an unadjudicated complaint. Additionally, here, almost all of the allegations that Defendants refer to come from one of the other cases in this MDL. Because this Court is overseeing all of the cases in this MDL, it will have the opportunity to review and assess the underlying evidence

---

[6] *See* Defendants' Pre-Motion Letter, at 3.

Hon. P. Kevin Castel
February 20, 2017
Page 5

**POMERANTZ LLP**

substantiating those allegations first hand. Moreover, the other allegations that are referenced in the complaint come from a *verified* complaint filed in Delaware that relates to the same nucleus of facts as in this case. These circumstances set this case apart from the cases that Defendants will presumably rely upon.

- The Complaint cannot be characterized as a puzzle pleading. The nature of the allegations within the Complaint are such that the alleged misstatements/omissions are listed with the reasons they are false and misleading. It is plainly evident that the Complaint is sufficiently particularized allowing a reader to match up alleged misstatements/omissions with their explanatory counterparts.

- The Complaint amply alleges scienter. TERP and SunEdison had overlapping management. The same Defendants that are named in the Complaint were high level executives at SunEdison. The Complaint amply alleges TERP's stated dependence on SunEdison for its growth strategy and all essential services, including accounting, as well as Defendants' intimate knowledge of the various problems at SunEdison which existed contemporaneously with their statements to investors. Cplt. ¶¶ 44-46, 54-55, 56-77, 146-53.

- The Complaint also adequately alleges a "control person" claim under Section 20(a) given that it amply alleges a primary violation of the federal securities laws.

Finally, notwithstanding the fact that the Complaint adequately alleges violations of the Exchange Act, Plaintiffs have learned additional information concerning the claims set forth in the Complaint and wish to amend to include such information, as well as address some of the concerns raised in Defendants' Pre-motion letter. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' request for leave to file a Second Amended Complaint on March 24, 2017, which is well in advance of the March 31, 2017 expiration of the limited stay of all actions that are part of this MDL (Dkt. No. 94).

                                              Respectfully submitted,

                                              **POMERANTZ LLP**

                                              By: */s/ Jeremy A. Lieberman*
                                              Jeremy A. Lieberman
                                              Brenda Szydlo
                                              Jennifer Banner Sobers
                                              600 Third Avenue, Floor 20
                                              New York, New York 10016
                                              Phone: 212-661-1100
                                              Fax: 917-463-1044

Hon. P. Kevin Castel
February 20, 2017
Page 6

**POMERANTZ LLP**

jalieberman@pomlaw.com
bszydlo@pomlaw.com
jbsobers@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Phone: 312-377-1181
Fax: 312-377-1184
pdahlstrom@pomlaw.com

*Attorneys for Lead Plaintiffs
and the proposed Class*

*Additional Counsel:*

**THE ROSEN LAW FIRM**
Laurence Rosen
Phillip Kim
Sara Fuks
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: 212-686-1060
lrosen@rosenlegal.com
pkim@rosenlegal.com
sfuks@rosenlegal.com

cc: All Counsel of Record (via ECF)