# SHEARMAN & STERLING LLP

599 LEXINGTON AVENUE | NEW YORK | NY | 10022-6069

WWW.SHEARMAN.COM | T +1.212.848.4000 | F +1.212.848.7179

August 25, 2017

**Via ECF**

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

        Re:    *In re: SunEdison, Inc., Securities Litigation*, No. 1:16-md-02742-PKC –
                 rel. *Horowitz v. SunEdison, Inc.*, No. 1:16-cv-07917-PKC

Dear Judge Castel:

We are counsel to the Underwriter Defendants and write on behalf of the Underwriter and Individual Defendants in response to the August 22, 2017 letter submitted on behalf of the KKR/Canyon plaintiffs.  MDL Dkt # 233.[1]  The letter purports to respond to Defendants' August 4, 2017 reply brief in support of their motion to dismiss the *Horowitz* plaintiffs' Securities Act claims.  Dkt # 158.

As a threshold matter, KKR/Canyon's letter is procedurally improper and should be disregarded. The KKR/Canyon plaintiffs, rather than being parties to the *Horowitz* putative class action, are individual plaintiffs pursuing separate actions with respect to SunEdison's August 2015 preferred stock offering.  On December 19, 2016, the Court ordered that motions to dismiss the putative class actions in this MDL be briefed and resolved prior to briefing and argument in the individual actions, Hr'g Tr. at 34:21-35:16 (MDL Dkt # 112), meaning that the KKR/Canyon plaintiffs were not yet authorized to submit arguments.  Further, even if they were parties to the putative class actions, their letter would be tantamount to an unauthorized sur-reply.

To the extent the letter is considered, it only underscores the deficiencies of the allegations related to SunEdison's allegedly undisclosed margin call in early August 2015.  The KKR/Canyon plaintiffs seize on the supposed difference between (i) defendants' argument in

---

[1] All references to "Dkt # __" pertain to docket entries in *Horowitz v. SunEdison, Inc., et al.*, No. 1:16-cv-07917. References to "MDL Dkt #" pertain to docket entries in *In re: SunEdison, Inc., Sec. Litig.*, No. 1:16-md-02742. Documents cited as "Ex. ___" were attached to the June 9, 2017 Omnibus Declaration of Jaime A. Bartlett in Support of the Defendants' Motions to Dismiss (Dkt # 151). Documents cited as "Reply Ex. ___" were attached to the August 4, 2017 Omnibus Reply Declaration of Jaime A. Bartlett in Further Support of the Defendants' Motions to Dismiss (Dkt # 159).

ABU DHABI | BEIJING | BRUSSELS | DUBAI | FRANKFURT | HONG KONG | LONDON | MENLO PARK | MILAN | NEW YORK
PARIS | ROME | SAN FRANCISCO | SÃO PAULO | SAUDI ARABIA* | SHANGHAI | SINGAPORE | TOKYO | TORONTO | WASHINGTON, DC

SHEARMAN & STERLING LLP IS A LIMITED LIABILITY PARTNERSHIP ORGANIZED IN THE UNITED STATES UNDER THE LAWS OF THE STATE OF DELAWARE, WHICH LAWS LIMIT THE PERSONAL LIABILITY OF PARTNERS.
*ABDULAZIZ ALASSAF & PARTNERS IN ASSOCIATION WITH SHEARMAN & STERLING LL

NYDOCS04/610946.1

their current motion to dismiss in *Horowitz* (Dkt # 146) that all information necessary to "determine" the existence of a margin call was disclosed before the offering, and (ii) their formulation of the same argument in a prior unresolved motion to dismiss (filed in a different action before MDL transfer and withdrawn after MDL transfer) but which used the words "provide[] an approximation of" rather than "determine."

Despite trying to make hay of the slightly different formulations,[2] the KKR/Canyon plaintiffs' letter misses the point: whether the information suffices to "determine" or merely "approximate" when a margin obligation had been triggered, investors had all the information they needed to know that a margin call was triggered before the offering. As the *Horowitz* complaint itself recognizes, "TERP's equity value was the significant driving force behind any margin call that occurred," and based on the value of TERP's equity, the loan-to-value ratio would have fallen below the 50 percent threshold when TERP's stock closed at $25.24 on August 7, 2015. Compl. ¶ 466 (Dkt # 138). Neither the *Horowitz* plaintiffs nor the KKR/Canyon plaintiffs genuinely dispute that this calculation is based solely on information that was publicly disclosed before the preferred stock offering. Nor does either group of plaintiffs dispute that investors could have used the same information to determine that as long as TERP's shares closed at or above $25.47 on any given day, the 32.2 million TERP shares collateralizing the margin loan were sufficiently valuable to avoid a margin call regardless of the value of any other collateral.[3] *See* Dkt # 146 at 14; Dkt # 158 at 7. Likewise, SunEdison disclosed that:

- the $410 million margin loan was collateralized by TERP Class B shares and TerraForm Power LLC Class B units and incentive distribution rights ("IDRs") (Ex. 9 (Q1 2015 Form 10-Q) at 25; Reply Ex. 45, Ex. 10.1 (Margin Loan Agreement) at 55);[4]

- whether the loan's 50 percent loan-to-value requirement was satisfied was based on the value of TERP's Class A common stock, "which certain of the [margin loan] collateral [could] be exchanged for" (Ex. 9 at 25);

---

[2] Using the word "approximation" in a footnote in a brief that was never ruled upon is obviously not a binding admission that investors did not have enough information to "determine" whether a margin call had occurred and, if so, when it occurred. *See DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (noting that judicial estoppel cannot apply when there is no risk of inconsistent judicial results); *see also Estate of George v. Batista*, 2013 WL 104552, at *2 (D. Conn. Jan. 8, 2013) (a "statement in the withdrawn Motion to Dismiss cannot constitute a conclusive judicial admission").

[3] Notably, there were only three days prior to SunEdison's preferred stock offering when TERP's shares closed below that price: (i) August 7 ($25.24 closing share price), (ii) August 10 ($25.20 closing share price), and (iii) August 11 ($24.19 closing share price). (TERP shares actually rebounded to close at $26.13 on August 12.) Given that investors knew (or had everything they needed to know) that a margin call was triggered prior to that offering, it is inconceivable to argue that an omission concerning the margin loan was material because investors could not know for certain whether it was triggered on August 7, August 10, or August 11.

[4] As discussed in defendants' reply brief, the value of the IDRs that partially collateralized the margin loan was not relevant to a determination of whether a margin call might have occurred. Dkt # 158 at 6-7. Instead, that determination was based on the value of "Eligible Class A Shares," *i.e.*, the pledged Class B Shares and Class B Units that were exchangeable for Class A shares. *Id.*; *see also* Reply Ex. 49, Ex. 10.1 at 7.

Hon. P. Kevin Castel
August 25, 2017
Page 3

- one TERP Class B share and one TerraForm Power LLC Class B unit could together be exchanged for a single TERP Class A share (Reply Ex. 46 (TERP Feb. 17, 2015 Sch. 13G); Reply Ex. 47 (Apr. 17, 2015 SUNE Sch. 14A) at 47); and

- 32.2 million Class B shares and 32.2 million Class B units were pledged as collateral for the margin loan (*see* Reply Ex. 45, Ex. 10.1 at 23).

Those disclosures permitted investors to calculate the loan-to-value ratio by dividing the $410 million loan amount by the product of the TERP Class A closing share price and 32.2 million shares (as the *Horowitz* plaintiffs themselves did in paragraph 466 of their Complaint).[5]

At bottom, investors (not least sophisticated and well funded investors like the KKR/Canyon plaintiffs) were given the information necessary to calculate (both precisely and approximately) that a margin call obligation had been triggered before they decided to invest.

Respectfully submitted,

By:   */s/ Adam S. Hakki*
Adam S. Hakki
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
Telephone:  (212) 848-4000
Facsimile:   (212) 848-4924
ahakki@shearman.com

*Attorneys for the Underwriter Defendants*

cc:  All Counsel of Record (via ECF)

---

[5] The letter asserts that investors also needed to know the value of the "Eligible Non-Share Collateral" because "Eligible Non-Share Collateral" is included in the margin loan's definition of "Loan to Value Percentage." *See* MDL Dkt # 233 at 1 (citing Reply Ex. 45, Ex. 10.1 at 19-20). That is incorrect. As noted, investors were told that the margin loan was collateralized by three things: Class B shares, Class B units, and IDRs. The definition of "Eligible Non-Share Collateral" **excludes all of those items**. (*See* Reply Ex. 45, Ex. 10.1 at 8 (defining "Eligible Non-Share Collateral" as "any securities … other than Class A Shares, Class B Shares, Class B Units, [and] IDRs …").) Thus, there was no Eligible Non-Share Collateral that investors needed to consider to calculate whether a margin call might be triggered.