UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re SUNEDISON, INC. ERISA LITIGATION | Civil Action No. 1:16-mc-2744-PKC <br><br> MDL No. 2742 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT

Michael Bongiorno
Timothy Perla (admitted *PHV*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

*Attorneys for Defendant Peter Blackmore*

Mark B. Blocker (admitted *PHV*)
Christopher K. Meyer (admitted *PHV*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

Dorothy J. Spenner
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (312) 839-5599

*Attorneys for Defendants Ahmad Chatila, Emmanuel Hernandez, Antonio R. Alvarez, Clayton C. Daley, Jr., Georganne C. Proctor, Steven V. Tesoriere, James B. Williams, Randy H. Zwirn, the SunEdison Retirement Savings Plan Investment Committee, Brian Wuebbels, Phelps Morris, Matthew Herzberg, Matt Martin, and James Welsh*

Dated:  September 18, 2017

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

PROCEDURAL HISTORY........................................................................................4

ARGUMENT ........................................................................................................5

    I.      Plaintiffs' Claims Based On Public Information Should Be Dismissed.................7

          A.      Plaintiffs Have Failed To Overcome The General Rule That Claims Based On Publicly Available Information Are Implausible...........7

          B.      Plaintiffs Cannot Evade *Fifth Third* By Re-Casting Their Allegations As Claims Based On Excessive Risk. ...................................10

    II.     Plaintiffs' Claims Based on Non-Public Information Should Be Dismissed....................................................................................................12

    III.    Plaintiffs' Failure to Monitor Claim Fails. ..........................................18

    IV.    Plaintiffs' Remaining Claims Are Foreclosed By Relevant Case Law. .............19

          A.      Plaintiffs' Additional Allegations Regarding Duty of Loyalty and Co-Fiduciary Obligations Fail to State a Claim.........................................19

          B.      The Allegations Against the Director Defendants Fail for Additional Reasons. ........................................................................22

    V.     To The Extent That Any of Plaintiffs' Claims Are Not Dismissed, Plaintiffs' Jury Demand Should Be Stricken. ........................................23

CONCLUSION....................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*In re 2014 Radioshack ERISA Litig.*, 165 F. Supp. 3d 492 (N.D. Tex. 2016) ........................7, 12

*Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016) ................................................ *passim*

*Bell v. Pfizer, Inc.*, 626 F.3d 66 (2d Cir. 2010) ...........................................................21

*In re BP P.L.C. Sec. Litig.*,
    No. 4:10-cv-4214, 2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) ....................................22, 23

*In re BP P.L.C. Securities Litig.*,
    No. 4:10-cv-4214, 2017 WL 914995 (S.D. Tex. Mar. 8, 2017) ........................................7, 14

*In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599 (S.D.N.Y. 2015) ...........................................16

*In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011) ............................................21

*Coburn v. Evercore Tr. Co., N.A.*, 844 F.3d 965 (D.C. Cir., 2016) ........................................6, 9, 11

*Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d 361 (2d Cir. 2014) ....................................20, 21

*Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) ............................................. *passim*

*Graham v. Fearon*,
    No. 1:16-cv-2366, 2017 WL 1113358 (N.D. Ohio Mar. 24, 2017) ....................................6, 15

*In re HP ERISA Litig.*,
    No. 3:12-cv-06199, 2015 WL 3749565 (N.D. Cal. June 15, 2015)...........................................7

*In re Idearc ERISA Litig.*,
    No. 3:09-cv-2354, 2016 WL 7189981 (N.D. Tex. Oct. 4, 2016) .................................7, 12, 18

*In re JPMorgan Chase & Co. ERISA Litig.*,
    No. 12-cv-04027, 2016 WL 110521 (S.D.N.Y. Jan. 8, 2016) ..................................................6

*In re Lehman Bros. Sec. & ERISA Litig.*,
    113 F. Supp. 3d 745 (S.D.N.Y. 2015)............................................................. *passim*

*Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016)...........................................................6

*Malin v. XL Capital Ltd.*, 312 F. App'x 400 (2d Cir. 2009) .........................................................13

*Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007)...................................................13

*Martone v. Whole Foods Mkt., Inc.*,
    No. 1:15-cv-877, 2016 WL 5416543 (W.D. Tex. Sept. 28, 2016) ...........................................7

*Muller v. First Unum Life Ins. Co.*, 341 F.3d 119 (2d Cir. 2003).................................................23

*In re PetroChina Co. Sec. Litig.*, 120 F. Supp. 3d 340, 354 (S.D.N.Y. 2015) ...............................1

*Pfeil v. State Str. Bank & Tr. Co.*, 806 F.3d 377 (6th Cir. 2015)........................................6, 11, 17

*In re Pfizer Inc. ERISA Litig.*,
    No. 04-cv-10071, 2013 WL 1285175 (S.D.N.Y. Mar. 29, 2013).....................................20, 21

*Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016)................................. *passim*

*Roe v. Arch Coal*,
    No. 4:15-cv-910, 2017 WL 3333928 (E.D. Mo. Aug. 4, 2017) ............................................6

*Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855 (6th Cir. 2017) ............................................. *passim*

*Saumer v. Cliffs Nat. Res. Inc.*,
    No. 1:15 CV 954, 2016 WL 3355323 (N.D. Ohio June 17, 2016) .......................................2, 6

*Saumer v. Cliffs Nat. Res. Inc.*,
    No. 1:15-cv-954, 2016 WL 8668509 (N.D. Ohio Apr. 1, 2016) .....................................18, 20

*Smith v. Delta Air Lines Inc.*, 619 F. App'x 874 (11th Cir. 2015)............................................6, 9

*In re: SunEdison, Inc. Sec. Litigation*, No. 1:16-md-2742-PKC ...................................................1

*In re Target Corp. Secs. Litig.*,
    No. 16-cv-1315, 2017 WL 3267708 (D. Minn. July 31, 2017) ............................................6

*In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*,
    57 F.3d 1255 (3d Cir. 1995)..........................................................................................22

*Whitley v. BP, P.L.C.*, 838 F.3d 523 (5th Cir. 2016) ....................................................6, 13, 14, 15

*In re WorldCom, Inc.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) ......................................................22

**Statutes & Rules**

Employee Retirement Income Security Act of 1974 .......................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................1

Internal Revenue Code § 401.....................................................................................................3

Defendants submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims asserted against them in Plaintiffs' Second Amended Consolidated Complaint ("SAC") (Dkt. 235)[1] and to strike Plaintiffs' demand for a jury trial.[2]

## PRELIMINARY STATEMENT

This is an ERISA "stock drop" case filed as a follow-on to several securities class actions in the wake of events that ultimately led to SunEdison's ("SUNE's") Chapter 11 bankruptcy. Plaintiffs are participants in a 401(k) plan sponsored by SUNE which permitted participants to voluntarily invest up to 15% of their 401(k) accounts in SUNE company stock, among several other investment options. Plaintiffs now blame Defendants for Plaintiffs' entirely voluntary decision to invest in SUNE stock. The thrust of Plaintiffs' claims is that Defendants breached fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by continuing to offer the SUNE stock fund as an investment option in the plan.

These types of ERISA stock-drop claims are nothing new. What *is* new, however, is case law from the Supreme Court that significantly altered the pleading requirements for these claims and imposed stringent standards courts must use in evaluating these claims at the pleading stage. *See Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014); *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016). The Supreme Court held that claims challenging a fiduciary's conduct based on publicly available information are implausible as a general rule, and must be dismissed unless plaintiffs can allege "special circumstances." *Fifth Third*, 134 S. Ct. at 2472. The standard for

---

[1] All docket numbers refer to the docket for the multi-district litigation, *In re: SunEdison, Inc. Sec. Litigation*, No. 1:16-md-2742-PKC.

[2] The SAC's well-pleaded factual allegations are accepted as true solely for purposes of this motion. Descriptions of the plan and references to the plan document, cited as "Ex. A," refer to the plan document attached to the concurrently-filed Declaration of Christopher K. Meyer. Because the SAC relies on and quotes from the plan document (*see, e.g.*, SAC ¶ 27), the Court may properly consider this document on a motion to dismiss. *See, e.g.*, *In re PetroChina Co. Sec. Litig.*, 120 F. Supp. 3d 340, 354 (S.D.N.Y. 2015).

fiduciary claims based on *non*-public information are equally onerous:  to state a claim, plaintiffs must identify an alternative action a fiduciary in the defendants' position could have taken that would have been consistent with securities laws (as well as other applicable legal requirements), and must plausibly allege that such a fiduciary could not have concluded that the proposed alternatives would do more harm than good.  *Id*. at 2472-73; *Amgen*, 136 S. Ct. at 759-60.

As courts in this Circuit and elsewhere have recognized, the Supreme Court's new framework has "raised the bar for plaintiffs" bringing these claims, *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 861 (6th Cir. 2017) (quoting *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 755 (S.D.N.Y. 2015)), and has made it "extremely difficult" for such claims "to survive a motion to dismiss," *Saumer v. Cliffs Nat. Res. Inc.*, No. 1:15 CV 954, 2016 WL 3355323, at *1-2 (N.D. Ohio June 17, 2016).  The SAC is no different than a multitude of other ERISA stock drop claims that have been dismissed on the pleadings, and it should be dismissed in its entirety.  Because Plaintiffs already have amended their complaint in response to both a pre-motion letter and then again in response to a subsequent motion to dismiss, and the SAC remains deficient and cannot be cured by further amendment, the dismissal should be with prejudice and without leave to amend.

## STATEMENT OF FACTS

**Plaintiffs and the Putative Class.**  Plaintiffs are alleged former SUNE employees and participants in the SunEdison Retirement Savings Plan (the "Plan").  SAC at p. 1 & ¶¶ 13-16. They purport to bring this suit on behalf of the Plan and all participants in or beneficiaries of the Plan between July 20, 2015 and April 21, 2016 (the alleged "Relevant Period") who invested any portion of their Plan accounts in SUNE stock.  *Id*. ¶ 48.

**Defendants.**  Plaintiffs bring this action against two groups of individual defendants:  (1) the "Director Defendants," who are alleged to have served on the SUNE Board of Directors at

various times during the Relevant Period, and (2) the "Investment Committee Defendants," who are alleged to have served as members of the Investment Committee. *Id.* ¶¶ 17-32.[3]  The SAC also names the Investment Committee itself as a defendant.

The Investment Committee's duties, which are delineated in the Plan, include general responsibility for the investment of Plan assets, the establishment of Plan investment policies, and selection of Plan investment options.  Plan (Ex. A), §§ 17, 18.  Plaintiffs allege that the Director Defendants had the power to appoint and remove individuals to serve on the Investment Committee.  SAC ¶¶ 5, 283.  However, other than the power to appoint and remove members of the Investment Committee, nothing in the Plan gives the Director Defendants any authority or responsibility with respect to administration of the Company Stock Fund.

**The Plan.**  The Plan is an "individual account plan" or "defined contribution" plan.  SAC ¶ 39.  It provides for acquisition and holding of employer securities (known as an "eligible individual account plan" ("EIAP") under ERISA), and is intended to qualify as a "cash or deferred profit sharing plan under Section 401 of the Internal Revenue Code," commonly known as a 401(k) plan.  Ex. A §§ 1.4, 17.6(n), 18.1.  Contributions to a participant's account come from both the participant and the employer.  SAC ¶ 44.

Participants self-direct the investment of their accounts among a broad range of investment options offered under the Plan, including the SunEdison Stock Fund.  *Id.* ¶¶ 46, 239; Ex. A § 18.2.  Participants are not required to invest *any* of their accounts in the SunEdison Stock Fund, may not direct investment into the SunEdison Stock Fund that exceeds 15% of their account balance, and may not direct that more than 15% of new contributions be invested in the SunEdison Stock Fund.  Ex. A § 18.2.

---

[3] In addition, Plaintiffs list "Defendants John Does 1-10" as alleged Plan fiduciaries whose identities are unknown to Plaintiffs.  SAC ¶¶ 33-34.

**SUNE.** SUNE is a renewable energy development company. SAC ¶ 57. It finances, builds, and operates solar, wind, and hydro power plants around the globe. *Id*. ¶ 64. Unfortunately, in late summer 2015, a confluence of events—including an industry-wide downturn and constricting access to capital, among other things—sent SUNE's stock into a downward spiral from which it could not recover. On April 21, 2016, SUNE filed for bankruptcy under Chapter 11. *Id*. ¶ 205.

## PROCEDURAL HISTORY

Collectively, investors filed nearly 30 class and individual actions against SUNE, its subsidiary yieldcos, and various officers and directors of these companies, including four ERISA class action complaints. *See* Dkt. 106 at 1-2. After these actions were transferred to this Court, plaintiffs' counsel in the four ERISA cases agreed on a leadership structure and filed a consolidated complaint, which was collectively the fifth ERISA complaint. Dkt. 121.

On February 6, 2017, Defendants submitted a pre-motion letter seeking leave to move to dismiss that complaint in its entirety. Dkt. 140. In response, Plaintiffs requested leave to amend their complaint again, which the Court granted. Dkt. 159, 186. Plaintiffs filed their Amended Consolidated Complaint on May 19, 2017. Dkt. 191. That amended complaint named the same defendants and brought identical claims as those brought in the prior complaint. The main changes from the prior complaint were (1) to drop two of the previously named plaintiffs who lacked standing, and (2) to inflate their claimed damages by moving back in time the start date of the "Relevant Period" from August 6, 2015 (when SUNE stock was trading at $17.08), to July 20, 2015 (when the stock price was at $31.66).

After an exchange of pre-motion letters, Defendants filed a motion to dismiss the Amended Consolidated Complaint (collectively, the sixth complaint). Rather than respond, Plaintiffs have now chosen to file *yet another* amended complaint, which represents, collectively,

4

the *seventh* complaint.  The SAC again names the same defendants and brings identical claims as before.  Aside from adding two new named plaintiffs, the main changes from the prior complaint are to (1) remove any references to *Fifth Third* (previous complaints contended that *Fifth Third* made it easier for plaintiffs to allege ERISA stock drop claims, but Plaintiffs apparently now recognize that the opposite is true), and (2) remove the phrase "excessively risky" when referring to the SUNE stock, in a transparent (but unsuccessful) effort to try to avoid *Fifth Third*, which also involved allegations that the stock at issue was "excessively risky."  *Fifth Third*, 134 S. Ct. at 2464.  *Compare* 5/19/17 Amended Complaint (Dkt. 191) at ¶¶ 8-19 (allegations regarding *Fifth Third*), ¶¶ 224, 228 (alleging that SUNE stock was "excessively risky"), *with* SAC, generally).  But none of these cosmetic changes to the complaint changes the fact that (a) the SAC, while no longer using the phrase "excessively risky," still purports to bring a claim that the SUNE stock was too risky, and (b) *Fifth Third* and its progeny apply here and foreclose their claims.

## **ARGUMENT**

ERISA "stock-drop" claims like this one are nothing new.  For years, they have been commonly filed as piggy-back suits to securities lawsuits.  They often follow the same pattern: plaintiffs claim that defendants should have known from *public* information that the stock was an imprudent investment, and also claim that defendants possessed *non-public* information such that they knew the stock was an imprudent investment; in essence, such claims argue that plan fiduciaries should have predicted the future.  However, these types of ERISA claims are quickly becoming an endangered species in the wake of two recent Supreme Court decisions that sharply curtail the viability of such claims.

In *Fifth Third*, 134 S. Ct. at 2470, the Supreme Court addressed the heads-I-win, tails-you-lose nature of these types of ERISA suits.  If the plan fiduciary "fears that continuing to

invest in company stock may be imprudent," he may "find[] himself between a rock and a hard place:  [i]f he keeps investing and the stock goes down he may be sued for acting imprudently" (as Plaintiffs have done here).  *Id*.  "[B]ut if he stops investing and the stock goes up he may be sued for disobeying the plan documents" or "for missing the opportunity to benefit from good performance[.]"  *Id*. (citation omitted).  To avoid putting ERISA plan fiduciaries in such an untenable position, *Fifth Third* set forth strict pleading standards, explained more fully below, designed to "weed[] out meritless claims" (at the motion-to-dismiss stage) that accuse individuals of breaching ERISA fiduciary duties relating to company stock funds.  *Id*. at 2471.

Under these stringent standards, plaintiffs bear a "***significant burden***."  *Whitley v. BP, P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2016) (emphasis added).  These standards have "raised the bar for plaintiffs," *Saumer*, 853 F.3d at 861 (emphasis omitted) (quoting *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 755 (S.D.N.Y. 2015)), "mak[ing] it ***extremely difficult*** for a plaintiff's prudence claim to survive a motion to dismiss."  *Saumer*, 2016 WL 3355323, at *2 (emphasis added), *aff'd*, *Saumer*, 853 F.3d at 866.

Shortly after *Fifth Third*, the Supreme Court revisited the issue in *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016), reversed the Ninth Circuit for its failure to heed *Fifth Third's* clear instructions, and re-emphasized the onerous requirements that apply to ERISA stock drop claims at the pleading stage.  *Id*. at 759.  In the wake of these decisions, courts (including the Second Circuit) have continually found that complaints just like the one at issue here do not meet the strict pleading standards set out in *Fifth Third* and *Amgen*.[4]  In fact, since the Ninth Circuit's

---

[4] *See generally, e.g., Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016); *Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016); *In re JPMorgan Chase & Co. ERISA Litig.*, No. 12-cv-04027, 2016 WL 110521 (S.D.N.Y. Jan. 8, 2016); *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 866 (6th Cir. 2017); *Whitley v. BP, PLC*, 838 F.3d 523, 529 (5th Cir. 2016); *Coburn v. Evercore Tr. Co., N.A.*, 844 F.3d 965 (D.C. Cir., 2016); *Smith v. Delta Air Lines Inc.*, 619 F. App'x 874 (11th Cir. 2015); *Pfeil v. State Str. Bank & Tr. Co.*, 806 F.3d 377 (6th Cir. 2015); *Roe v. Arch Coal*, No. 4:15-cv-910, 2017 WL 3333928 (E.D. Mo. Aug. 4, 2017); *In re Target Corp. Secs. Litig.*, No. 16-cv-1315, 2017 WL 3267708 (D. Minn. July 31, 2017); *Graham v. Fearon*, No. 1:16-cv-2366, 2017 WL 1113358

now-reversed *Amgen* opinion, no appellate court has held that an ERISA stock drop complaint stated a claim for relief.

In Section I below, Defendants explain why Plaintiffs' claims based on *public* information fail in light of the Supreme Court's holding that such claims are "implausible as a general rule" absent special circumstances not present here.  In Section II, Defendants show why Plaintiffs' claims based on *non-public* information should also be dismissed, as they fail to plausibly allege that a fiduciary in the Defendants' position could not have concluded that the alternative actions identified by Plaintiffs would do more harm than good.  In Section III, Defendants explain that Plaintiffs' attempt to evade the Supreme Court's framework by trying to cast this lawsuit as a "failure to monitor" case has been rejected in this Circuit and elsewhere.  In Section IV, Defendants show why Plaintiffs' remaining "kitchen sink" claims should be rejected. Finally, in Section V, Defendants address Plaintiffs' demand for a jury trial.

**I.      Plaintiffs' Claims Based On Public Information Should Be Dismissed.**

**A.      Plaintiffs Have Failed To Overcome The General Rule That Claims Based On Publicly Available Information Are Implausible.**

Plaintiffs' first theory is that during the Relevant Period, SUNE stock was imprudent, because it was overvalued and/or too risky.  SAC ¶ 217 (alleging that Defendants should have known from public information that investment in SUNE stock would lead to "inevitable losses"); ¶ 9 (alleging SUNE stock was imprudent due to "a sea-change in the basic risk profile and business prospects of SunEdison"); ¶ 230 (alleging SUNE's "deteriorating business prospects and liquidity constraints … heightened the Company's risk profile").  Plaintiffs claim

---

(N.D. Ohio Mar. 24, 2017); *In re BP P.L.C. Securities Litig.*, No. 4:10-cv-4214, 2017 WL 914995 (S.D. Tex. Mar. 8, 2017); *In re Idearc ERISA Litig.*, No. 3:09-cv-2354, 2016 WL 7189981 (N.D. Tex. Oct. 4, 2016); *Martone v. Whole Foods Mkt., Inc.*, No. 1:15-cv-877, 2016 WL 5416543 (W.D. Tex. Sept. 28, 2016); *In re 2014 Radioshack ERISA Litig.*, 165 F. Supp. 3d 492 (N.D. Tex. 2016); *In re HP ERISA Litig.*, No. 3:12-cv-06199, 2015 WL 3749565 (N.D. Cal. June 15, 2015).

that Defendants should have known as much based on publicly available information, and therefore breached ERISA fiduciary duties of prudence and loyalty by continuing to permit plan assets to be invested in SUNE stock.  *Id*. ¶¶ 212, 217.  Plaintiffs' "public information" claims are foreclosed under Supreme Court and Second Circuit precedent.

In *Fifth Third,* the Supreme Court held that public information claims like these "are **implausible as a general rule**, at least in the absence of special circumstances."  *Fifth Third*, 134 S. Ct. at 2471 (emphasis added).  The Court explained that "a fiduciary usually is not imprudent to assume that a major stock market … provides the best estimate of the value of the stocks traded on it that is available to him."  *Id*. at 2471-72 (internal quotation and citation omitted).  In other words, like other investors, fiduciaries are unlikely to outperform the market "based solely on their analysis of publicly available information."  *Id*. at 2471 (internal quotation and citation omitted).  Accordingly, fiduciaries "may, as a general matter … prudently rely on the market price."  *Id*.  As the Sixth Circuit recently observed, "[*Fifth Third*][5] 'effectively immunizes fiduciaries from imprudence claims relating to publicly traded securities in the absence of special circumstances.'"  *Saumer*, 853 F.3d at 861 (citation omitted).

*Fifth Third* left open the possibility that plaintiffs might make out a claim based on public information if they are able to point to a "special circumstance … that would make reliance on the market's valuation imprudent," 134 S. Ct. at 2472 (describing such a circumstance as one "affecting the reliability of the market price as an 'unbiased assessment of the security's value in light of all public information'" (citation omitted)).  However, since *Fifth Third* was decided, no appellate court has found that a complaint properly alleged "special circumstances," confirming that such circumstances would have to be truly exceptional.  *See Rinehart v. Lehman Bros.*

---

[5] Although the Sixth Circuit and some other courts refer to the *Fifth Third* opinion as "*Dudenhoeffer*," the Supreme Court and Second Circuit have referred to it as *Fifth Third*, so Defendants do the same in this brief.

*Holdings Inc.*, 817 F.3d 56, 67 (2d Cir. 2016); *Saumer*, 853 F.3d at 862; *Coburn v. Evercore Tr. Co., N.A.*, 844 F.3d 965, 969-72 (D.C. Cir. 2016); *Smith v. Delta Air Lines Inc.*, 619 F. App'x 874, 876 (11th Cir. 2015).

Plaintiffs try to allege "special circumstances" by pointing to "public information" that "affected the price of SunEdison Stock." SAC ¶ 212. But they allege no facts suggesting that the market was incapable of processing this public information such that reliance on the market price was imprudent. In fact, Plaintiffs affirmatively allege that the market *did* process this and other public information by lowering the SUNE stock price. *Id*. ¶¶ 193, 208, 212(b) (alleging that "[a]s early as mid-2015, global markets turned decisively against SunEdison and its growth strategy" and alleging "[t]he market's negative reaction" to public information which "drove down SunEdison's stock price"). Plaintiffs fail to explain how public information that the market processed and incorporated into the stock price somehow demonstrates that the market was incapable of processing public information. The argument is self-defeating and circular.

Plaintiffs' allegations of "special circumstances" are much less substantial than those held to be insufficient by the Second Circuit in *Rinehart*, 817 F.3d at 66. In *Rinehart*, plaintiffs alleged that special circumstances existed because the SEC had issued orders warning "that 'there now exists a substantial threat of sudden and excessive fluctuations of securities prices generally and disruption in the functioning of the securities markets that could threaten fair and orderly markets.'" *Id*. at 66-67 (internal citation omitted). The Second Circuit rejected those claims, holding that "the only plausible inference supported by the [complaint] is that the market processed any risks identified in the SEC's orders as it would have processed any other public information about Lehman" and that "Plaintiffs therefore cannot establish 'special circumstances[.]'" *Id*. at 67. Here, as in *Rinehart*, Plaintiffs cannot rely on public information

9

the market was capable of processing (and which Plaintiffs affirmatively allege the market *in fact* processed) to establish "special circumstances."

### B. Plaintiffs Cannot Evade *Fifth Third* By Re-Casting Their Allegations As Claims Based On Excessive Risk.

Unable to allege any special circumstances, Plaintiffs attempt to get around *Fifth Third* by alleging that SUNE stock was not merely overvalued, but also too risky.  SAC ¶¶ 9, 56, 230, 256, 268.  This exact same tactic has been rejected by the Supreme Court, the Second Circuit, and other courts.[6]  It should likewise be rejected here.

To begin with, Plaintiffs' attempt to avoid *Fifth Third* by casting their theory as one alleging excessive risk, rather than purported overvaluation, is also foreclosed by *Fifth Third*.  The Supreme Court expressly noted that the complaint in *Fifth Third* "allege[d] that … the fiduciaries knew or should have known that Fifth Third's stock was overvalued ***and excessively risky***[.]"  *Fifth Third*, 134 S. Ct. at 2464 (emphasis added).  If Plaintiffs were correct that *Fifth Third's* framework for evaluating claims based on public information is inapplicable where a complaint alleges that a stock is too risky, then *Fifth Third* would have been decided differently, because *Fifth Third* itself addressed allegations that the defendants should have known the company stock was "excessively risky."  *Id*. at 2464.

The Second Circuit also rejected the identical theory Plaintiffs advance here.  In *Rinehart*, plaintiffs alleged that defendants "knew or should have known, based on publicly available information, that investment in Lehman ***had become increasingly risky***[.]"  *Rinehart*, 817 F.3d at 65 (emphasis added).  Like Plaintiffs here, the *Rinehart* plaintiffs "attempt[ed] to

---

[6] After Defendants pointed out in their prior motion to dismiss that *Fifth Third* involved a claim that a stock was "excessively risky"—the identical language used in Plaintiffs' prior complaint—Plaintiffs amended their complaint to eliminate the use of that particular phrase, apparently to try to avoid *Fifth Third*.  But that revision is a futile exercise in empty semantics, as the SAC is still replete with allegations that SUNE stock was imprudent because it was too risky.  *See, e.g.*, SAC ¶¶ 9, 56, 230, 256, 268.

plead around *Fifth Third* by saying that their claims concern 'excessive risk' and therefore are not covered by *Fifth Third*, which Plaintiffs argue dealt only with claims concerning 'market value.'" *Id*. at 65-66.  The Second Circuit rejected this argument, explaining:

> [W]e agree with the District Court that the purported distinction between claims involving "excessive risk" and claims involving "market value" is illusory.  *Fifth Third* foreclose[s] breach of prudence claims based on public information *irrespective of whether such claims are characterized as based on alleged overvaluation or alleged riskiness* of a stock.  Although the language of *Fifth Third* refers primarily to "over- or undervaluing" stock, the *Fifth Third* Court applied this rule to the plaintiffs' risk-based claims in that case.  Moreover, viewing this rule as applicable to *all* allegations of imprudence based upon public information—regardless of whether the allegations are framed in terms of market value or excessive risk—is consistent with the efficient market hypothesis that risk is accounted for in the market price of a security.

*Id*. at 66 (internal citations and quotation marks omitted).

More recently, the Sixth Circuit joined the Second Circuit and D.C. Circuit in rejecting the same risk-based argument:

> The plaintiffs in [*Fifth Third*] similarly argued that the fiduciary should have known that the company's stock was "overvalued *and excessively risky*."  The Court's market-price-reliance rule dispatched both the value- and risk-based claims.  Furthermore, *Pfeil*, *Rinehart*, and *Coburn* all hold that [*Fifth Third*] "foreclose[d] breach of prudence claims based on public information irrespective of whether such claims are characterized as based on alleged overvaluation or alleged riskiness of a stock."

*Saumer*, 853 F.3d at 862 (quoting *Fifth Third*, 134 S. Ct. at 2464; *Coburn*, 844 F.3d at 971 (alteration in original), and citing *Rinehart*, 817 F.3d at 66; *Pfeil v. State Str. Bank & Tr. Co.*, 806 F.3d 377, 386 (6th Cir. 2015)).  *Saumer* explained that the "excessive risk" argument is not only foreclosed by *Fifth Third*, but also ignores the fact that "*every* company carries significant risk that unpredictable developments … will devastate its prospects (and stock price)," which is "simply 'endemic to the ESOP form established by Congress.'"  *Id*. (quoting *Pfeil*, 806 F.3d at

387) (internal citations omitted).[7]  Other courts agree that merely alleging excessive risk—even where the company ultimately filed for bankruptcy—does not get around *Fifth Third's* pleading requirements.  *See, e.g.*, *In re 2014 Radioshack ERISA Litig.*, 165 F. Supp. 3d 492, 504 (N.D. Tex. 2016) ("[T]he only facts Plaintiffs argue they have pled that meet [*Fifth Third's*] special circumstances is the allegation that the Company stock became excessively risky based on its slide into bankruptcy.  This is not the kind of event that is a special circumstance."); *In re Idearc ERISA Litig.*, No. 3:09-cv-2354, 2016 WL 7189981, at *4 (N.D. Tex. Oct. 4, 2016) (rejecting allegation that stock of company that ultimately went bankrupt was too risky, noting that "[c]ourts have repeatedly been unwilling to classify alleged riskiness as a special circumstance").

## II.     Plaintiffs' Claims Based on Non-Public Information Should Be Dismissed.

As is common in ERISA stock drop claims, Plaintiffs also assert claims based on alleged *non*-public information.  Specifically, Plaintiffs allege that Defendants possessed material, non-public information that made the SUNE stock an imprudent investment because it was over-valued.  SAC ¶¶ 218-221.  Plaintiffs' non-public information claims are equally deficient.

As a preliminary matter, the notion that Defendants possessed material inside information that led them to believe that SUNE stock was overvalued is belied by the fact that Defendants Wuebbels and Chatila (the only Defendants Plaintiffs specifically identify as allegedly having inside information) continued to purchase additional shares of SUNE stock during the Relevant Period.  *See* Exs. 18-19, Omnibus Decl. of Jaime A. Bartlett in Support of the Defendants' Mots. to Dismiss, Dkt. 199.  If Wuebbels and Chatila had non-public information that led them to believe SUNE stock was overvalued and likely to suffer a steep decline, as Plaintiffs posit, it

---

[7] Unlike some plans, the Plan here did not invest all of participants' assets in SUNE stock.  It allowed participants to choose from several diversified investment options other than SUNE stock, and limited participant investments in SUNE stock to 15%. See *supra* at 3.  This reduced the risk to well below what Congress approved.

would make no sense for them to continue purchasing SUNE stock during this period.  *See Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 152-53 (D. Conn. 2007) (holding that the fact that defendant CEO and CFO "actually *increased*" their holdings during the relevant time period was "'wholly inconsistent'" with inference that they possessed adverse material nonpublic information (internal citations omitted), *aff'd,* 312 F. App'x 400 (2d Cir. 2009).

Nonetheless, even assuming that any of the Defendants possessed adverse, material inside information, and even assuming that all of those Defendants had fiduciary duties to evaluate the propriety of continuing to allow SUNE stock as an investment option under the Plan, Plaintiffs' claims fail as a matter of law.  Under *Fifth Third* and *Amgen*, for a claim based on non-public information to survive a motion to dismiss, a complaint must plausibly allege (1) "an alternative action that the defendant could have taken that would have been consistent with the securities laws," as ERISA's fiduciary duties do "not require a fiduciary to break the law," *Amgen*, 136 S. Ct. at 759; *Fifth Third*, 134 S. Ct. at 2472, and (2) "that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.'"  *Amgen*, 136 S. Ct. at 760 (quoting *Fifth Third*, 134 S. Ct. at 2473).

"Under the Supreme Court's formulation, the plaintiff bears the significant burden of proposing an alternative course of action so clearly beneficial that a prudent fiduciary *could not conclude* that it would be more likely to harm the fund than to help it."  *Whitley*, 838 F.3d at 529 (emphasis in original).  Stated another way, Plaintiffs must "'plausibly allege that *no* prudent fiduciary could have concluded that the proposed alternative action would do more harm than good.'"  *Id*. (citation omitted) ("*Amgen* has since confirmed that is the standard").  As a district court remarked earlier this year, "[t]he Court is not aware of any post-*Amgen* case in which a

plaintiff met this significant burden." *In re BP P.L.C. Sec. Litig.*, No. 4:10-cv-4214, 2017 WL 914995, at *3 (S.D. Tex. Mar. 8, 2017).

Plaintiffs' non-public information claims fail this standard. Plaintiffs purport to identify actions Defendants could have taken, but courts, including the Second Circuit, have repeatedly held that these same alternatives do not satisfy the standard under *Fifth Third* and *Amgen*.

Plaintiffs' Proposed Alternative 1: Disclose and Liquidate or Divest. Plaintiffs allege that Defendants could have disclosed the supposedly material adverse non-public information and then liquidated or divested the Plan's holdings in SUNE stock. SAC ¶¶ 209, 219, 232. But the Supreme Court, Second Circuit, and other courts have recognized the obvious problem with this "alternative": if the non-public information is in fact adverse and material, then disclosing it to the public will cause the stock price to drop. Thus, a fiduciary following this course of action will harm the Plan and its participants who hold company stock by decreasing the value of their holdings. *See Fifth Third*, 134 S. Ct. at 2473; *Rinehart*, 817 F.3d at 68 (affirming 12(b)(6) dismissal of ERISA stock drop claims, holding that disclosing non-public information and divesting company stock "could have had dire consequences"); *Whitley*, 838 F.3d at 529 (ERISA stock drop claims should have been dismissed because it is "not … reasonable to say that a prudent fiduciary at that time could not have concluded that … disclosure of such information to the public … which would likely lower the stock price … would do more harm than good."); *Saumer*, 853 F.3d at 863-65 ("divulging inside information" would be an "extreme action" and affirming dismissal because defendants "could have concluded that divulging inside information … would have collapsed [the company]'s stock price, hurting participants already invested in the [plan]"). As the Sixth Circuit recently explained, "a fiduciary's decision to eliminate company stock is a clarion call to the investment world that the [fiduciary] lacked confidence in the value

14

of its stock, and could have a catastrophic effect on [the] stock price, severely harming plan members." *Id*. at 860 (internal citation and quotation marks omitted).  Indeed, the SAC itself acknowledges that "once the [alleged] insider information was disclosed, the Plan and its participants would suffer dramatic losses to their retirement savings."  SAC ¶ 221.

Plaintiffs' Proposed Alternative 2:  Disclose and Suspend Additional Purchases. Plaintiffs allege that Defendants could have, "following proper disclosure," caused the Plan to suspend additional purchases of SUNE stock.  *Id.* ¶ 209.  But this too would likely harm participants by causing a drop in the value of their holdings, as "the market might take [that] as a sign that insider fiduciaries viewed the employer's stock as a bad investment[.]"  *Fifth Third*, 134 S. Ct. at 2473.  The Second Circuit rejected this proposed alternative in *Rinehart* because a prudent fiduciary could conclude that "simply holding [company stock] without purchasing more 'would do more harm than good.'"  817 F.3d at 68 (quoting *Amgen*, 136 S. Ct. at 760).  Other courts have agreed.  *See also Whitley*, 838 F.3d at 529 (same); *Saumer*, 853 F.3d at 864 ("Plaintiffs offer the same alternative actions—disclosing inside information and stopping additional ESOP contributions—that *Amgen*, *Whitley*, and *Rinehart* reject.").  As a district court recently noted in dismissing similar claims, "[f]reezing investments and corrective disclosures are the alternative actions that plaintiffs typically allege in ESOP stock drop cases.  Since *Fifth Third*, courts have consistently held that complaints alleging these alternatives fail to meet the second prong of *Fifth Third*."  *Graham v. Fearon*, No. 1:16-cv-2366, 2017 WL 1113358, at *4 (N.D. Ohio Mar. 24, 2017).

Plaintiffs assert that this alternative would not have materially affected the stock price because "there was already a plethora of news in the public domain as of the start of the Relevant Period indicating major and substantial problems at SunEdison."  SAC ¶ 235.  But there are two

problems with this assertion.  *First*, the same could be said of the facts before the Second Circuit in *Rinehart*, where plaintiffs similarly pointed to a plethora of public information pre-dating the fall of Lehman Brothers.  817 F.3d at 65.  Despite all of this, the Second Circuit held that a prudent fiduciary nonetheless "could have concluded that … simply holding [company stock] without purchasing more 'would do more harm than good,'" and affirmed dismissal of plaintiffs' non-public information claims.  *Id*. at 68 (quoting *Amgen*, 136 S. Ct. at 760).

*Second*, far from helping their cause, Plaintiffs' allegation simply provides an alternative basis for dismissal.  If Plaintiffs were correct that the stock price had already accounted for the alleged "major and substantial problems" reflected in the "plethora of news in the public domain," then the stock price was not overvalued, and whatever "non-public" information Defendants possessed was not material.  As the court explained in *In re Citigroup ERISA Litig.*:

> [I]n arguing that the defendants could have disclosed the nonpublic information without harming the Plan participants, the plaintiffs allege that "it is hard to fathom that … disclosure of the adverse non-public information alleged … [would] have caused Citigroup stock to move palpably," in light of all the negative public information about Citigroup. … This allegation highlights the immateriality of any purported non-public information that the defendants could have disclosed.

104 F. Supp. 3d 599, 616 (S.D.N.Y. 2015).

Plaintiffs try to avoid all of these authorities by alleging that the Plan held a relatively small percentage of the Company's outstanding shares.  SAC ¶¶ 223-24.  But—once again—this same argument has been made before and rejected.  In *Saumer*, to prop up their argument that "no fiduciary in the same position as the Defendants could conclude that freezing or liquidating Company Stock would do more harm than good," plaintiffs argued that "[g]iven the relatively small number of [company] shares that might not have been purchased by the [company] stock fund in comparison to the enormous volume of actively traded shares, it is extremely unlikely

that this decrease in the number of shares that would have been purchased, considered alone, would have had an appreciable impact on the [company] stock price." 853 F.3d at 865. The Sixth Circuit rejected this argument, holding that it "is non-responsive to the [*Fifth Third*] Court's twin concerns: that ceasing purchases might indicate to the market 'that insider fiduciaries viewed the employer's stock as a bad investment,' and that divulging negative information might cause the stock price to drop, hurting plan participants." *Id*. at 865 (quoting *Fifth Third*, 134 S. Ct. at 2473).

Plaintiffs assert that the issue of whether publicly disclosing the allegedly negative non-public information or ceasing further purchases of company stock would result in a drop in the stock price is "highly debatable" and a matter "more appropriate for expert testimony" than a 12(b)(6) motion to dismiss. SAC ¶ 224. This is incorrect. Courts have held that this issue can and should be addressed on the pleadings. *Amgen*, 136 S. Ct. at 760; *Rinehart*, 817 F.3d at 68. If it was sufficient to claim that expert testimony is needed on this issue, every complaint would survive, which is contrary to the legion of appellate and district court decisions dismissing complaints with virtually identical allegations at the pleading stage (and contrary to *Fifth Third's* instruction to weed out meritless claims at the pleading stage).

Plaintiffs next resort to hindsight in an attempt to salvage their claim. They allege that participants "would not have suffered more harm than good" if further purchases of company stock had been discontinued because, *in retrospect*, the Plan's other investment options outperformed SUNE stock during the Relevant Period. SAC ¶¶ 239-41. But the Second Circuit and other courts have held that a fiduciary's conduct is not to be evaluated based on hindsight. *See, e.g., Rinehart*, 817 F.3d at 63-64; *Pfeil*, 806 F.3d at 386-87. The fact that other investment options ultimately performed better than SUNE stock also does not answer the relevant question

17

identified by the Supreme Court, which is whether the SAC plausibly alleges that "a prudent fiduciary *during the class period* 'would not have viewed'" the proposed alternative "'as more likely to harm the fund than to help it.'"  *Rinehart*, 817 F.3d at 68 (emphasis added) (quoting *Amgen*, 136 S. Ct. at 759, and *Fifth Third*, 134 S. Ct. at 2472).

> Plaintiffs' Proposed Alternative 3:  Seek Guidance from DOL/SEC or Resign and Engage Third Party.  Plaintiffs allege that Defendants could have sought "guidance" from the DOL or SEC "and/or" resigned as fiduciaries and retained outside experts to serve either as advisors or as independent fiduciaries.  SAC ¶ 234.  Courts have rejected these exact alternatives as insufficient to survive a motion to dismiss.  *In re Idearc ERISA Litig.*, 2016 WL 7189981, at *5-6; *Saumer v. Cliffs Nat. Res. Inc.*, No. 1:15-cv-954, 2016 WL 8668509, at *6 (N.D. Ohio Apr. 1, 2016) (such alternatives are "strikingly similar" to the alleged alternatives rejected in *Amgen*).

## III.   Plaintiffs' Failure to Monitor Claim Fails.

Plaintiffs attempt to minimize the significance of the above-referenced case law by alleging that plan fiduciaries violated a "continuing duty to monitor investments and remove imprudent ones," which "exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset."  SAC ¶ 208.  But this same attempt to evade the strict pleading requirements of *Fifth Third* has been squarely rejected in this Circuit and elsewhere.

The court in *In re Lehman Bros.* addressed this argument and held that the "truism" that ERISA fiduciaries bear a continuous duty to monitor "does not diminish [*Fifth Third*]'s statement that *Twombly* and *Iqbal* make it difficult as a 'general rule' to allege a plausible breach of fiduciary duty based on public information."  *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 757 (S.D.N.Y. 2015).  As in *Lehman Bros.*, and as discussed above in Sections I and II, Plaintiffs fail to allege that Defendants' decisions were in any way deficient under *Fifth Third*, *Amgen*, and *Rinehart*; thus, they cannot explain what difference additional monitoring

18

would have made.  *Id.* at 757 (noting that "plaintiffs allege[d] no facts to suggest that the review they claim should have been done would have averted the injury that ultimately occurred").  On appeal to the Second Circuit, the plaintiffs in *Lehman Bros.* pressed the same arguments Plaintiffs make here: that the defendants did nothing, *i.e.*, that they "failed to investigate whether [the company stock] remained a prudent retirement investment[.]"  *Rinehart*, 817 F.3d at 66 n.3.  The Second Circuit rejected this argument and adopted the district court's reasoning.  *Id*.  Thus, Plaintiffs' argument is foreclosed in the Second Circuit.

The Sixth Circuit also recently rejected this theory in *Saumer*, holding that "a fiduciary's failure to investigate an investment decision *alone* is not sufficient to show that the decision was not reasonable."  *Saumer*, 853 F.3d at 863.  Rather, "a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan," which he cannot do if he fails to allege any "publicly available information that would undermine reliance on the market price."  *Id*.  Thus, the inquiry flows directly back to the issue of whether Plaintiffs have satisfied the pleading requirements set forth in *Fifth Third*.  As discussed above in Sections I and II, Plaintiffs have failed to satisfy those requirements.

**IV.   Plaintiffs' Remaining Claims Are Foreclosed By Relevant Case Law.**

**A.   Plaintiffs' Additional Allegations Regarding Duty of Loyalty and Co-Fiduciary Obligations Fail to State a Claim.**

Plaintiffs assert a mish-mash of additional reasons why Defendants allegedly breached the duty of loyalty, all of which are meritless.

*First*, Plaintiffs allege that Defendants who were compensated in SUNE stock faced a conflict of interest that interfered with their duty of loyalty to Plan participants.  SAC ¶ 276.  According to Plaintiffs, "[b]ecause at least some of the Defendants were compensated in SunEdison Stock and owned SunEdison Stock, these Defendants had a conflict of interest."  *Id*. ¶

19

276.  This claim is—again—foreclosed by Second Circuit precedent.  *See Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) (holding that a "conflict of interest claim cannot 'be based solely on the fact that an ERISA fiduciary's compensation was linked to the company's stock'").  *See also Saumer*, 2016 WL 8668509, at *4 ("[A] conflict of interest does not exist simply because the fiduciary works as an agent of the employer, owns company stock, or is paid according to company performance.").  And, in any event, the claim makes no sense.  If some Defendants were holders of company stock, their interests would be aligned with those of participants, not in conflict.

*Second*, Plaintiffs allege that Defendants violated their duty of loyalty because they were purportedly not "on high alert to protect the interests of the Plan Participants," despite purported "natural biases" of the participants towards investment in SUNE stock.  SAC ¶¶ 274-75.  But this is simply another way of saying that Defendants failed to prudently manage the Plan assets, not a separate duty of loyalty claim, and has likewise been rejected as a way to state a claim.  *Saumer*, 2016 WL 8668509, at *6 (rejecting argument "that Defendants failed to protect Plan participants in light of natural biases toward investment of company stock" as "overlapping" with duty of prudence allegations); *In re Pfizer Inc. ERISA Litig.*, No. 04-cv-10071, 2013 WL 1285175, at *10 (S.D.N.Y. Mar. 29, 2013) (plaintiffs' "duty of loyalty [claims] must fail as they are derivative of … unsuccessful claims that Defendants breached their duty of prudence").  The same is true of Plaintiffs' allegation that Defendants "breached their duty to avoid conflicts of interest … by, *inter alia*: failing to timely engage independent fiduciaries."  SAC ¶ 272.  *See Pfizer*, 2013 WL 1285175, at *10 (allegations that "defendants violated the duty of loyalty by … failing to obtain independent advice in situations presenting potential conflicts of interest" rejected as "derivative" of duty of prudence claims).

*Third,* Plaintiffs allege that "certain Defendants" (they do not allege which ones) breached their duties by "omit[ing] or misrepresent[ing] information" during purported "direct and indirect communications with Plan participants."  SAC ¶ 273.  To begin with, this allegation is woefully deficient because no specific communication with Plan participants is identified. Moreover, the Second Circuit has held that the duty of loyalty does not impose a duty to disclose nonpublic information to plan participants.  *See In re Citigroup ERISA Litig.*, 662 F.3d 128, 143 (2d Cir. 2011) (declining "to create a duty to provide participants with nonpublic information pertaining to specific investment options," holding that "such a requirement would improperly 'transform fiduciaries into investment advisors'" (citation omitted)), *abrogated on other grounds by Fifth Third*, 134 S. Ct. 2459; *see also Lehman Bros.*, 113 F. Supp. 3d at 767 (re-affirming *Citigroup*'s holding and noting that "[t]he Circuit has stated that ERISA 'imposes a comprehensive set of reporting and disclosure requirements'" and "[a]dding additional requirements to this complex statutory apparatus is not to be undertaken lightly" (quoting *Bell v. Pfizer, Inc.*, 626 F.3d 66, 74 n.3 (2d Cir. 2010)).

Plaintiffs also include a boilerplate allegation in Counts I-III that Defendants "breached their co-fiduciary obligations" by knowingly participating in each others' breaches.  SAC ¶¶ 264, 277, 289.  Because these claims are derivative of their other deficient claims for breach of fiduciary duty, Second Circuit precedent mandates that they be dismissed as well.  *Coulter*, 753 F.3d at 368 (plaintiffs' claims for "breach of co-fiduciary duty … constitute derivative claims that cannot survive absent a viable claim for breach of a duty of prudence.  Because the underlying duty of prudence claim fails, so do these derivative claims"); *In re Pfizer Inc. ERISA Litig.*, 2013 WL 1285175, at *10 (dismissing plaintiffs' claims alleging "co-fiduciary liability

and knowing participation in breaches of duty" because they were "derivative of their claims that Defendants breached their fiduciary duty of prudence," which were also dismissed).

### B.   The Allegations Against the Director Defendants Fail for Additional Reasons.

The "Director Defendants"—who did not sit on SUNE's Investment Committee and are defendants only in Counts II and III—should be dismissed for reasons *in addition* to the arguments explained above.

In Count II, Plaintiffs allege that the Director Defendants breached their duty of loyalty by allowing continued investment of Plan assets in SUNE stock and making material misrepresentations to participants.  SAC ¶¶ 268, 273.  But there are no allegations that the Director Defendants believed that the stock was artificially inflated and thus any claim that they permitted the Investment Committee to continue to invest in inflated stock is meritless.  *See In re BP P.L.C. Sec. Litig.*, No. 4:10-cv-4214, 2015 WL 6674576, at *11 (S.D. Tex. Oct. 30, 2015) (dismissing claims where plaintiffs failed to allege that the directors "had notice that the [company's investment committee] might be *knowingly* investing in stock that was artificially inflated").  In addition to the reasons set forth above, this claim is without merit because Plaintiffs have failed to allege facts supporting an inference that the Director Defendants were ERISA fiduciaries with respect to such activities.  Unless the Director Defendants were fiduciaries, they could not have breached any ERISA fiduciary duties.  *See In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1265 (3d Cir. 1995).  To the extent that the Director Defendants are alleged to have had the power to appoint and remove members of the Investment Committee, that does not make them fiduciaries with respect to including SUNE stock as an investment option or communicating with Plan participants.  *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 760 (S.D.N.Y. 2003).

In Count III, Plaintiffs allege that the Director Defendants failed to properly monitor their appointees and by failing to ensure that the appointees had complete and accurate information and by failing to remove appointees who continued to permit the Plan to make and maintain investments in SUNE stock.  SAC ¶¶ 280-91.[8]  These theories also are foreclosed by Second Circuit precedent, which holds that "plaintiffs cannot maintain a claim for breach of the duty to monitor … absent an underlying breach of the duties imposed under ERISA," *Rinehart*, 817 F.3d at 68 (internal citation omitted), and "ERISA does not impose a duty on appointing fiduciaries to keep their appointees apprised of nonpublic information."  *Id*. (internal citation omitted).

## V.      To The Extent That Any of Plaintiffs' Claims Are Not Dismissed, Plaintiffs' Jury Demand Should Be Stricken.

Plaintiffs demand a jury trial.  SAC at p. 116.  If the Court dismisses the SAC, then there is no need for the Court to address whether Plaintiffs are entitled to a jury trial.  However, if the Court allows any of the claims to proceed, then Plaintiffs' jury demand should be stricken because it is well-settled that "there is no right to a jury trial under ERISA[.]"  *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003).

## <u>CONCLUSION</u>

Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Consolidated Complaint in its entirety with prejudice, without leave to amend, and strike Plaintiffs' demand for a jury trial.

---

[8] The SAC also appears to bring the "failure to monitor appointees" claim against the Investment Committee Defendants, whom they lump together with the Director Defendants and label, collectively, the "Monitoring Defendants."  SAC ¶ 281.  But that claim is nonsensical because the Investment Committee Defendants do not, and are not alleged to, have a duty to monitor appointees, because they *are* the alleged appointees.  *See In re BP P.L.C. Sec. Litig.*, No. 4:10-cv-4214, 2015 WL 6674576, at *11 n.101 (S.D. Tex. Oct. 30, 2015) (noting that it would require an inquiry into "the realm of metaphysics to address whether a person can monitor *himself*").

_/s/ Timothy Perla (w/consent)_
Michael Bongiorno
Timothy Perla (admitted _PHV_)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

_Attorneys for Defendant Peter Blackmore_

_/s/ Mark B. Blocker_
Mark B. Blocker (admitted _PHV_)
Christopher K. Meyer (admitted _PHV_)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

Dorothy J. Spenner
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (312) 839-5599

_Attorneys for Defendants Ahmad Chatila,
Emmanuel Hernandez, Antonio R. Alvarez,
Clayton C. Daley, Jr., Georganne C. Proctor,
Steven V. Tesoriere, James B. Williams, Randy
H. Zwirn, The SunEdison Retirement Savings
Plan Investment Committee, Brian Wuebbels,
Phelps Morris, Matthew Herzberg, Matt
Martin, and James Welsh_

Dated:  September 18, 2017