**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
Jennifer Banner Sobers
600 Third Avenue, Floor 20
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com.
Email: jbsobers@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: SUNEDISON, INC. SECURITIES LITIGATION** ) | **No. 1:16 MD 2742 (PKC) (AJP)** |
| ) | |
| This Document Applies To: ) | |
| ) | |
| ***Chamblee, et al. v. TerraForm Power, Inc., et al.*, 1:16-cv-08039-PKC** ) | |
| ) | |
| ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

    A.    The Litigation ......................................................................................... 4

    B.    The Settlement ....................................................................................... 6

        1.    Cash Consideration and Release ................................................. 7

        2.    Notice to the Class ...................................................................... 7

        3.    Exclusion and Objection Deadline .............................................. 8

        4.    The Plan of Allocation ................................................................ 8

III.   ARGUMENT ..................................................................................................... 9

    A.    Final Approval of Proposed Class Action Settlement ............................ 9

        1.    Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate .... 9

            a.    The Class Meets the Requirements of Rule 23(a) ......................... 9

            b.    The Class Meets the Requirements of Rule 23(b)(3) ................... 10

        2.    Final Approval of the Settlement Should be Granted Because the Proposed Settlement is Fair, Adequate and Reasonable Under the Second Circuit's *Grinnell* Factors ...................................................................................... 11

            a.    Complexity, Expense and Likely Duration of the Litigation ........ 12

            b.    Adequate Notice and Reaction of the Class ................................. 14

            c.    Stage of Proceedings and Discovery Completed .......................... 16

            d.    Risks of Establishing Liability and Damages .............................. 16

                i.    Risks Posed In Obtaining Discoverable Evidence ............ 17

                ii.    Risks Posed by Obstacles to Collecting a Judgment ........ 17

            e.    The Risks of Maintaining the Class Action Through Trial ........... 18

            f.    Range of Reasonableness of the Settlement ................................. 19

            g.    Settlement Resulted From Arm's-Length Negotiations ............... 22

            h.    Greater Judgment ........................................................................ 23

    B.    Approval of the Plan of Allocation Is Warranted ................................. 23

IV.   NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS ........ 24

V.    CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972) ................................................................................. 13

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................. 10

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ......................................................................... 13, 18

*Cammer v. Bloom Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ......................................................... 19

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ............................................................. 18

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ....................................................... 13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .......................................................... *passim*

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................. 8, 23

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) .............................................................. 20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ........................................................................... 19

*Hammon v. Barry*,
   752 F. Supp. 1087  (D.D.C. 1990) ....................................................... 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................ 9

*In re "Agent Orange" Prod. Liab.Litig.*,
   611 F. Supp. 1396 (E.D.N.Y. 1985) ..................................................... 21

*In re American Bank Note Holographics, Inc., Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................... 14, 17, 22

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ................................................................. 20

*In re China Sunergy Sec. Litig.*,
   No. 07-Civ.7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ......... 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............. 11

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 24

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ................................................................. 16

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................. 11

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 14

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994) ................................................ 23

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................... 17, 20, 22

*In re Salomon Inc Sec. Litig.*,
    No. 91 CIV. 5442 (RPP), 1994 WL 265917 (S.D.N.Y. June 16, 1994) ........................... 22

*In re Sumitomo Copper Litig.*,
    189 F.R.D 274  (S.D.N.Y. 1999) ....................................................... 12, 22

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) ............................................................ 20

*In re Warner Commc'ns. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................. 16

*In re Warner Commc'ns.Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986) .................................................................... 12

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) ................................................................... 11

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007) ........................................................ 14

*Slomovics v. All For A Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ............................................................. 12

*Stieberger v. Sullivan*,
    792 F. Supp. 1376 (S.D.N.Y. 1992) ............................................................ 12

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .......................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................... 13

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ............................................................. 11

*Varljen v. H.J. Meyers & Co., Inc.,*
    97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ............................................ 11

*Velez v. Novartis Pharm. Corp.,*
    04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .................................. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ..................................................................................... 11, 22

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1983) ............................................................................................ 11

**Rules**

Fed. R. Civ. P. 23(a)) .............................................................................................................. 9

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 10

Fed. R. Civ. P. 23(e) .............................................................................................................. 11

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*
    § 11.41 at 87-89 (4th ed. 2002) ................................................................................... 23

*Manual for Complex Litigation, Third,*
    § 30.42 (1995) .............................................................................................................. 22

## I.    INTRODUCTION

Lead Plaintiffs Clemens Schlettwein ("Schlettwein") and Jerome Spindler ("Spindler" collectively, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class[1], respectfully submit this memorandum in support of the motion for final approval of the proposed settlement.[2]

The Settlement, which seeks to resolve this litigation in its entirety between Lead Plaintiffs and Defendants TerraForm Power, Inc. ("TERP"), Ahmad Chatila ("Chatila"), Carlos Domenech Zornoza ("Domenech"), Alejandro Hernandez ("Hernandez"), Brian Wuebbels ("Wuebbels"), and Francisco Perez Gundin ("Perez") (collectively, "Defendants" and with Lead Plaintiffs, the "Settling Parties"), provides for a cash fund of $14,750,000. The Settlement is eminently fair, reasonable, and adequate as it was reached as a result of arm's-length negotiations among the Parties aided by nationally recognized mediators from Phillips ADR, Hon. Layn Phillips (Ret.) and Gregory Lindstrom. Counsel had an in-depth understanding of the strengths and weaknesses of the case. For these reasons and those set forth below, Lead Plaintiffs respectfully submit that the proposed Settlement strongly warrants approval by this Court as fair, reasonable and adequate.

---

[1] "Settlement Class" means all Persons (including, without limitation, their beneficiaries) who purchased TERP securities during the period from July 18, 2014 through March 15, 2016, both dates inclusive, and excluded from the Settlement Class are: (i) Defendant TERP and all current and former officers and directors of TERP; (ii) Defendants Ahmad Chatila, Carlos Domenech Zornoza, Brian Wuebbels, Alejandro Hernandez, and Francisco Perez Gundin; (iii) blood relatives and household members of any such person excluded under (i); (iv) any entities affiliated with, controlled by, or more than 5% owned by, any person excluded under (i) and (ii); (v) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iv); (vi) Opt-Outs; and (vii) Persons who have no compensable damages. Order Granting Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ("Preliminary Approval Order") (Dkt. No. 110 at ¶2).

[2] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed with the Court on September 1, 2017 (Dkt. No. 107).

Additionally, as explained herein, the Plan of Allocation of the Net Settlement Fund was formulated by experienced counsel in consultation with a damages consultant and comports with loss causation principles. Accordingly, the Plan of Allocation is fair and reasonable and should be approved.

Pursuant to the Court's Preliminary Approval Order, 58,248 copies of the Notice of Pendency and Proposed Settlement of Class Action and Fairness Hearing (the "Notice") and Proof of Claim and Release Form ("Proof of Claim" and with Notice, "Notice Packets") were mailed to potential Class Members, brokers, and nominee holders. Declaration of Robert Cormio Regarding (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice and (C) Report on Requests for Exclusion Received to Date, ("JND Decl.") at ¶11, attached as Exhibit 1 to the Declaration of Jeremy A. Lieberman In Support of Lead Plaintiffs' Motion For: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiffs ("Lieberman Decl." or "Lieberman Declaration"). A copy of the Notice Packet is attached as Exhibit A to the JND Decl.

On September 27, 2017, Summary Notice of Pendency and Proposed Settlement of Class Action and Fairness Hearing ("Summary Notice") was disseminated electronically over *GlobeNewswire* and on September 25, 2017 was published in print in *Investor's Business Daily.* JND Decl. ¶12. Requests for exclusion must be received by the Claims Administrator, JND Legal Administration ("JND"), by January 5, 2018. There has been one invalid request for exclusion. JND Decl. ¶15; Lieberman Decl. ¶70. Objections to the Settlement must be received by January 5, 2018. There has been one objection to the Settlement, however it appears that the objection is not related to the Settlement or its terms. Lieberman Decl. ¶71.

## II.     BACKGROUND[3]

Defendant TERP was formed by SunEdison, Inc. ("SunEdison"), its controlling shareholder, to own and operate solar wind generation assets acquired by SunEdison. Second Amended Class Action Complaint ("SAC")(Dkt. No. 91) at ¶2[4]. TERP's business and growth was dependent on acquiring new solar energy projects from SunEdison as the companies had a symbiotic relationship. ¶6. TERP and SunEdison shared overlapping management and Board members with TERP's management completely controlled by and beholden to SunEdison. ¶4. During the Class Period, TERP did not have any employees and SunEdison provided TERP with managerial and administrative services including accounting, audit, information technology, financial back-office and cash management functions pursuant to a Management Services Agreement between TERP and SunEdison. ¶3.

Lead Plaintiffs allege that during the Class Period, Defendants issued materially false and misleading statements regarding SunEdison's liquidity to fund acquisitions and growth. During the Class Period, SunEdison undertook an aggressive growth strategy. In July 2015, SunEdison announced it was acquiring Vivint Solar Inc., ("Vivint") in a deal valued over $2 billion. In August 2015, SunEdison stated it had a good balance sheet liquidity position, and that SunEdison had "greater than $1 billion" available. ¶¶20,119. These statements created the false impression that SunEdison had no significant liquidity concerns and that SunEdison would be able to easily close on its acquisitions.

The truth about TERP's misstatements regarding internal controls over financial reporting and SunEdison's liquidity began entering the market on November 9, 2015 when

---

[3] A detailed description of procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Lieberman Declaration.

[4] Citations to "¶__" are to the SAC (Dkt. No. 91).

SunEdison revealed facts that contradicted its previous rosy assurances about its liquidity including that it had taken out a $169 million one-year loan at an effective rate of interest of 15%. Further, SunEdison "reclassified" $700 million in debt from non-recourse to recourse. ¶¶31,196. On this announcement, TERP's stock fell $3.87, or $21.15% to close at $14.43 on November 10, 2015. ¶¶31,197.

On February 29, 2016, TERP and SunEdison announced they would be delaying the filing of their Form 10-Ks for the year ended December 31, 2015. ¶201. The reason they gave for this delay was SunEdison's "ongoing inquiries and investigations by the Audit Committee" relating to the accuracy of SunEdison's anticipated financial position. ¶¶200, 203. TERP also revealed that SunEdison identified material weaknesses in its internal controls over financial reporting and TERP itself had identified material weaknesses in its own internal controls over financial reporting primarily due to ineffective controls over its systems and processes for validating revenue recognition. ¶203. On this news, TERP's stock price fell $0.83 or 7.9% per share. ¶204.

Soon after this news, the Vivint acquisition fell through due to the lack of SunEdison's funds and on April 21, 2016, SunEdison along with 25 related entities filed for bankruptcy under Chapter 11 of the Bankruptcy Code. ¶37.

A.      **The Litigation**

This litigation was commenced in the United States District Court for the District of Maryland on April 4, 2016 styled as *Chamblee v. TerraForm Power, Inc., et al.*, 16-cv-00981 (the "*Chamblee* Action"), alleging violations of the Securities Exchange Act of 1934 against TERP, Domenech, and Hernandez (Dkt. No. 1). On July 28, 2016, that court appointed Schlettwein and Spindler as Lead Plaintiffs and appointed Pomerantz LLP as Lead Counsel and Cohen Millstein Sellers & Toll, PLLC as Liaison Counsel, pursuant to the Private Securities

Litigation Reform Act, as amended (Dkt. No. 50). On September 26, 2016, Lead Plaintiffs filed the Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint") against TERP, Chatila, Domenech, Wuebbels, and Hernandez (Dkt No. 54).

On October 5, 2016, a Transfer Order by the U.S. Judicial Panel on Multidistrict Litigation (the "JPML") was filed in the *Chamblee* Action (Dkt. No. 55). The Transfer Order directed the *Chamblee* Action to be transferred and associated with an action before the JPML styled as, *In re: SunEdison, Inc., Securities Litigation,* 16-MD-2742 pending in the Southern District of New York (the "*SunEdison* Action"). On October 14, 2016, the *Chamblee* Action was transferred and associated with the *SunEdison* Action before Judge P. Kevin Castel of the Southern District of New York, along with several other related actions that were previously pending in the Northern District of California, Eastern District of Missouri, and the Southern District of New York (Dkt. No. 56). The *Chamblee* Action was then restyled as, *Chamblee, et al. v. TerraForm Power, Inc. et al*., 1:16-cv-08039-PKC (S.D.N.Y.).

On October 26, 2016, Judge Castel issued an Order setting an Initial Conference on December 10, 2016 for all actions related to the *SunEdison* Action (Dkt. No. 61). The Order also directed counsel for plaintiffs in any of the securities class actions, including the *Chamblee* Action, to provide additional information such as statements of existing deadlines, a brief description of outstanding motions, a brief description of any discovery that had taken place, and a list of all prior settlement discussions.

On November 17, 2016, counsel for the plaintiffs in the five securities and ERISA class action cases pending before Judge Castel in the *SunEdison* Action filed a joint letter in response to the Court's October 26, 2016 Order (Dkt No. 72). In this joint letter, plaintiffs, including Lead Plaintiffs, informed the Court that while they did not oppose early mediation, they did

oppose a stay of all proceedings as in their view it would be counterproductive to the settlement process. On December 15, 2016, TERP and TerraForm Global, Inc., submitted a letter to the Court stating that they supported a global mediation for the *SunEdison* Action as well as a stay of all actions (Dkt. No. 83).

On December 19, 2016, an Initial Conference was held before Judge Castel. The same day, the Court issued an order directing all parties in the *SunEdison* Action, including the *Chamblee* Action, to participate in private mediation as well as instituting a limited stay as to all of the actions that would expire on March 31, 2017 (*SunEdison* Action Dkt. No. 94).

On March 24, 2017, Lead Plaintiffs filed the operative SAC (Dkt. No. 91). On June 9, 2017, Defendants filed their motion to dismiss the SAC. (Dkt. No. 100).

### B.   The Settlement

The Parties engaged in extensive settlement negations including four mediation sessions before Judge Layn Phillips (Ret.) of Phillips ADR on February 10, 2017, February 27, 2017, March 2, 2017, and March 3, 2017. Since a settlement was not reached at any of these mediation sessions, Lead Plaintiffs filed the SAC on March 24, 2017 and Defendants subsequently filed their motion to dismiss the SAC on June 9, 2017. With the motion to dismiss pending, the Parties attended another mediation session with Gregory Lindstrom of Phillips ADR on June 28, 2017. This mediation was successful and a settlement in principle was reached. On June 30, 2017, the Settling Parties informed the Court of the resolution of the *Chamblee* Action (Dkt. No. 103).

On September 1, 2017, Lead Plaintiffs filed the motion for preliminary approval, which included the settlement agreement and proposed notices to the Class. (Dkt. Nos. 107-109). On September 14, 2017, the Court granted preliminary approval of the Settlement. (Dkt. No. 110). The Settlement Hearing is scheduled for January 31, 2018 at 2:00 p.m.

### 1. Cash Consideration and Release

The Settlement provides for a payment of $14,750,000 in cash to pay claims of investors who purchased TERP common stock from July 18, 2014 through March 15, 2016, both dates inclusive. If the Settlement is finally approved by the Court, Lead Plaintiffs, on behalf of the Class, will forever release their claims alleged against Defendants. The Settlement represents an average recovery of $0.16 per share of TERP stock for the estimated 92.2 million shares outstanding at the end of the Settlement Class Period. After deduction of the requested attorneys' fees and expenses and award to Lead Plaintiffs, the Settlement represents an average recovery of $0.04 per share. *See* JND Decl., Ex. A.

### 2. Notice to the Class

Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel caused the Notice to be mailed. JND Decl. ¶¶2-11. The Notice and Proof of Claim and Release Form were also posted to the website, http://www.TerraformPowerSecuritiesLitigation.com, maintained by JND starting on September 24, 2017. JND Decl. ¶14. The Notice advised Class Members of the terms of the Settlement and Plan of Allocation, and that Plaintiffs' Counsel would seek a fee award not to exceed 25% of the Settlement Amount, or $3,687,500 plus interest, expenses not to exceed $150,000, and an award to Lead Plaintiffs collectively not to exceed $4,000 ($2,000 each). JND Decl. Ex. A. The Notice also advised Class Members that any objections to any aspect of the Settlement, or fees and expense requests were due to received no later than January 5, 2018. *Id.*

As of the date of this writing, 58,248 copies of the Notice were mailed to Class Members. JND Decl. ¶11. Additionally, JND disseminated the Summary Notice electronically over *GlobeNewswire* and in print in *Investor's Business Daily*, as well as established a website and call center for the Settlement. JND Decl. ¶¶12-14.

### 3. Exclusion and Objection Deadline

Requests for exclusion must be received by the Claims Administrator by January 5, 2018. As of the date of this writing, there has been only one invalid request for exclusion submitted by an entity which was not and never has been a TERP shareholder. JND Decl. ¶15; Lieberman Decl. ¶70. Objections to the Settlement must be received by the Claims Administrator by January 5, 2018. As of this writing there has been one objection, however, the one objection received appears to be unrelated to the instant Settlement. Lieberman Decl. ¶71.

### 4. The Plan of Allocation

The Plan of Allocation is described in the Notice sent to the members of the Class, at pages 6-10 thereof. JND Decl., Ex. A. It was formulated by Plaintiffs' Counsel, upon consultation with a financial consultant, with the goal of reimbursing Class Members in a fair and reasonable manner consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* losses from sales made prior to revelation of the truth. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation requires any gains from Class Period transactions to be netted with losses from Class Period transactions, which is rational and reasonable. Once these considerations are taken into account, the Plan of Allocation provides that each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Lead Plaintiffs). *See* Lieberman Decl. ¶¶75-78.

## III.     ARGUMENT

### A.     Final Approval of Proposed Class Action Settlement

#### 1.     Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate

Pursuant to the Preliminary Approval Order, the class was preliminarily certified as to "all Persons (including, without limitation, their beneficiaries) who purchased TERP securities during the period from July 18, 2014 through March 15, 2016, both dates inclusive, and excluded from the Settlement Class are: (i) Defendant TERP and all current and former officers and directors of TERP; (ii) Defendants Ahmad Chatila, Carlos Domenech Zornoza, Brian Wuebbels, Alejandro Hernandez, and Francisco Perez Gundin; (iii) blood relatives and household members of any such person excluded under (i); (iv) any entities affiliated with, controlled by, or more than 5% owned by, any person excluded under (i) and (ii); (v) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iv); (vi) Opt-Outs; and (vii) Persons who have no compensable damages." (Dkt. No. 110 at ¶2).

No changes have occurred since the issuing of the Preliminary Approval Order. Thus the Court should finally certify this as a class action for the purposes of the Settlement.

#### a.     The Class Meets the Requirements of Rule 23(a)

In order for a class to be certified, it must meet the following requirements: (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). As detailed in Lead Plaintiffs' memorandum in support of preliminary approval, the Class meets all the requirements. *See* Dkt. No. 109.

First, courts generally assume that the numerosity requirement is met in cases involving nationally traded securities like TERP's common stock. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 (CM), 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007).

Second, all of the conduct alleged in the complaint was common to all members of the Class. All of the Settlement Class Members purchased common shares of TERP during the Class Period. Therefore, all of the Defendants' alleged misrepresentations and omissions were made to each of the Settlement Class Members.

Third, all of the Settlement Class Members' claims are interrelated, and Lead Plaintiffs' claims are typical of those of the rest of the class. All Settlement Class Members suffered losses following the corrective disclosures.

Fourth, Lead Plaintiffs are adequate representatives of the Class. Lead Plaintiffs have no conflicts with the other class members, and have retained counsel with vast experience in the prosecution of securities class actions. Lead Plaintiffs have been actively involved in the case from its inception, maintaining communication with Class Counsel. Due to Lead Plaintiffs' diligence and retention of experienced counsel, their representation is adequate.

### b.      The Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 607 (1997). This standard, as in most securities class actions, is easily met here. The root of the class action—whether Defendants' publicly disseminated releases and statements omitted and/or misrepresented material facts—is the central issue and predominates over any theoretical individual issue that may arise. Additionally, the class action mechanism is the best method of resolving this suit. Since the controversy for each class member is identical, adjudicating in one suit and one forum is the most economical means of resolving this matter. Moreover, some of the class members' damages are too small to make it feasible to incur substantial litigation costs that would exceed any potential recovery.

### 2.    Final Approval of the Settlement Should be Granted Because the Proposed Settlement is Fair, Adequate and Reasonable Under the Second Circuit's *Grinnell* Factors

As a matter of public policy, courts strongly favor the settlement of lawsuits. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1983). This is particularly true in connection with complex class action litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); *Varljen v. H.J. Meyers & Co., Inc.,* 97 Civ. 6742, 2000 WL 1683656, at *3 (S.D.N.Y. Nov. 8, 2000); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008). A proposed class action settlement enjoys a presumption of fairness where, as here, it was the product of arm's-length negotiations conducted by capable counsel who are well-experienced in class action litigation arising under the federal securities laws. *See, e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (citation omitted). The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). In weighing these factors, courts recognize that settlements usually involve a significant amount of give and take between the negotiating parties; therefore courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns. Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement."). Lead Plaintiffs submit that the proposed settlement is fair, reasonable and adequate when measured under the foregoing criteria and should be approved by this Court.

### a.      Complexity, Expense and Likely Duration of the Litigation

Securities class action cases are particularly "difficult and notoriously uncertain" with respect to both liability and damages issues. *See In re Sumitomo Copper Litig.*, 189 F.R.D 274, 281 (S.D.N.Y. 1999). While Plaintiffs' Counsel believes the claims alleged in the SAC are valid and provable, uncertainty in litigation always remains.

The complexity of Lead Plaintiffs' claims weigh in favor of the Settlement. As further explained *infra*, this action presents a mosaic of issues: whether the alleged statements were false, whether they were known or knowable when the alleged misstatements were made, and whether the alleged false and misleading statements were the cause of the Class Members' losses. Although Lead Plaintiffs are confident in their claims, they recognize that there are many uncertainties to prove their claims if this case were to proceed.

The Settlement avoids long, drawn out litigation that would not necessarily lead to a greater recovery for the Class. *See Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class"); *see also Stieberger v. Sullivan*, 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992); *Chatelain v. Prudential-Bache Sec., Inc.*,

12

805 F. Supp. 209, 213 (S.D.N.Y. 1992).  First, to obtain merits discovery, Lead Plaintiffs would have to defeat Defendants' motion to dismiss. *See* 15 U.S.C. § 77z-1(b) (under the PSLRA, discovery is stayed while any motion to dismiss is pending). To do so, Lead Plaintiffs would have to establish that the SAC satisfies the strict pleading requirements of the PSLRA, particularly the requirement that Lead Plaintiffs' factual allegations give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). An added hurdle will be Defendants' potential defenses to discovery that they do not have possession, custody, nor control of key documents as third parties will likely have important, relevant documents.

This Action could take several years to complete discovery, including taking depositions, and then proceed through class certification, summary judgment, and trial—all of which would be expensive and risky. The jury would then have had to determine the following, without limitation: (i) whether any representations/omissions were material; (ii) whether Defendants acted with scienter; (iii) whether the reliance presumption articulated by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972), applies; (iv) whether the fraud-on-the-market reliance presumption articulated by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-47 (1988), applies, and whether Defendants' rebuttal price-impact evidence under *Halliburton II*—a recent case in the early stages of interpretation and application in class-certification decisions nationwide—demonstrates that the *Basic* presumption should not apply; and (v) what was the artificial inflation of TERP's stock and how much of the price declines were attributable to the alleged curative disclosure(s). Not only would *any* recovery be very uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years.

13

If a class were certified, Lead Plaintiffs would have faced substantial additional obstacles at summary judgment and trial. Scienter is notoriously difficult to prove in securities-fraud cases. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). While Lead Plaintiffs are confident in the claims, a jury may have found that Defendants' conduct amounted to corporate mismanagement and negligence instead of recklessness. Similarly, with respect to loss causation and damages, a jury may have found that TERP's stock price declined not just because of the alleged fraud, but also because of broader investor concerns over mismanagement or corporate strategy.

Even if Plaintiffs prevailed on all of the securities-fraud elements at trial and secured damages, a significant hurdle remained: collecting the judgment from Defendants or their insurers. Lieberman Decl. ¶63. Defendants' funds available to satisfy a judgment in this Action would be severely limited. *Id.* Their insurance policies could rapidly deplete, given the limited proceeds available and their certain wasting, as well as the existence of other actions in which Defendants are implicated, such as the *SunEdison* Action, the *Vivint* Action, and the SunEdison bankruptcy, which may be paid from the same, limited insurance proceeds. Lieberman Decl. ¶10.

### b.    Adequate Notice and Reaction of the Class

Courts repeatedly held that "one indication of the fairness of a settlement is the lack of or small number of objections." *Strougo*, 258 F. Supp. 2d at 258 (citing *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990)); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-80 (S.D.N.Y. 1998) (approving settlement where "minuscule" percentage of the class objected); *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people). To date, Lead Plaintiffs and Plaintiffs' Counsel has received only one objection the Settlement and

only one invalid request for exclusion to the Settlement. JND Decl. ¶15; Lieberman Decl. ¶¶70-71. The one objection received appears to be unrelated to the instant Settlement. The objection of Edward A. Simpson (Dkt. 261) (the "Simpson Objection") states that Mr. Simpson sold Terraform stock "however, NEVER at a loss."  (SunEdison Dkt. 261 at p. 1). The Simpson Objection further states "I do hereby allege that Teraform [sic] (nor Ameritrade) did not have the authority to authorize the selling of my stock at a loss to me." *Id*. at p. 1. The Simpson Objection attaches brokerage statements reflecting the sale of 2,000 shares of TERP stock on October 19, 2017 at a price of $9.52 per share, crossing out the words "You Sold" in the account entry and writing in "They stole." *Id*. at 3. On October 16, 2017 Brookfield Asset Management ("Brookfield") acquired a controlling interest in TERP and became its new sponsor. Upon closing of the merger TERP shareholders were entitled to either (i) $9.52 in cash or (ii) retain one share of Class A common stock, par value $0.01 per share in the Company for each share of the company's Class A common stock owned immediately prior to the merger[5]. Based upon this, the Simpson Objection appears to be directed at the sale of TERP stock under the terms of TERP's merger with Brookfield, and not to anything related to the instant Settlement.  Indeed, the Simpson Objection nowhere references the any term of the Settlement. Accordingly, Lead Plaintiffs respectfully request that the Court overrule the Simpson Objection.

The request for exclusion submitted by Claritas Administracao de Recursos Ltda is invalid as it admits that they are not a TERP shareholder and does not, and did not, have any TERP securities during the Class Period. JND Decl. ¶15; Lieberman Decl. ¶70. The deadline for objections to any aspect of the Settlement or request for exclusion is January 5, 2018. This

---

[5] *See* https://solarindustrymag.com/terraform-power-stockholders-green-light-brookfield-merger.

weighs in favor of approving the Settlement. Lead Plaintiffs will address any additional requests for exclusion and objections in their reply.

**c.      Stage of Proceedings and Discovery Completed**

The Settlement was achieved after Plaintiffs' Counsel: (a) conducted an extensive factual investigation, which included the review of publicly available documents about TERP, related entities such as SunEdison, and certain individual Defendants; (b) researched, drafted and filed the initial complaint, the first amended complaint, and the operative SAC; (c) consulted with a financial expert; (d) identified certain witnesses and developed leads; (e) consulted with private investigators in relation to the allegations in this action; and (f) participated in extensive settlement negotiations with the Defendants. *See* Lieberman Decl. ¶6. As a result, prior to entering into the Settlement, Plaintiffs' Counsel and Lead Plaintiffs understood the strengths and weaknesses of the case. *See In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases").

**d.      Risks of Establishing Liability and Damages**

In assessing the Settlement, the Court should balance the immediacy and certainty of a recovery for the Class against the continuing risks of litigation. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 591-92 (S.D.N.Y. 1992); *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. at 741. While the claims asserted in this action were brought in good faith and Lead Plaintiffs believe they have merit, as further explained in the Lieberman Declaration, there are always risks in attempting to achieve a better result for a class through continued litigation. Lieberman Decl. ¶¶49-71.

Proof of damages in a securities case is always difficult and invariably requires highly-technical expert testimony. The experts retained by Lead Plaintiffs and Defendants no doubt

16

would have widely divergent views as to the range of recoverable damages at trial. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally In re Am. Bank Note Holographics,* 127 F. Supp. 2d at 426-27 (stating that "[i]n such a battle, Lead Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Aside from these difficulties – which are common to any contested securities action – Plaintiffs' Counsel has identified the following specific risks weighing against continued prosecution of this action:

### i.      Risks Posed In Obtaining Discoverable Evidence

Lead Plaintiffs and Plaintiffs' Counsel recognize that prosecution of this case to trial would have presented substantial difficulties. Lead Plaintiffs and Plaintiffs' Counsel recognize that there is a risk in securities class action litigation. Although Lead Plaintiffs believe their SAC is strong enough to survive Defendants' motion to dismiss, it is not a guarantee that the Court would agree. If Lead Plaintiffs were able to survive the motion to dismiss, it does not necessarily mean that Lead Plaintiffs would be able to obtain the proof necessary to prevail at summary judgment and trial.

### ii.      Risks Posed by Obstacles to Collecting a Judgment

Lead Plaintiffs and Plaintiffs' Counsel also recognize that even if they were successful at trial, it is likely expensive, long appeals would be filed. This poses a risk to the class because it would drag out the action and deplete Defendants' resources that could potentially go to the Class. Additionally, there are several other actions, including securities class actions and SunEdison's bankruptcy, which could consume funds available to resolve Lead Plaintiffs' Claims. Thus, having the Settlement now guarantees recovery to Class Members.

### e.      The Risks of Maintaining the Class Action Through Trial

If this litigation reached the point of deciding Lead Plaintiffs' motion for class certification, the Class would face the risk of arguments by Defendants regarding any potential factual dissimilarity of claims asserted by Lead Plaintiffs and putative Settlement Class members. If successful, the defense would mandate individual lawsuits by Settlement Class Members hoping to collect minimal amounts of damages accrued. Moreover, even if a Class were certified over Defendants' objection, it would face multiple risks in proving the class-wide nature of Defendants' securities laws violations at trial.

Lead Plaintiffs and Plaintiffs' Counsel also recognize that they face risk in certifying a class action in this case. "Under Rule 23(b)(3), certification is appropriate where 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members,' and class litigation 'is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 73 (S.D.N.Y. 2015) (quoting Fed R. Civ. P 23(b)(3)). Typically, in the context of an action for securities fraud under 10b-5, the greatest obstacle to establishing predominance of class-wide issues is establishing that the reliance element of the claim is a class-wide issue. *Id.* at 76. Lead Plaintiffs are able to establish reliance only where they can show that a class-wide presumption of reliance is proper. The Supreme Court first held in *Basic v. Levinson* that a presumption of reliance is appropriate where there was a "fraud on the market" – that is, Defendants made a misleading statement in an efficient market, and that this misstatement caused class members to purchase stock at an inflated price. *Basic Inc. v. Levinson*, 485 U.S. 224, 241, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). "To invoke the *Basic* presumption, a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between

18

when the misrepresentations were made and when the truth was revealed." *Carpenters Pension*, 310 F.R.D. at 76–77. More recently, the Supreme Court has made clear that defendants may rebut this presumption by showing that the misstatement did not impact the price of the company's stock. *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2413, 189 L. Ed. 2d 339 (2014).

To determine efficiency, the Second Circuit typically looks at the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1282 (D.N.J. 1989). "These factors are (1) the average weekly trading volume; (2) the number of analysts who follow the stock; (3) the existence of market makers and arbitrageurs; (4) the ability of the company to file Securities Exchange Commission ('SEC') Form S–3; and (5) evidence of share price response to unexpected news." *Carpenters Pension,* 310 F.R.D. at 79. Plaintiffs' Counsel would have to conduct a thorough analysis of the ability of TERP's stock to meet this efficiency test, with special attention to factor 5, evidence of price response to unexpected news, or "price impact." Courts typically apply great weight to the price impact analysis, plaintiffs typically establish through expert testimony, primarily through a statistical tool called an "event study." Plaintiffs' Counsel would likely have retained an expert which is a huge expense to undertake. Although Lead Plaintiffs believe that they would be able to meet their burden to successfully get the Class certified, it is no guarantee and would be a large undertaking. This was a consideration with respect to Plaintiffs' Counsel and Lead Plaintiff's decision to settle.

### f.     Range of Reasonableness of the Settlement

Reality dictates that, to settle a case, some discount needs to be offered to a settling defendant, or it would otherwise have no economic incentive to settle. Additionally, in the context of a factually and legally complex securities class action lawsuit, responsible class counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near

the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted).

Indeed, the Second Circuit has held that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 (footnote omitted); *accord In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455, n.2. Courts agree that the determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. *In re PaineWebber*, 171 F.R.D. at 130; *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989).

Plaintiffs' Counsel, in consultation with a damages expert, estimates the aggregate damages to the class are approximately $326.1 million to $357.2 million. Lieberman Decl. ¶¶12, 51. The Settlement represents 4.5% of estimated damages (using the low end of the estimated damages range) or 4.2% of estimated damages (using the high end of the estimated damages range). *Id. See In re China Sunergy Sec. Litig.*, No. 07-Civ.7895, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses); *Velez v. Novartis Pharm. Corp.*, 04 CIV 09194 CM, 2010 WL 4877852, *14 (S.D.N.Y. Nov. 30, 2010) (noting that "courts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery'"

and collecting cases from the Southern District where settlements were approved for percentages of estimated damages such as 1.6%, 2%, and 5%). This is an excellent recovery for a securities class action. Cornerstone Research calculated that for 2016, securities settlements overall returned a median of 2.5% of damages, with 3.0% where damages are between $250-$499 million. Between 2006 and 2015, the overall median settlement as a percentage of estimated damages was 2.4% and for cases where damages fell between $250-$499 million it was 1.9%. Cornerstone Research, *Securities Class Action Settlement 2016 Review and Analysis* (2016) at 7-8.[6] Thus the result here is more than the historical median settlements for cases of this size.

Additionally, the Settlement provides for payment to Class Members now, without delay, not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Moreover, the Settlement represents a recovery to Class Members of a significant portion of the Defendants' insurance policy, especially considering that a substantial portion of it has been depleted already in defending this action and other insurance proceeds will have to be used in other related actions. Any additional recovery would be highly speculative, and would require many years of additional litigation with no promise of recovering any personal assets of the Individual Defendants.

Although additional litigation could theoretically result in a large damages award at trial, that result would only come after Defendants spent millions of dollars in litigation expenses – further depleting *available* insurance funds, while, at the same time, not guaranteeing that the Class would get a larger result. Lieberman Decl. ¶63. Given the obstacles and uncertainties

---

[6] Available at http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf. Last viewed on December 21, 2017.

attendant to this complex litigation and Defendants' eroding insurance policy, the Settlement is well within the range of reasonableness. It is unquestionably better than the unfortunate likelihood of no recovery at all.

> **g.** **Settlement Resulted From Arm's-Length Negotiations**

The experience and reputation of the parties' counsel and the arm's-length nature of the negotiations is entitled to great weight. *See, e.g., Wal-Mart*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d at 428 ("Courts have looked to ensure that the settlement resulted from arm's-length negotiations between counsel possessed of experience and ability necessary to effective representation of the class's interests.") (internal quotations omitted).

The record demonstrates the procedural fairness of the Settlement. The proposed Settlement was the result of lengthy negotiations between Plaintiffs' Counsel and defense counsel, with the aid of well regarded mediators over five sessions, four with Hon. Layn Phillips (Ret.) and one with Gregory Lindstrom of Phillips ADR. *See* Lieberman Decl. ¶¶44-45. The attorneys on both sides are experienced and thoroughly familiar with the factual and legal issues posed in the litigation (as evidenced by the procedural history of the case and the issues briefed before the Court). Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See Sumitomo*, 189 F.R.D. at 280 (when settlement negotiations are conducted at arm's length, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (quoting *In re Paine Webber Ltd. P'ships. Litig.*, 171 F.R.D. at 125; *In re Salomon Inc Sec. Litig.*, No. 91 CIV. 5442 (RPP), 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994)

(judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 87-89 (4th ed. 2002).

Plaintiffs' Counsel urges final approval of the proposed settlement based upon their: knowledge of the strengths and weaknesses of the case, analysis and investigation to date, the likely recovery at trial and/or after appeal, and experience in evaluating proposed class action settlements. Defendants are also represented by highly-capable counsel that fervently represented their clients, Wilmer Cutler Pickering Hale and Dorr LLP, Sidley Austin LLP, O'Melveny & Myers LLP, and Hinckley Allen & Snyder LLP. These firms entered into the Settlement following extensive negotiation.

### h.      Greater Judgment

For the reasons explained herein, the possibility of greater recovery than provided by the Settlement is not a guarantee and posses several risks to continue the litigation. If the action proceeds, both sides would be expending substantial resources and thus could deplete funds available to Lead Plaintiffs.

The Settlement should therefore be finally approved because it is fair, adequate and reasonable under the Second Circuit's *Grinnell* factors.

### B.      Approval of the Plan of Allocation Is Warranted

The Plan of Allocation was formulated with the principles of loss causation in mind. Therefore, those shareholders who bought and then sold shares, "before the relevant truth begins to leak out" have no recognized losses under the Plan of Allocation because "the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342; *see also In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable").

In addition to excluding those who incurred no provable damages, the Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid. JND Decl., Ex. A. After taking into account lack of loss causation and the timing of Class Members stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position. The Net Settlement Fund will be distributed on a *pro rata* basis depending on a Class Members' recognized losses.

In short, the Plan of Allocation has a rational basis, Plaintiffs' Counsel believes it fairly compensates Class Members, and this Court should approve it. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'").

## IV.   NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, including the following, without limitation: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Plaintiffs' Counsel, administrative costs, and awards to certain Lead Plaintiffs; (vii) the Settlement Class Members' rights, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii)

the process for filing a proof of claim; (ix) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (xi) the binding effect of a judgment on Settlement Class Members.

The Notice program was carried out by a third-party claims administrator that is nationally recognized for notice and claims administration, under the supervision of Plaintiffs' Counsel. Lieberman Decl. ¶72-74. In accordance with the Court's orders, as of December 20, 2017, JND distributed 58,248 Notice Packets to Class Members, brokers, and nominee holders. JND Decl. ¶11. Summary Notice was posted over *GlobeNewswire* on September 27, 2017 and published in *Investor's Business Daily* on September 25, 2017. *Id.* at ¶12. The Notice Packets were also available on the website JND created for this Settlement, http://www.terraformpowersecuritieslitigation.com and JND established a claims call center. *Id.* at ¶¶13-14.

This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and posted on the internet, was "the best notice … practicable under the circumstances." Rule 23(c)(2)(B); *see In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014).

## V.    CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs respectfully request that the Court finally approve the proposed class action settlement.

Dated:   December 21, 2017

Respectfully submitted,

**POMERANTZ LLP**

By: /s/Jeremy A. Lieberman
Jeremy A. Lieberman
Brenda Szydlo
Jennifer Banner Sobers
600 Third Avenue, Floor 20
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com.
Email: jbsobers@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the
proposed Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (LR 5733)
Phillip Kim (PK 9384)
Sara Fuks (SF 6034)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: sfuks@rosenlegal.com

*Additional Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2017, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>/s/Jeremy A. Lieberman</u>