**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
Jennifer Banner Sobers
600 Third Avenue, Floor 20
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com.
Email: jbsobers@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: SUNEDISON, INC. SECURITIES LITIGATION<br><br>This Document Applies To:<br><br>***Chamblee, et al. v. TerraForm Power, Inc., et al.*, 1:16-cv-08039-PKC** | No. 1:16 MD 2742 (PKC) (AJP) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION
FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES, AND AWARD TO LEAD PLAINTIFFS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTS ............................................................................................................... 4

III.   ARGUMENT ..................................................................................................... 4

    A.    The Application for an Award of Attorneys' Fees and Reimbursement of
        Expenses Is Reasonable and Should Be Approved .................................................. 4

        1.    Legal Standards for an Award of Attorneys' Fees ..................................... 4

        2.    The Requested Fee is Fair Under the Percentage-of Recovery Method and
            the Second Circuit's *Goldberger* Factors ................................................. 5

            a.    Time and Labor Expended By Counsel ......................................... 7

            b.    The Magnitude and Complexities of the Litigation/Risks of
                Litigation ...................................................................................... 8

            c.    The Quality of Representation ....................................................... 9

            d.    The Requested Fee in Relation to the Settlement ........................ 11

            e.    Public Policy Considerations ....................................................... 13

        3.    The Requested Fee is Reasonable Under the Lodestar "Cross-Check".... 13

        4.    Reimbursement of Litigation Expenses ................................................... 16

    B.    The Proposed Award to Lead Plaintiffs is Reasonable ........................................ 16

IV.   CONCLUSION ................................................................................................ 18

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ............................. 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) .......................................................................................................... 5

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999) ............................................................................. 12

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................... 5, 14

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .......................................................................................................... 5

*Campos v. Goode*,
  No. 10 CIV. 0224 DF, 2011 WL 9530385, (S.D.N.Y. Mar. 4, 2011) ............................ 16

*Cherner v. Transitron Elec. Corp.*,
  221 F. Supp. 55 (D. Mass. 1963) ...................................................................................... 8

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448  (2d Cir. 1974) ....................................................................................... 8, 14

*Dolgow v. Anderson*,
  43 F.R.D. 472 (E.D.N.Y. 1968) ........................................................................................ 5

*Eltman v. Grandma Lee's, Inc.*,
  No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ................................ 11, 13

*Goldberger v. Integrated Res., Inc.*,
  209F.3d 43 (2d Cir. 2000) ...................................................................................... *passim*

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................................ 14

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................... 17

*In re AOL Time Warner, Inc. Sec.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ......................... 7

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ............................................................................................ 14

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014) ............................................................................................ 17

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................................ 16

*In re BioScrip, Inc. Sec. Litig.*,
  No. 13-CV-6922 (AJN), 2017 WL 3208941 (S.D.N.Y. July 26, 2017) .......................... 15

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................... 15

*In re Cont'l. Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ...................................................................................... 14

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  98 Civ. 4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001)............................................. 6

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................... 14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................ 12, 16

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................. 16

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................................... 16

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................................ 16

*In re Penthouse Executive Club Compensation Litig.*,
  Case No. 10-CV-1145, 2014 WL 185628 (S.D.N.Y. January 14, 2014) ........................... 6

*In re StockerYale, Inc. Sec. Litig.*,
  2007 WL 4589772 (D.N.H. Decl. 18, 2007) ................................................................ 12

*In re Warner Commc'ns. Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................................... 9

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005).......................................................................... 5

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964).................................................................................................. 5

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................................... 6

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).................................................................................................. 5

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993) ............................................................................. 16

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
  818 F.2d 278 (2d Cir. 1987)..................................................................................... 16

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ............................................................................. 15

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................... 6

*West Virginia v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970) ...................................................................... 8

**Statutes**

15 U.S.C. § 78u-4(a)(4) ............................................................................................ 17

15 U.S.C. § 78u-4(a)(6) ............................................................................................ 6

## I.       INTRODUCTION

Lead Plaintiffs Clemens Schlettwein ("Schlettwein") and Jerome Spindler ("Spindler") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully submit this memorandum in support of the motion for an award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel.[2]

Lead Plaintiffs and Plaintiffs' Counsel achieved the immediate and significant $14,750,000 Settlement for the Class. Plaintiffs' Counsel seeks an attorneys' fees award of 25% of the Settlement Amount, or $3,687,500. The requested attorneys' fees award represents a modest lodestar multiplier of 2.61 based on the lodestar of Plaintiffs' Counsel of $1,411,582 (for 1,964.55 hours of attorney and paralegal work). *See* Declaration of Jeremy A. Lieberman In Support of Lead Plaintiffs' Motion For: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiffs ("Lieberman Decl." or "Lieberman Declaration"), filed herewith, ¶92.

The requested fees are fair, reasonable, and consistent with the range of percentages that courts have awarded in securities class-action settlements of this size. Plaintiffs' Counsel

---

[1] "Settlement Class" means all Persons (including, without limitation, their beneficiaries) who purchased TERP securities during the period from July 18, 2014 through March 15, 2016, both dates inclusive, and excluded from the Settlement Class are: (i) Defendant TERP and all current and former officers and directors of TERP; (ii) Defendants Ahmad Chatila, Carlos Domenech Zornoza, Brian Wuebbels, Alejandro Hernandez, and Francisco Perez Gundin; (iii) blood relatives and household members of any such person excluded under (i); (iv) any entities affiliated with, controlled by, or more than 5% owned by, any person excluded under (i) and (ii); (v) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iv); (vi) Opt-Outs; and (vii) Persons who have no compensable damages. Order Granting Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ("Preliminary Approval Order") (Dkt. No. 110 at ¶2).

[2] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed with the Court on September 1, 2017 (Dkt. No. 107).

expended meaningful time and labor in advancing this Action and the Settlement. They accomplished the following, without limitation: (i) conducted an investigation to plead an initial, amended complaint, and the operative Second Amended Securities Class Action Complaint ("SAC") which required both scouring public records and retention of investigators; (ii) moved for lead-plaintiff appointment on behalf of Lead Plaintiffs Schlettwein and Spindler, which entailed researching securities laws; (iii) participated in Multidistrict Litigation proceedings; (iv) carefully followed SunEdison's bankruptcy proceedings[3] and engaged bankruptcy counsel; (v) engaged in extensive settlement negotiations, including attending four mediation sessions with Judge Layn Phillips (Ret.) of Phillips ADR and one mediation session with Gregory Lindstrom of Phillips ADR as well as prepared substantial and detailed mediation submissions; (vi) negotiated and drafted the terms of all relevant settlement documents including the Stipulation, Preliminary Approval Order, and the notice documents; (vii) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; and (viii) oversaw the provision of Notice to the proposed settlement class and monitoring the work of the selected claims administrator. Lieberman Decl. ¶6.

In addition to the daunting requirements of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. §78u-4(f)(7) ("PSLRA"), this litigation was risky and complex for several reasons. If the Settlement was not reached, the first hurdle Lead Plaintiffs faced would be to successfully defeat Defendants' motion to dismiss. This is no easy feat considering the heightened pleading standards required by the PSLRA that Lead Plaintiffs faced. Further, even if Plaintiffs were able to defeat the motion to dismiss and commence discovery, discovery posed a burden on Lead Plaintiffs because it would require not

---

[3] SunEdison's bankruptcy is pending in the U.S. Bankruptcy Court for the Southern District of New York, styled as *SunEdison, Inc., et al.,* Case No. 16-10992.

only party discovery, but extensive third party discovery. Even if Lead Plaintiffs advanced past Defendants' motion to dismiss and potential summary judgment motions, and Lead Plaintiffs prevailed on all of the elements of a securities fraud claim at trial and secured a judgment on behalf of the Settlement Class, a significant hurdle remained: collecting the judgment from Defendants or their insurers. The insurance proceeds available to satisfy a judgment in this Action are limited, are wasting directors' and officers' liability insurance policies that dwindle down by continuing defense costs, and are being depleted rapidly as there are several related securities actions pending. Lieberman Decl. ¶10.

Plaintiffs' Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $84,894.02. *See* Lieberman Decl. ¶100; Pomerantz Fee Decl. ¶8; Rosen Fee Decl. ¶8; Cohen Fee Decl. ¶7.[4] This amount is well below the estimated $150,000 limit of litigation-expense reimbursement that Lead Plaintiffs set forth in the Notice. These expenses were both reasonable and necessary to prosecute and resolve the claims against the Defendants successfully.

Additionally, Lead Plaintiffs well deserve the modest request for an award of $2,000 each, or $4,000 in total, to compensate them for their time and service to the Settlement Class, as well as to function as incentives to serve as lead plaintiffs. Lieberman Decl. ¶102.

Lead Plaintiffs and Plaintiffs' Counsel undertook the risky task of pursuing this litigation, with no guarantee of the positive outcome they achieved. "Congress, the Executive Branch, and

---

[4] Declaration of Jeremy A. Lieberman on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), Declaration of Laurence M. Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl."), Declaration of Daniel S. Sommers on Behalf of Cohen Milstein Sellers & Toll PLLC Concerning Attorneys' Fees and Expenses ("Cohen Fee Decl.") attached respectfully as Exhibits 2 to 4 to the Lieberman Declaration.

[the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions [...].'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013). Lead Plaintiffs' and Plaintiffs' Counsel's contributions here exemplify the value of this "essential supplement." In light of the risks faced, the complexity of the case, the quality of legal work performed, necessary expenses incurred, the amount of time and effort expended by Plaintiffs' Counsel, and the size of the fee and expense request in relation to the Settlement achieved, the fee and expense request totaling twenty five of the Settlement Amount or $3,687,500 with interest is both fair and reasonable under the standards used in the Second Circuit.

## II.    FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Lieberman Declaration filed herewith, as well as Sections I and II of the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement (the "Final Approval Memo."), which is incorporated herein by reference. Lead Plaintiffs respectfully refer the Court to the statement of the Final Approval Memo.

## III.    ARGUMENT

### A.    The Application for an Award of Attorneys' Fees and Reimbursement of Expenses Is Reasonable and Should Be Approved

#### 1.    Legal Standards for an Award of Attorneys' Fees

The Supreme Court, the Second Circuit, and courts within this Circuit have all recognized that where counsel's efforts have created a "common fund" for the benefit a class, counsel should be compensated from that common fund. *See, e.g., Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) ("When attorneys create a common fund from which members of a class are compensated for a common injury, they are entitled to a reasonable fee – set by the court – to be taken from the fund.") (internal quotation omitted).

Awards of attorneys' fees from a common fund serve the dual purposes of encouraging representatives to seek redress for damages caused to an entire class of persons and discouraging future misconduct of a similar nature. *Dolgow v. Anderson,* 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). The common fund doctrine is also designed to prevent the unjust enrichment of class members who benefit from a lawsuit without paying for its costs. *See Boeing Co.*, 444 U.S. at 478. Because the common fund doctrine provides incentives for both plaintiffs and their counsel and serves to deter securities misconduct, the Supreme Court has emphasized that private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

### 2.    The Requested Fee is Fair Under the Percentage-of Recovery Method and the Second Circuit's *Goldberger* Factors

The Supreme Court consistently has held that the percentage-of-recovery approach is a correct method for determining attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984). In determining a reasonable fee, the Second Circuit has set forth the six factors that courts should consider when determining the reasonableness of a request for attorneys' fees in a common fund action:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (2d Cir. 2000) (internal quotations omitted).  Each of these factors supports the fee requested here.

In *Goldberger*, the Second Circuit examined the history of the alternative methods for calculating attorneys' fees and expressly approved use of the percentage-of-recovery method in awarding fees from a common fund. *Id*. at 50. Indeed, the clear trend within this Circuit and this District is to utilize the percentage-of-recovery approach when awarding attorneys' fees in common fund cases. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (stating that "the trend [is] in favor of the percentage-of-recovery approach ... within this district"); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("*Del Global*") (citing *Goldberger*, and noting "the trend within this Circuit is to use the percentage of recovery method to calculate fee awards to class counsel" in common fund cases); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 98 Civ. 4318, 2001 WL 709262, at *4 (S.D.N.Y. June 22, 2001) ("use [of] the percentage method is consistent with the trend in the Circuit"). *In re Penthouse Executive Club Comp. Litig.*, Case No. 10-CV-1145, 2014 WL 185628, at * 8-9 (S.D.N.Y. January 14, 2014) (J. Wood) (awarding a percentage of the fund in a common fund wage and hour class action and noting "the trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one.") (citations omitted).

The use of the percentage of recovery method also comports with the language of the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class . . . ." 15 U.S.C. § 78u-4(a)(6); *Maley*, 186 F. Supp. 2d at 370 (when drafting the PSRLA, Congress "indicated a preference for the use of the percentage method").

6

In determining a reasonable fee under the percentage-of-recovery approach, courts look to the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *11 (S.D.N.Y. Oct. 25, 2006) (*citing Goldberger*). Each factor supports the fee request here.

### a.      Time and Labor Expended By Counsel

As set forth in the Lieberman Declaration, Plaintiffs' Counsel expended 1,964.55 hours for an aggregate lodestar of $1,411,582 in the litigation of this case. Lieberman Decl. ¶89. Plaintiffs' Counsel, among other things: (i) conducted an investigation to plead an initial, amended complaint, and the operative SAC which required both scouring public records and retention of investigators; (ii) moved for lead-plaintiff appointment on behalf of Lead Plaintiffs Schlettwein and Spindler, which entailed researching securities laws; (iii) participated in MDL proceedings; (iv) carefully followed SunEdison's bankruptcy proceedings and engaged bankruptcy counsel; (v) engaged in extensive settlement negotiations, including attending four mediation sessions with Judge Layn Phillips (Ret.) of Phillips ADR and one mediation session with Gregory Lindstrom of Phillips ADR as well as prepared substantial and detailed mediation submissions; (vi) negotiated and drafted the terms of all relevant settlement documents including the Stipulation, Preliminary Approval Order, and the notice documents; (vii) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; and (viii) oversaw the provision of Notice to the proposed settlement class and monitoring the work of the selected claims administrator. Lieberman Decl. ¶6. Further, Plaintiffs' Counsel divided up work in the action to ensure that no tasks were duplicated and that

all work was performed efficiently. Accordingly, the time and labor expended by Plaintiffs'

Counsel here amply supports the requested fee.

>   **b.**   **The Magnitude and Complexities of the Litigation/Risks of Litigation**

The magnitude, complexities and the risks of the litigation are addressed fully in the final

approval memorandum of law. Although Lead Plaintiffs believe that this action has significant

merit, given the risks of any litigation, the prospect of a favorable verdict was far from assured.

Moreover, cases far less complex than this action have been lost on motion, at trial, or on appeal.

As stated in *West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970),

*aff'd*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971):

> It is known from past experience that no matter how confident one may be of the
> outcome of litigation, such confidence is often misplaced. Merely by way of
> example, two instances in this Court may be cited where offers of settlement were
> rejected by some plaintiffs and were disapproved by this Court. The trial in each
> case then resulted unfavorably for plaintiffs; in one case they recovered nothing
> and in the other they recovered less than the amount which had been offered in
> settlement.

The Second Circuit explicitly recognizes that the attorneys' "risk of litigation" analysis is an

important factor to be considered in making an appropriate fee award. In *Grinnell*, the Second

Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success. Nor, particularly in
> complicated cases producing large recoveries, is it just to make a fee depend
> solely on the reasonable amount of time expended.

*Grinnell Corp.*, 495 F.2d at 463 (2d Cir. 1974) (quoting *Cherner v. Transitron Elec. Corp.*, 221

F. Supp. 55, 61 (D. Mass. 1963)). There are numerous cases where Lead Counsel have spent

thousands of hours and received no payment. Furthermore, due to the circumstance of this case –

a wasting insurance policy and a risk that the claims would be defeated at summary judgment or

trial –Plaintiffs' Counsel submits that the risk of obtaining a smaller recovery, or no recovery at all, will only increase if the action is prosecuted any further.  Lieberman Decl. ¶¶10, 63.

This action had unique risks considering SunEdison's bankruptcy and SunEdison's relationship with TERP given that SunEdison is TERP's parent company. Lead Plaintiffs faced the risk of substantially less recovery than this Settlement provides due to the related *SunEdison* Action, and the numerous cases associated with it, and SunEdison's bankruptcy proceedings which likely eroded funds available to satisfy this action. Due to these related entities and related litigation, this action was even more complex than the typical securities class action litigation. Considering TERP's officers also held positions at SunEdison and TerraForm Global, Inc., they faced similar lawsuits on behalf of other investors. Settling the lawsuit now, with such an impressive recovery, is beneficial to the Class so they can receive guaranteed payment much sooner than if the action had to proceed longer, with the many moving pieces, and with no guarantee of recovery.

### c.    The Quality of Representation

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount of reasonable attorneys' fees under a percentage of the fee analysis. *See Goldberger*, at 209 F.3d at 50; *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Plaintiffs' Counsel's estimates of class-wide damages using different models ranged from $326.1 million to $357.2 million. Despite the significant risk of no recovery in this action, Plaintiffs' Counsel has successfully obtained a substantial cash settlement for the Class which represents approximately 4.5% of estimated damages (using the low end of the estimated damages range) or 4.2% of estimated damages (using the high end of the estimated damages range). Lieberman Decl. ¶12. This is an excellent recovery for a securities class action. Cornerstone Research calculated that

for 2016, securities settlements overall returned a median of 2.5% of damages, with 3.0% where damages are between $250-$499 million. Cornerstone Research, *Securities Class Action Settlement 2016 Review and Analysis* (2016) at 7-8.[5] Thus, the Settlement easily falls "within the range of possible approval" and warrants final approval.

The positive reaction by Settlement Class Members confirms the quality of Plaintiffs' Counsel's representation. The Settlement Class is overwhelmingly in favor of the Settlement. Summary Notice was published on *GlobeNewswire* on September 27, 2017 and in print once in *Investor's Business Daily* on September 25, 2017, Notice Packets were mailed to 58,248 potential Settlement Class Members, brokers, and nominee holders, and a website and claims call center regarding the Settlement were established. Declaration of Robert Cormio Regarding (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice and (C) Report on Requests for Exclusion Received to Date ("JND Decl.") at ¶¶11-14, attached as Exhibit 1 to the Lieberman Declaration. As of December 21, 2017, only one Settlement Class Member has objected to the Settlement. However, that objection appears to be directed to the agreement by TERP with Brookfield Asset Management wherein Brookfield acquired a controlling interest in TERP and became TERP's new sponsor. Accordingly, this objection is unrelated to the instant settlement.[6] *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002) (finding one objection to be "an insignificant showing of opposition to an otherwise acceptable deal" where 2,086 notices were mailed). Lieberman Decl. ¶71.

The standing and prior experience of Plaintiffs' Counsel is also relevant in determining fair compensation. *See, e.g.*, *Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82

---

[5] Available at http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf. Last viewed on December 21, 2017.

[6] The objection of Edward A. Simpson (Dkt. 261) is discussed fully in the Final Approval Memo.

CIV. 1912, 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986).  Here, Lead Plaintiffs and the Class are represented by Pomerantz LLP as Lead Counsel, The Rosen Law Firm, P.A. as Additional Plaintiffs' Counsel, and Cohen Millstein Sellers & Toll, PLLC as Liaison Counsel. As their firm resumes[7] demonstrate, Plaintiffs' Counsel has extensive experience in the specialized field of shareholder securities litigation. Plaintiffs' Counsel was able to leverage its experience and resources to adequately assess the merits and value of the case, and successfully negotiate the Settlement.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Plaintiffs' Counsel and the challenges overcome by Plaintiffs' Counsel. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 749; *Flag Telecom*, 2010 WL 4537550. Here, the Settling Defendants were represented by experienced and highly qualified attorneys at Wilmer Cutler Pickering Hale and Dorr LLP, Sidley Austin LLP, O'Melveny & Myers LLP, and Hinckley Allen & Snyder LLP, who aggressively represented their clients' interests. The fact that Plaintiffs' Counsel achieved this settlement for the Class in the face of high-quality legal opposition further evidences the quality of Lead Counsel's efforts herein.

### d.    The Requested Fee in Relation to the Settlement

A fee is intended to approximate what counsel would receive when bargaining in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring). Academic research further

---

[7] Pomerantz LLP's firm resume is attached as Exhibit A to the Pomerantz Fee Decl., The Rosen Law Firm, P.A.'s firm resume is Attached as Exhibit A to the Rosen Fee Decl., and Cohen Milstein, Sellers & Toll PLCC's firm resume is attached as Exhibit A to the Cohen Fee Decl.

confirms the reasonableness of a fee of 25% of the recovery in securities class actions. In cases settling between $10 million and $24 million, between 1996 and 2011 the median fee award was 30% and between 2012 and 2016 it was 27.5%. NERA Economic Consulting; *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (2017) at 39.[8] The request here falls right in line with other approved fee requests for over two decades.

The fee request of 25% of the Settlement Fund, or $3,687,500, is well in line with the percentages courts in this Circuit have awarded in similar securities class action settlements of this size. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 368 (awarding 33.3% of $11.5 million settlement); *In re AMF Bowling*, 334 F. Supp. 2d 462, 469 (S.D.N.Y. 2004)(awarding 25% of $20 million settlement)(J. Castel); *In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377 (SAS), 2012 WL 2149094, 2012 U.S. Dist. LEXIS 82599, at *9 (S.D.N.Y. June 8, 2012) (awarding 30%, or $23,130,000, for reaching "reasonable" but "by no means extraordinary" settlement); *In re Van Der Moolen Holding N.V. Sec. Litig*., No. 03-CV-8284 (RWS), 2006 U.S. Dist. LEXIS 98433, at *6 (S.D.N.Y. Dec. 6, 2006) (awarding 33.3% of $8 million settlement); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998)("25 percent may be the benchmark for cases involving settlements in the range of one to fifty million dollars."); *In re Giant Interactive*, 279 FRD 151, 166 (S.D.N.Y. 2011) (awarding 1/3 of $13 million); *Becher v. Long Island Lighting Co*., 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee of $7.8 million, is "well within the range accepted by courts in this circuit"); *In re StockerYale, Inc. Sec. Litig.*, 05 Civ. 00177, 2007 WL 4589772, at *6 (D.N.H. Decl. 18, 2007) (33% of $3.4 million settlement fund).

---

[8] Available at https://www.supremecourt.gov/opinions/URLs_Cited/OT2016/16-373/16-373-1.pdf. Last viewed on December 21, 2017.

Under the percentage-of-recovery approach, the attorneys' fee requested by Plaintiffs' Counsel is fair and reasonable for litigation of this kind and is wholly consistent with previous awards made by Courts both within and outside this Circuit.

> ### e. Public Policy Considerations

Private lawsuits further the objective of the federal securities laws to protect investors and consumers against deceptive practices. *Eltman*, 1986 WL 53400, at *4. As a practical matter, those lawsuits can be maintained only if competent counsel can be obtained to prosecute them. *Id.* In turn, competent counsel can be obtained only if courts award reasonable and adequate compensation for their services where successful results are achieved. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Id*.

These public policy goals are present here as it is important for the integrity of the markets for companies to comply with the federal securities laws. It is important for the markets and the Courts to have competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner. Public policy thus supports the award of the attorneys' fees requested here.

For all of the reasons set forth above, including the result achieved for the Class, as well as the substantial efforts and considerable expenses undertaken on a contingent fee basis in a risky case, it is respectfully requested that the Court adopt the percentage-of-recovery approach and award attorneys' fees equal to twenty-five percent of the Settlement Fund with interest.

> ### 3. The Requested Fee is Reasonable Under the Lodestar "Cross-Check"

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *AOL Time Warner*, 2006 WL 3057232, at *40 (describing this second analysis as the "lodestar

cross-check"); *Twinlab*, 187 F. Supp. 2d at 85. The lodestar/multiplier method involves calculating the product of the number of hours worked and counsel's hourly rates, *i.e.* the "lodestar," and adjusting the lodestar for contingency, risk and other factors by applying a "multiplier" to the lodestar. *Grinnell*, 495 F.2d at 470-71. Although the Second Circuit has encouraged the practice of performing this lodestar "cross-check" on the reasonableness of a fee award based on the percentage of recovery approach, when doing so, the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F. 3d at 50.

As set forth in the Lieberman Declaration, Plaintiffs' Counsel expended 1,964.55 hours for lodestar of $1,411,582 in the litigation of this case. Lieberman Decl. ¶89.[9] The lodestar multiplier is 2.61. *Id*. at ¶92. This modest multiplier is well below the lower range of lodestar multipliers approved by Courts in this Circuit, which further demonstrates the reasonableness of the requested fee. As Judge McMahon explained "[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL 2230177, at *17, n.7 (S.D.N.Y. July 27, 2007) (citing cases); *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 173 (3d Cir. 2006) (reaffirming prior holding that 2.99 multiplier was reasonable in case that lasted "four months, 'discovery was virtually nonexistent'"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y.

---

[9]  In computing the lodestar, the hourly billing rate to be applied is the "market rate", *i.e.*, the hourly rate that is normally charged in the community where counsel practices. *See, e.g.*, *Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *In re Cont'l. Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order," holding that district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high").

2014) (awarding attorney's fees representing a 5.2 multiplier); *Roberts v. Texaco, Inc*., 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5).

A high multiplier is especially appropriate in cases where, such as here, the parties reached a "relatively quick settlement" before engaging in extensive discovery. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 363–64, 373 (awarding fees reflecting a multiplier of 4.65 in a case that settled after one year of litigation, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (approving multiplier of 3.47 when counsel achieved an early settlement).

Moreover, Plaintiffs' Counsel's legal work will not end with the Court's approval of the Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proofs of Claim, shepherding the claims process, and responding to Settlement Class Members' inquiries. *See In re BioScrip, Inc. Sec. Litig.*, No. 13-CV-6922 (AJN), 2017 WL 3208941, at *23 (S.D.N.Y. July 26, 2017) (considering lead counsel's work that remained to be done after order); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

Accordingly, the time and effort devoted to this case by Plaintiffs' Counsel to obtain the $14,750,000 recovery confirms that the requested fee is thus reasonable, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

### 4.    Reimbursement of Litigation Expenses

In addition to Plaintiffs' Counsel's request of twenty-five percent of the Settlement Fund, Plaintiffs' Counsel seeks reimbursement of $84,894.02 in litigation costs and expenses incurred or expected to be incurred in connection with the prosecution of this Action. *See* Lieberman Decl., ¶100. Courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by a paying client. *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993); *Reichman v. Bonsignore, Brignati & Mazzotta*, *P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008).

Larger expense items included mediation fees of $23,568.41, bankruptcy counsel fees of $5,000, expert fees of $32,657, and investigator fees of $13,084.45. Lieberman Decl., ¶101. These fees were necessary for the prosecution and resolution of the action. *See In re Bear Stearns Cos, Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel); *Campos v. Goode*, No. 10 CIV. 0224, 2011 WL 9530385, at *8 (S.D.N.Y. Mar. 4, 2011) (reimbursing mediation fee); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1996) (reimbursing investigator fee). These expenses were reasonable and necessarily incurred to achieve the Settlement. *See Metlife*, 689 F. Supp. 2d at 364 (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

### B.    The Proposed Award to Lead Plaintiffs is Reasonable

A plaintiff may be compensated for the time he has spent overseeing a case. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011); *In re Marsh &*

16

*McLennan Companies, Inc. Sec. Litig.*, 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Congress, in fact, intended to grant courts discretion to approve awards in appropriate cases. Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley,* No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132-33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000).

Lead Plaintiffs have devoted significant time to this case. Each spent time reviewing the pleadings, reviewing the motion requesting appointment as lead plaintiff and lead counsel, reading and discussing Defendants' motion to dismiss, familiarizing themselves with the multidistrict litigation process, and conferring with counsel about case strategies and resolution of this matter such as settlement talks. Lieberman Decl. ¶¶102-104; *See* Declaration of Lead Plaintiff Clemens Schlettwein and Declaration of Lead Plaintiff Jerome Spindler, attached as Exhibits 5 and 6 to the Lieberman Declaration, respectively. Therefore, each Lead Plaintiff requests a payment to reimburse them for considerable time they spent on this case in the amount of $2,000 each, or $4,000 in total.

17

## IV. CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and an Award to Lead Plaintiffs for services rendered to the Settlement Class.

Dated: December 21, 2017        Respectfully submitted,

**POMERANTZ LLP**

By: /s/Jeremy A. Lieberman
Jeremy A. Lieberman
Brenda Szydlo
Jennifer Banner Sobers
600 Third Avenue, Floor 20
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com.
Email: jbsobers@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the proposed Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (LR 5733)
Phillip Kim (PK 9384)
Sara Fuks (SF 6034)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: sfuks@rosenlegal.com

*Additional Counsel for Lead Plaintiffs*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2017, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>/s/Jeremy A. Lieberman</u>

19