# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUNEDISON, INC. SECURITIES LITIGATION | No. 1:16-md-02742-PKC |
| | MDL No. 2742 |
| This Document Applies to: | |
| *In re TerraForm Global, Inc. Securities Litigation,* 16-cv-07967-PKC, and consolidated cases | |

## DECLARATION OF JACK G. FRUCHTER

I, Jack G. Fruchter, declare as follows:

1.      I am a member of the Bar of the State of New York admitted to practice in numerous federal courts and have been admitted to this Court. I am a partner at Abraham, Fruchter & Twersky, LLP, Court-appointed Lead Counsel for the Lead Plaintiff Pyramid Holdings, Inc. ("Pyramid Holdings") in the above-captioned action (the "Action"). I respectfully submit this Declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in this Action and the reimbursement of expenses incurred by this firm in the course of this litigation.

2.      I have personal knowledge of all material matters related to the Action based upon my active supervision and participation in the prosecution of the Action since its inception.

3.      Abraham, Fruchter & Twersky, LLP filed a class action complaint on or about November 5, 2015 on behalf of Pyramid Holdings in the United States District Court for the Northern District of California (the "California District Court"). Prior to the filing of that complaint, my firm did an extensive investigation into possible claims. On December 28, 2015,

1

Abraham, Fruchter & Twersky, LLP filed a lead plaintiff motion for our client Pyramid Holdings. On June 2, 2016, the California District Court appointed Pyramid Holdings as Interim Lead Plaintiff and my firm as Interim Lead Counsel. The appointments were interim because this Action and other related actions had been referred to the Judicial Panel on Multidistrict Litigation ("JPML") and the California District Court wanted to allow the pending motion to transfer and other motions to remand some of the related cases to be decided before those appointments were finalized. This Court did finalize those appointments in an Order dated December 22, 2016. Since the time of the investigation into the filing of the initial complaint by Pyramid Holdings, my firm has actively and vigorously been litigating this Action. During the course of this Action, my firm provided the following services: reviewed TerraForm Global, Inc's ("Global" or the "Company") initial public offering ("IPO") filings, Global's and SunEdison, Inc.'s ("SunEdison") press releases, public statements, U.S. Securities and Exchange Commission ("SEC") filings, regulatory filings and reports, and reviewed securities analysts' reports and advisories about the Company and about SunEdison; drafted an initial complaint, a consolidated and amended complaint and then a second amended complaint; moved for Pyramid Holdings to be appointed lead plaintiff and opposed a competing motion by a movant whose alleged connections to one of the Defendants created a conflict that would compromise its ability to represent the putative class adequately; participated in the proceedings before the JPML regarding the consolidation of the litigation; reviewed media reports about the Company and about SunEdison; reviewed court filings in litigation involving SunEdison and related entities; researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto, including the viability of claims that arose from the actions of a different company (i.e., SunEdison) and negative causation and loss causation issues; responded to Defendants' pre-motion letters submitted to the Court; retained Bankruptcy counsel and worked

with that counsel on submissions during SunEdison's Bankruptcy Court proceedings to protect the interests of the Global Class members; drafted and filed opposition papers to Defendants motion to dismiss; consulted with a damages and loss causation expert to estimate damages and formulate responses to Defendants' negative causation and loss causation arguments; engaged in extensive settlement negotiations with Defendants, which included, during a period of nine months, participating in four in-person mediation sessions and conducting multiple telephone discussions with the mediator during which the parties negotiated by having proposals conveyed back-and-forth by the mediator; drafted an extensive Mediation Statement with accompanying exhibits supporting Plaintiffs' contentions and a response to Defendants' Mediation Statement; reviewed more than 420,000 pages of documents produced by Global, including the documents it prepared in connection with its IPO and its filings to the SEC in connection with the IPO; and drafted and negotiated settlement papers with Defendants, including the Notice to Class members; drafted papers in support of the motion for preliminary approval of the Settlement; drafted the proposed Plan of Allocation after consulting with Plaintiffs' damages expert.  We continue to work with the claims administrator to answer Class members' inquiries regarding the Settlement.

4.      As Lead Counsel, my firm has directed this litigation from its inception and has also supervised other Plaintiffs' Counsel.

5.      The information in this declaration regarding my firm's time and expenses is based on time and expense printouts prepared and maintained by the firm in the ordinary course of business.  I am the partner who oversaw and/or conducted the day-to-day activities in the litigation and reviewed these printouts (and backup documentation where necessary or appropriate).  The purpose of these reviews was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses

3

committed to the litigation.  As a result of these reviews, reductions were made to both time and expenses either in the exercise of "billing judgment" or to conform to the firm's guidelines and policies.  As a result of these reviews and adjustments, I believe that the time reflected in the firm's lodestar calculation and the expenses and charges for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.  In addition, I believe that the expenses and charges are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

6.    The total number of hours spent on this litigation by Abraham, Fruchter & Twersky, LLP is 5,607.75.  The total lodestar amount for attorney time based on current rates is $3,398,047.50.  A breakdown of the lodestar is provided in the attached Exhibit A.  The hourly rates are the usual and customary rates charged for each individual attorney or were the rates last in effect when work was performed with regard to this matter for attorneys at Abraham, Fruchter & Twersky, LLP no longer employed by the firm.   This schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by the firm.

7.    My firm also incurred or accrued a total of $182,737.90 in unreimbursed expenses in connection with the prosecution of this litigation.   Those expenses and charges are summarized by category in the attached Exhibit B.

8.    The expenses incurred pertaining to this Action are reflected in the books and records of this firm.  These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

9.    The total amount of fees and expenses incurred by Abraham, Fruchter & Twersky, LLP are appropriate and reasonable considering that Abraham, Fruchter & Twersky, LLP performed the tasks discussed in paragraph 3 above, as further detailed in the accompanying

Declaration of Lawrence D. Levit in Support of Plaintiffs' Motion for Final Approval of Settlement, Award of Attorneys' Fees and Reimbursement of Expenses.

10.    A description of the qualifications and background of my firm's attorneys are included in the firm resume attached hereto as Exhibit C.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.  Executed this 16th day of March, 2018 in New York, New York.

_____
Jack G. Fruchter

# EXHIBIT A

## In re TERRAFORM GLOBAL, INC. SEC. LITIG. FEE REPORT

**FIRM NAME:**
Abraham, Fruchter & Twersky, LLP

**REPORTING PERIOD:**     Inception through Present

| Timekeeper | Years of Experience | Hours For Period | Rate | Lodestar for Period |
|---|---|---|---|---|
| Jeffrey S. Abraham (P) | 30 | 67.50 | $ 885.00 | $ 59,737.50 |
| Jack Fruchter (P) | 25 | 490.25 | $ 885.00 | $ 433,871.25 |
| Mitchell M.Z. Twersky (P) | 26 | 137.25 | $ 885.00 | $ 121,466.25 |
| Lawrence Levit (OC) | 32 | 890.50 | $ 800.00 | $ 712,400.00 |
| Ian D. Berg (OC) | 15 | 176.50 | $ 750.00 | $ 132,375.00 |
| Takeo Kellar (OC) | 14 | 246.75 | $ 625.00 | $ 154,218.75 |
| Cassandra Porsch (OC) | 13 | 1501.50 | $ 625.00 | $ 938,437.50 |
| Jake Nachmani (A) | 8 | 15.50 | $ 525.00 | $ 8,137.50 |
| Wei Chen (A) | 8 | 581.25 | $ 495.00 | $ 287,718.75 |
| Erin Dempsey (A) | 4 | 269.00 | $ 395.00 | $ 106,255.00 |
| Ashley Dubin (SA) | 7 | 436.25 | $ 360.00 | $ 157,050.00 |
| Furine Blaise (SA) | 13 | 456.75 | $ 360.00 | $ 164,430.00 |
| Charles Pietrofesa (SA) | 12 | 129.25 | $ 360.00 | $ 46,530.00 |
| Joseph Dieuvil (SA) | 8 | 101.50 | $ 360.00 | $ 36,540.00 |
| Dietrich Harris (SA) | 7 | 108.00 | $ 360.00 | $ 38,880.00 |
| Total | | 5,607.75 | | $ 3,398,047.50 |

**Legend**
P= Partner
OC= Of Counsel
A= Associate
SA= Staff Attorney

# EXHIBIT B

**In re TerraForm Global, Inc. Sec. Litig.**

**LITIGATION EXPENSES**
**(as of 3/16/18)**

| Category | Amount | |
|---|---|---|
| Clerk filing fees/Court fees | $ | 897.00 |
| Computer Research | $ | 7,054.59 |
| E-discovery Document Review Database | $ | 5,822.50 |
| Expert: Damages | $ | 26,490.00 |
| Expert: Bankruptcy counsel | $ | 74,346.75 |
| Meals and conference expenses | $ | 1,510.78 |
| Mediator Fees | $ | 42,628.28 |
| Postage and Delivery | $ | 2,341.88 |
| Press Release and Newswires | $ | 645.00 |
| Travel & Lodging – out-of-town | $ | 20,454.46 |
| Travel - local | $ | 461.16 |
| Transcripts | $ | 85.50 |
| **Total:** | **$** | **182,737.90** |

# EXHIBIT C



ABRAHAM, FRUCHTER & TWERSKY, LLP

## New York | California

aftlaw.com

---

## FIRM RESUME

---

Abraham, Fruchter & Twersky, LLP ("AF&T" or the "Firm") works to protect shareholder rights, bring claims on behalf of consumers who have been damaged by false advertising or the improper marketing of goods or services, and to protect individuals, businesses, and investment funds from unfair business practices. AF&T's attorneys have a broad range of experience in representing investors in securities and shareholder litigation in both trial and appellate courts throughout the United States. In regard to shareholder rights, we litigate individual and representative actions involving among other things, claims of corporate fraud, mismanagement, anti-competitive conduct, insider trading and breaches of fiduciary duties. The Firm seeks to protect investors and maximize recoveries through the diligent and capable representation of our clients. AF&T also represents consumer fraud victims as well as those damaged by anti-competitive conduct, such as collusive price fixing, and has participated in cases involving, among others, mortgage lenders, banks, broker-dealers, consumer product manufacturers and insurance companies.

AF&T maintains offices located in New York, New York and San Diego, California. Our Firm's lawyers pride themselves on their diligence, professionalism, courtesy, responsiveness and capacity to deal with the most complex legal and factual issues. As a consequence of these qualities, skills and experiences, we have achieved favorable results in the cases we have litigated and have successfully litigated issues of first impression.

## FIRM PRACTICE AREAS

---

### Securities Fraud Litigation

AF&T's Securities Fraud Litigation practice includes the prosecution of shareholder actions on behalf of purchasers or sellers of public and private securities, and relates to the misrepresentation of, or failure to disclose, material facts to investors. AF&T has represented clients in pursuit of their individual and class action claims. Typically, actions brought by the Firm's Securities Fraud Litigation practice group allege violations of the Securities Exchange Act of 1934 and the Securities Act of 1933.

AF&T has been appointed to serve as lead counsel to a class in several securities actions that are pending in federal court. To best protect our client's and the class's interests AF&T brings an intense focus and tenacious advocacy to the lead plaintiff stage of a securities case. This tenacity allows AF&T to vigorously protect the interests of our clients throughout the lead plaintiff appointment process. In many cases AF&T was the only firm to detect and raise unique issues pertaining to the presumptive lead plaintiff movant which led to the appointment of AF&T's client over the presumptive lead plaintiff. A list of actions where AF&T has been appointed lead or co-lead counsel includes:

> In *Godinez v. Alere et al.*, No. 1:16-cv-10766-PBS (D. Mass) AF&T was appointed lead counsel representing a group of Glazer Funds. This case has survived a motion to dismiss.

> In *Utesch v. Lannett Company et al.*, No. 2:16-cv-05932-WB (E.D. Pa.) AF&T, representing the University of Puerto Rico Retirement System, was appointed lead counsel to the class after AF&T raised a conflict of interest argument concerning the presumptive lead plaintiff's selected counsel.

> In *Boston Retirement System v. Volkswagen AG et al.*, No. 3:16-cv-03435-CRB (N.D. Cal.) AF&T, representing the Puerto Rico Government Employees and Judiciary Retirement Systems Administration, was appointed lead counsel to the class.

> In *In re Finisar Corp. Sec. Litig.*, No. 5:11-cv-01252-EJD (N.D. Cal.) AF&T, representing the Oklahoma Firefighters Pension and Retirement System was appointed lead counsel to the class. This case is pending after a successful appeal to the Ninth Circuit.

> In *Carvelli v. Ocwen Financial Corp.*, No. 9:17-cv-80500-RLR (S.D. Fl.) AF&T, representing the University of Puerto Rico Retirement System, won a significant lead plaintiff argument that resulted in an evidentiary hearing and AF&T's institutional investor client being appointed lead plaintiff over two individual investors with higher losses.

> In *Paradise Wire & Cable Defined Benefit Pension Plan et al., v. Weil et al.*, No. 1:17-cv-00132 (D. Md.) AF&T was appointed sole lead counsel in this case and has recently filed an amended complaint.

AF&T's lawyers have substantial experience succesfully resolving securities and shareholder actions, including resolving *In re Peregrine Systems, Inc. Securities Litigation,* 2002 U.S. Dist. LEXIS 27690 (S.D.Cal.), where AF&T served as co-lead counsel representing a class of shareholders who acquired Peregrine securities in exchange for their shares of stock in certain companies that were acquired by Peregrine. Along with a class of open-market purchasers, a settlement of approximately $117.5 million was obtained to resolve all claims, despite the company's bankruptcy filing, the lack of any insurance proceeds to contribute to the settlement and the dissolution of Arthur Anderson, LLP, the company's auditor, which was

responsible for certifying the relevant false and misleading financial statements. Of the settlement amount, approximately $65 million was obtained from individual corporate officers and directors, amounting to one of the largest recoveries from individual defendants in a case of this nature. As a result of AF&T's efforts, its clients, the class of investors who acquired their Peregrine shares through a stock exchange pursuant to a prospectus, received a recovery that was approximately three times greater than those shareholders who acquired their shares in the open market.

In *Citiline Holdings, Inc. v. iStar Financial, Inc.,* No. 08-cv-3612-RWS (S.D.N.Y), AF&T served as Co-Lead Counsel and helped procure a settlement fund of $29 million on behalf of a class of damaged investors.

In *In re Global Crossing Securities Litigation,* 2005 U.S. Dist. LEXIS 16232 (S.D.N.Y.), where our firm's lawyers represented purchasers of Asia Global Crossing securities, our attorneys helped achieve an incredibly strong recovery for the benefit of the Asia Global Crossing shareholders in an amount equal to 8% of the funds recovered in the entire Global Crossing case, when they only suffered 1% of the losses.

*In re: Dreyfus Aggressive Growth Mutual Fund Litigation,* 98 CV 4318 (HB) (S.D.N.Y.), is a case in which a member of the Firm served on the executive committee of a class action brought on behalf of purchasers of two mutual funds for damages arising from misleading statements made in the offering prospectuses. Plaintiffs settled their claims for $18.5 million in cash.

A representative list of additional actions that have been successfully resolved by AF&T includes:

> *In re Fuqi International Inc. Securities Litigation*, No. 1:10-cv-02515-DAB (S.D.N.Y.) ($8.6 million);

> *Brown v. China Integrated Energy, Inc. et al*., No. 2:11-cv-02559-MMM (C.D. Cal.) ($2.5 million);

> *Silverstrand Investments, et al., v. AMAG Pharmaceuticals, Inc., et al.*, No. 1:10-cv-10470-NMG (D. Mass) ($3.75 million);

> *In re Giant Interactive Group, Inc. Sec. Litig.,* No. 07-cv-10588-RWS (S.D.N.Y.) ($13 million);

> *In re Warner Chilcott Lt. Sec. Litig.,* No. 06-cv-11515-WHP (S.D.N.Y.) ($16.5 million);

> *Liberty Cap. Group, Inc. v. Kongzhong Corp.,* No. 04-cv-6746-SAS (S.D.N.Y.) ($7.5 million); and

*In re Internap Network Serv. Corp. Sec. Litig.,* No. 08-cv-3462-JOF (N.D. Ga.) ($9.5 million).

In addition to AF&T's substantial class action practice, AF&T has also been incredibly successful in pursuing direct action recoveries. AF&T often seeks to resolve claims prior to filing a complaint. As such, the recoveries obtained are often not public information. However, our publicly disclosed work representing institutional investors with respect to direct action ("opt-out") claims against AIG is representative of the Firm and the services we provide. In connection with the class action titled *In re American International Group, Inc. 2008 Securities Litigation*, No. 1:08-cv-04772 (S.D.N.Y.) against AIG, among others, AF&T filed direct actions on behalf of funds related to the General Electric Pension Funds and Lord Abbett & Co. LLC mutual funds.

## Antitrust Litigation

AF&T's antitrust practice is designed to protect consumers and businesses from anticompetitive behavior such as price fixing, bid rigging, and price discrimination. AF&T has prosecuted cases alleging violations of the Sherman Act, Clayton Act, and state antitrust laws. AF&T brings a uniquely thorough approach to the antitrust cases that it chooses to prosecute. This allows AF&T's team of attorneys to focus on antitrust cases that best protect the interests of our clients.

AF&T has represented plaintiffs in connection with several antitrust class actions. A list of these actions is below:

*In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation.,* No. 1:05-md-01720 (E.D.N.Y.);

*In re SSA Bonds Antitrust Litigation,* No. 1:16-cv-03711 (S.D.N.Y.);

*In re Treasury Securities Auction Antitrust Litigation,* No. 1:15-md-02673 (S.D.N.Y.);

*In re Domestic Airline Travel Antitrust Litigation*, No. 1:15-mc-01404 (D. D.C.);

*In re Delta/Airtrain Baggage Fee Antitrust Litigation*, No. 1:09-md-02089 (N.D. Ga.); and

*In re International Air Transportation Surcharge Antitrust Litigation*, No. 3:06-md-01793 (N.D. Ca.).

## Insider Trading

AF&T's Insider Trading practice focuses on both federal and state law claims that seek to remedy and/or prevent unlawful insider trading by corporate insiders. These actions include claims that arise out of short-swing insider trading in violation of Section 16(b) of the Securities

Exchange Act of 1934 which prohibits a statutorily defined insider from purchasing and selling on issuers shares within a six month period. The Firm's attorneys are among the leading experts in the nation with respect to 16(b) litigation, and have been at the forefront of obtaining favorable court rulings that have both enabled substantial recoveries for the ultimate benefit of investors and helped prevent future acts of corporate malfeasance associated with short-swing insider trading.

In one such 16(b) action, AF&T successfully resolved the matter for a cash settlement of $20 million. In another 16(b) case, AF&T achieved a $9.4 million settlement following a successful appeal to the U.S. Court of Appeals for the Eleventh Circuit.

In another case, former Judge John S. Martin of the U.S. District Court for the Southern District of New York complimented the lawyers at AF&T for the work they had done in securing a $20 million settlement of an insider trading case by stating in a written decision that:

> Here, the shareholders of Illinois Superconductor received a $20,000,000.00 benefit as the sole result of the diligence and sagacity of Plaintiffs counsel.

*Steiner v. Williams*, No. 99 Civ. 10186 (JSM), 2001 U.S. Dist. LEXIS 7097, at *7-8 (S.D.N.Y. May 31, 2001).

In addition to bringing cases under Section 16(b), AF&T has been at the forefront of efforts to cause corporate insiders to disgorge the proceeds of insider trading profits earned during the time period the issuer's financial results were improperly reported or other material facts were improperly concealed from members of the investing public. These cases have involved asserting claims arising under state law principles of fiduciary duty in shareholder derivative actions which are described in the section below. In one such case, Defendants agreed to pay $4.5 million to settle claims of unlawful insider trading. *Silverberg v. Gold, et al.* ("*Dendreon*"), C.A. No. 7646-VCP (Del. Ch.). AF&T also secured a substantial victory at the Delaware Supreme Court in *Sandys v. Pincus et al.,* C.A. No. 157, 2016 (Del. Supreme Court). In the Sandys' case AF&T represented a shareholder who alleges that members of Zynga's management breached their fiduciary duties by selling stock in a secondary offering based on insider information.

### Shareholder Derivative Litigation

AF&T's Shareholder Derivative Litigation practice focuses on actions brought by shareholders of a corporation in order to obtain a recovery on behalf of that corporation from a corporate insider or other party for a violation of state or federal law that has caused damage to the corporation. Often, these actions seek to disgorge corporate insiders of the proceeds realized from self-interested transactions that deprive the company and its public shareholders of the true value of the assets involved or from insiders exploiting their positions for their own personal gain. Many of these actions also result in remedial corporate governance changes designed to prevent recurrent wrongdoing.

Among the shareholder derivative cases in which AF&T has served as a lead counsel is *Kahn v. Buttner*, Index No. 650320/2008 (Sup. Ct. N.Y. Cty.) where a controlling shareholder would pay $2.9 million to a settlement fund for the sole benefit of Value Line Inc.'s shareholders who held 13.5% of Value Line Inc.'s stock, representing a recovery for the minority shareholders of more than 85% of the maximum amount of monetary damages recoverable if shareholders were successful at trial and on appeal.

Our Shareholder Derivative Litigation practice also extends to cases involving the reckless management of a company's operations that causes damage to the company. One action making such allegations in which members of the Firm played a leading role was brought on behalf of the Bank of New York Corporation against corporate insiders with respect to the damage caused to the company by their failure to properly institute the internal controls necessary to prevent money laundering. After the denial of a motion to dismiss, the taking of substantial pre-trial discovery and the defeat of an effort to have the case decided by a special committee, the case was resolved for a cash payment of $26.5 million for the benefit of the Bank of New York.

AF&T's Shareholder Derivative Litigation practice also places great emphasis on achieving substantive corporate governance reform. For example, members of the Firm had a leading role in gaining significant and valuable remedial benefits designed to prevent a recurrence of corporate malfeasance at ImClone Systems Inc. (in addition to gaining a cash payment of $8.75 million). AF&T also served as lead counsel in a derivative shareholder action against Merck & Co. related to the company's misconduct surrounding its pain reliever Vioxx. The Firm successfully brought about material corporate governance reform, which the presiding Judge described as "far reaching and act[ing] to position Merck at the forefront of sound corporate governance and risk management practices," "ensur[ing] scientific integrity and drug patient safety," and "provid[ing] substantial benefit to Merck and its shareholders because they may serve to prevent future liability from the sale of potentially dangerous drugs." The corporate governance changes, which provided, *inter alia*, for a Chief Medical Officer to act as an advocate for patient safety, were similarly praised by industry analysts as something "every pharma company should have..." Likewise, in *In re Schering-Plough Corp. Shareholders Derivative Litig.*, Master Derivative Docket Civ. Action No. 01-1412, 2008 U.S. Dist. LEXIS 2569 (D. N.J. Jan. 14, 2008), the Firm was responsible for obtaining comprehensive corporate governance changes at Schering-Plough Corporation. Also, AF&T served as a lead counsel in a shareholder derivative action brought on behalf of Google, Inc. in which substantial governance reforms were achieved. *In re Google Inc. Shareholder Deriv. Litig.*, No. 11 Civ. 4248 (P JH) (N.D. Cal.). Under the terms of the settlement, Google was required to spend at least $50 million per year principally on its product quality operations, policy enforcement, and User Safety Initiative collectively.

More recently, in approving the settlement of a shareholder derivative action brought on behalf of CytRx Corporation, Vice Chancellor Laster of the Delaware Court of Chancery stated that:

6

I will tell you that it would be a wonderful thing, I think for the state of stockholder litigation in this country if this was more an example of the types of suits that were usually seen . . . . I think you guys did a fine job. I'm not going to be overly effusive because I actually think that this is the type of thing litigation ordinarily ought to be.

## Corporate Transactions & Shareholder Rights

AF&T's Corporate Transactions & Shareholder Rights practice handles cases dealing with transactions in which the interests of minority shareholders or limited partners are eliminated through either the sale of the entity's underlying assets or through the sale of the entity itself. In such transactions, corporate officers may be liable for advancing the financial or corporate interests of the controlling shareholder(s) or general partner(s) at the expense of minority investors. These cases often arise under Section 14(a) of the Securities Exchange Act of 1934 and state law principles requiring corporate officers and controlling shareholders to discharge their fiduciary duties with loyalty, care and prudence.

Members of the Firm have been active in this practice area, and the Firm has represented public institutions in challenging these transactions. For example, AF&T achieved a settlement of $10.5 million in a case brought on behalf of the limited partners of a series of limited partnerships controlled by Jones Intercable, Inc. The Firm also achieved a $5 million case settlement in a transaction involving the sale of a cable television system owned by American Cable TV Partners V, L.P. Another notable case led by AF&T resulted in an approximately 20% increase in the price offered in a management buyout of the minority interests of an investment trust.

## Consumer Fraud

Consumers often feel powerless to stop major corporations from engaging in wrongful conduct, whether it be in the form of an improper fee or charge, an undelivered service, or a product that simply does not live up to expectations based on the company's advertising and labeling. AF&T regularly fights to protect consumers who have been wronged, no matter how small the individual damages.

As an example, AF&T achieved a favorable ruling from a New York State Appellate Court on an issue of first impression barring mortgage lenders from charging New York State residents a fax fee in connection with the provision of mortgage payoff statements and holding that consumers had an implied private right of action to recover any such fees paid. The decision was "Decision of the Day" in the November 19, 1999, edition of The New York Law Journal and is reported as *Negrin v. Norwest Mortgage, Inc.* (163) A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999).

AF&T also played a key role in a series of cases brought in state and federal courts in California and New Jersey on behalf of consumers across the country against leading

7

sunscreen manufacturers in the U.S. alleging the false advertising and labeling of sunscreen products. As a consequence of the Firm's efforts, sunscreen labeling in the U.S. was changed and significant monetary recoveries were obtained for the benefit of consumers.

## FIRM ATTORNEYS

*Jeffrey S. Abraham,* **Partner**

Following his graduation from Columbia University School of Law, Mr. Abraham worked for one year as a corporate securities lawyer for a mid-size New York City law firm. Thereafter, Mr. Abraham joined what, at the time, was the largest firm specializing in plaintiffs' securities litigation, a firm then known as Milberg Weiss Bershad Specthrie & Lerach. After working at Milberg Weiss for several years, Mr. Abraham left to start the Law Offices of Jeffrey S. Abraham, which subsequently merged with and into Fruchter & Twersky, LLP, to become AF&T.

Mr. Abraham's practice at Milberg Weiss focused on the prosecution of shareholder class actions on behalf of defrauded investors with the occasional representation of corporate clients in various litigation matters. Among the class actions which he was active in prosecuting during his tenure at Milberg Weiss were *In Re Crazy Eddie Securities Litigation,* 97 Civ. 87-0033 (E.D.N.Y.) in which a recovery in excess of $76 million was achieved for defrauded investors, and *Axton Candy & Tobacco Co., Inc. v. Alert Holdings Inc., (Alert Holdings Income Limited Partnership Litigation),* 92-Z-1191 (D. Colo.), in which a recovery of $60 million was achieved for defrauded investors. Mr. Abraham also successfully defended the appeal challenging the terms of that settlement before the Tenth Circuit. *See Hillman v. Webley,* 1996 U.S. App. LEXIS 25702 (10th Cir. 1996).

At AF&T, Mr. Abraham continues to focus on securities and shareholder litigation. During his tenure at the Firm, Mr. Abraham has served as lead counsel in many cases, including: *In re Peregrine Securities Litigation,* Civil No. 02cv870-J (S.D. Cal.) in which a settlement of approximately $117.5 million was achieved notwithstanding the company's bankruptcy, the lack of insurance proceeds to contribute to the settlement, and the dissolution of the company's auditors who shared liability. In another case, Mr. Abraham acted as co-lead counsel on behalf of purchasers of the securities of Asia Global Crossing in connection with *In Re Global Crossing Securities Litigation,* 02 CV 910 (S.D.N.Y.) in which a pro rata recovery was achieved for the Asia Global Subclass members that far exceeded the pro rata recovery obtained by the other defrauded investors in Global Crossing securities.

On another occasion, in a case arising under the short-swing insider trading provisions of Section 16(b) of the Securities Exchange Act of 1934, Mr. Abraham assisted in achieving a cash recovery of $20 million (without the benefit of insurance coverage) which at the time was the largest known cash recovery under that statute. Judge John S. Martin, Jr., the former U.S. Attorney for the Southern District of New York and the presiding Judge in the action,

complimented the Firm's performance in the case in stating "the shareholders of Illinois Semiconductor Company received a $20,000,000.00 benefit as the sole result of the diligence and sagacity of Plaintiffs counsel." *Steiner v. Williams; Levy v. Southbrook Int'l Investments, Ltd.,* 2001 U.S. Dist. LEXIS 7097, at *20 (S.D.N.Y. May 31, 2001).

Other cases in which Mr. Abraham has had a primary litigation role include: *City Partnership Co. v. Jones Intercable, Inc.*, Civil Action No. 99-WM-1051 (D. Colo.), in which a recovery of $10 million was achieved on behalf of investors with respect to the sale of cable television systems and *City Partnership Co. v. IR-TCI Partners V, L.P.*, Civil Action No. 99-RB-2122 (D. Colo.) in which $5 million was recovered on behalf of limited partners with respect to the sale of a cable television system to a business affiliate of the general partner.

Mr. Abraham has successfully argued appeals in the U.S. Courts of Appeals for the Second, Third, Tenth, and Eleventh Circuits.

Mr. Abraham is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern District of New York, Eastern District of New York and District of Colorado, and the U.S. Courts of Appeal for the Second, Third, Fourth, Seventh, Ninth, Tenth, and Eleventh Circuits as well as before the U.S. Supreme Court.

### *Jack G. Fruchter,* Partner

Mr. Fruchter is a *cum laude* graduate of the Benjamin N. Cardozo School of Law. Prior to founding the law firm of Fruchter & Twersky, LLP whose name was later changed to Abraham, Fruchter & Twersky, LLP, Mr. Fruchter was employed by the enforcement division of the U.S. Securities and Exchange Commission as well as a litigation associate at the law firm of Hughes Hubbard and Reed, LLP in New York City.

Mr. Fruchter has played a lead role in many of the securities fraud class actions litigated by our firm, including AirGate PCS, Inc., Printcafe Software, Inc., KhongZhong Ltd., Warner Chilcott Limited, Giant Interactive Group, Inc. and iStar Financial, Inc.

In *Liberty Capital Group, Inc. v. Kongzhong Corporation,* 04-CV06746SAS (S.D.N.Y.), for example, Mr. Fruchter took the lead in a securities class action alleging that the issuer's registration statement in connection with an IPO failed to disclose that the issuer had breached its service agreement with its primary customer, China Mobile Communications Corporation, resulting in sanctions against the issuer and a strained relationship with the customer. The case settled for 20% of the maximum provable damages, which is well in excess of the average recovery of 2-3% of damages in securities fraud litigation.

Mr. Fruchter has also focused on short-swing insider trading actions pursuant to the provisions of Section 16(b) of the Securities Exchange Act of 1934. Mr. Fruchter has appeared at SEC staff meetings to discuss pending issues concerning Section 16(b) litigation

and has been referred to as a leading practitioner in the field of Section 16(b) litigation. Romeo & Dye, Comprehensive Section 16 Outline 288 (June 2003).

Mr. Fruchter is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Third and Eleventh Circuits. Mr. Fruchter has also routinely appeared *pro hac vice* in Courts throughout the United States.

### *Mitchell M.Z. Twersky,* Partner

Following his graduation from the Georgetown University Law Center, Mr. Twersky was employed for several years as a commercial and civil litigation associate for a boutique litigation firm in New York City. In 1996 he founded the law firm of Fruchter & Twersky, LLP, which later changed its name to Abraham, Fruchter & Twersky, LLP.

At Abraham, Fruchter & Twersky, LLP, Mr. Twersky has focused on, among other things, short-swing insider trading actions pursuant to the provisions of Section 16(b) of the Securities Exchange Act of 1934. Mr. Twersky played a lead role in *Levy v. Office Depot, Inc.*, in which a shareholder of Purchasepro.com alleged that as a consequence of the CEO of Office Depot serving on the Board of Directors of Purchasepro.com, Office Depot's trades in Purchasepro.com securities violated the insider trading provision of Section 16(b). Following PurchasePro.com's bankruptcy filing, AF&T was retained by the Debtor with the Bankruptcy Court's approval to continue with the prosecution of the action on the Debtor's behalf. The case settled for $9.4 million, more than half of the recoverable profits, after the Firm's successful appeal to the U.S. Court of Appeals for the Eleventh Circuit.

Mr. Twersky also played a lead role in a settlement valued at $38 million in *Rosenberg v. Delta Airlines, Inc.,* an action commenced in Delaware District Court against Delta Air Lines on behalf of Priceline.com for violations of the insider trading provisions of Section 16(b). He also played a lead role in a $20 million cash settlement of a Section 16(b) action in *Levy v. Southbrook International Investments, Ltd., et al.* brought in U.S. District Court for the Southern District of New York where Judge John S. Martin, Jr. in praising AF&T's work stated "counsel's effort here provided a bonanza to the corporation... as the sole result of the diligence and sagacity of Plaintiff's counsel." 2001 U.S. Dist. LEXIS 7097, at *20 (S.D.N.Y. May 31, 2001).

Mr. Twersky has appeared several times at SEC staff meetings to discuss pending issues concerning Section 16(b) litigation, has provided the SEC with written comments concerning the proposed promulgation of SEC Rules pertaining to Section 16(b) (Comments with respect to *Proposed Rule: Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Release Nos. 34-49895, 35-27861, IC-26471* (June 21, 2004), available at www.sec.gov) and has been referred to as a leading practitioner in the field of Section 16(b) litigation. Romeo & Dye, Comprehensive Section 16 Outline 288 (June 2003).

Mr. Twersky has also played a leading role in AF&T's consumer and antitrust class action litigation. Mr. Twersky achieved a favorable ruling from a New York State Appellate Court on an issue of first impression barring mortgage lenders from charging New York State residents a fax fee in connection with the provision of mortgage payoff statements and holding that consumers had an implied private right of action to recover any such fees paid. The decision was "Decision of the Day" in the November 19, 1999, edition of The New York Law Journal and is reported as *Negrin v. Norwest Mortgage, Inc.* (163) A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999).

Mr. Twersky has also played a key role in a series of cases brought by the Firm in state and federal courts in California and New Jersey on behalf of consumers across the country against leading sunscreen manufacturers in the U.S. alleging the false advertising and labeling of sunscreen products. As a consequence of the Firm's efforts, sunscreen labeling in the U.S. was changed and significant monetary recoveries were obtained for the benefit of consumers.

Mr. Twersky also plays a prominent role in the *Utesch v. Lannett Company et al.*, case. The complaint alleges that the Defendants concealed their involvement in a conspiracy to fix the prices of generic drugs in violation of the antitrust laws which severely damaged its shareholders when the truth was disclosed.

Mr. Twersky has also led the litigation team in the *In re Finisar Corp. Sec. Litig.*, case. The team was successful on appeal and the district judge's dismissal order was reversed. The case is currently pending. Additionally, in the *Boston Retirement System v. Volkswagen AG et al.*, case Mr. Twersky led the team of attorneys that alleged the defendants made misstatements in bond offerings.

Mr. Twersky has been interviewed and quoted widely by the media, including the *Los Angeles Times*, *The New York Times*, *The New York Post*, *The Miami Herald*, and *The Wall Street Journal*. Mr. Twersky has also appeared on television and radio programs, including NBC's *Today in New York*, Comcast's *Nitebeat*, and National Public Radio's *Marketplace*.

Mr. Twersky has served on the Federal Regulation of Securities Committee of the American Bar Association as well as its Civil Litigation and SEC Enforcement Matters and Annual Review of Federal Securities Regulation Subcommittees.

Mr. Twersky is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York, the U.S. Courts of Appeal for the First, Second, Third, Seventh, Ninth and Eleventh Circuits, and the Supreme Court of the United States of America. Mr. Twersky has also routinely appeared *pro hac vice* in Courts throughout the United States.

*Atara Hirsch,* **Of Counsel**

Ms. Hirsch concentrates her practice in securities litigation and institutional investor relations. Ms. Hirsch is a graduate of Brooklyn Law School and is admitted to practice before the Courts of the State of New York, the United States District Court for the Southern District of New York and the United States District for the Eastern District of New York.

Ms. Hirsch serves as the Firm's Director of Institutional Investor Services, advising public and private institutions throughout the world with respect to shareholder rights related to class action and individual direct action claims arising under U.S. federal and state securities laws. Ms. Hirsch is a frequent speaker on securities litigation issues, particularly as they relate to the rights and responsibilities of institutional investors. Ms. Hirsch has addressed the National Conference on Public Employee Retirement Systems, the Native American Finance Conference and the Florida Public Pension Trustees Association, and has authored, "Custodians Leave Investor Money on the Table" *(PERSist,* National Conference on Public Employee Retirement Systems (Fall 2009)) detailing the myriad of issues that may arise when pension funds rely solely on their custodians to monitor their stock portfolio.

*Ian D. Berg,* **Of Counsel**

Mr. Berg is an experienced litigator, representing public and private institutional investors and has helped recover over $4 billion for clients and class members who invested in public companies. Ian has strong skills in all aspects of complex litigation, including developing and implementing strategies, conducting discovery, and negotiating favorable resolutions. Ian has argued *successfully* before federal courts throughout the country, including the Ninth Circuit Court of Appeals and First Circuit Court of Appeals.

Mr. Berg is playing, or has recently played, a leading role in the following actions:

*Lord Abbett Affiliated Fund, Inc., et al. v. American International Group, Inc. et al.*, 1:15-cv-00774-LTS (S.D.N.Y.) (Direct Action, pending)

*General Electric Pension Trust, et al. v. American International Group, Inc. et al.*, 1:15-cv-00957-LTS (S.D.N.Y.) (Direct Action, resolved)

*In re Finisar Corp. Sec. Litig.*, 5:11-cv-01635-EJD (N.D. Cal.) (Class Action, pending)

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (CRB); BRS v. Volkswagen AG, et al., 16-cv-3435 (N.D. Cal.) ("Bondholder Securities Action") (Class Action, pending)

*City of Orlando Police Pension Fund v. Page*, 4:13-cv-02038-PJH (N.D. Cal.) (Google Shareholder Deriv. Action, resolved)

*Silverstrand Investments, et al. v. Amag Pharmaceuticals, Inc.*, 10-cv-10470-NMG (D. Mass.) (Class Action, resolved)

*Brown v. China Integrated Energy, Inc.*, 2:11-cv-02559-BRO (C.D. Cal.) (Class Action, resolved)

Mr. Berg is also involved in the firm's case development and lead plaintiff appointment process for our clients, analyzing their interests and best options to maximize their recovery. Ian has recently played a prominent role in AF&T's successful representation of institutional investors in lead plaintiff contests in the following representative securities fraud class actions:

*In re SunEdison, Inc. Sec. Litig.* MDL No. 02742 (PKC); *Pyramid Holdings, Inc. v TerraForm Global, Inc. et al*, 1:16-cv-07981-PKC (S.D.N.Y.)

*Perlmutter v. Intuitive Surgical, Inc. et al*, 5:10-cv-03451-LHK (N.D. Cal.)

*In re Finisar Corp. Sec. Litig.*, 5:11-cv-01635-EJD (N.D. Cal.)

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (CRB); BRS v. Volkswagen AG, et al., 16-cv-3435 (N.D. Cal.) ("Bondholder Securities Action")

*Brown v. China Integrated Energy, Inc.*, 2:11-cv-02559-BRO (C.D. Cal.)

Mr. Berg is most proud of his work educating investors about securities litigation. Towards that goal, Ian has been a speaker on various topics and has authored or co-authored the following articles: "Other People's Money: The Unrealized Conflicts of Securities Lending" (Wall Street Lawyer, July 2010); "Why Institutional Investors Opt-Out of Securities Fraud Class Actions and Pursue Direct Individual Actions" (PLI Securities Litigation and Enforcement Institute, July 23, 2009); "Credit Rating Agencies: Out of Control and in Need of Reform" (Securities Litigation & Regulation Reporter, June 30, 2009); "Ruling Warns Funds to Follow Class Actions" (Pensions & Investments, December 8, 2008); and "The 7th Circuit Sends a Strong Message: Institutions Must Monitor Securities Class Actions Claims" (The NAPPA Report, August 2008).

### *Lawrence D. Levit,* **Of Counsel**

Mr. Levit has specialized in class action litigation for approximately twenty years, primarily representing shareholders and consumers. Prior to joining AF&T, Mr. Levit was a partner at a mid-size law firm until 2002, where he was involved in actions that recovered hundreds of millions of dollars for class members. While at AF&T, he has served as co-lead counsel in *In re Peregrine Systems, Inc. Securities Litigation,* No. 02- CV-0870-BEN (RBB) (S.D. Cal.), representing a class of claimants for violations of the federal securities laws. A settlement was obtained for approximately $117.5 million, with approximately $65.5 million of that amount being obtained from individual corporate officers and directors, one of the largest recoveries directly from individuals in a case of this nature.   The investors represented by the Firm (*i.e.,* those who acquired their Peregrine shares as a result of a stock exchange pursuant to a prospectus) received a recovery that was approximately three times greater than shareholders who acquired their shares by purchasing them on the open market. In another recent action, *Liberty Capital Group, Inc. v. KongZhong Corp.,* No. 1:04-CV-06746-SAS (S.D.N.Y.), Mr. Levit served co-lead counsel and was responsible for settling the

action for 20% of the maximum provable damages, well in excess of the average recovery of 2-3% of damages in securities fraud litigation.

Mr. Levit is a graduate of Franklin and Marshall College. He also received an M.A. in Political Science from the Eagleton Institute of Politics. Mr. Levit is a graduate of Brooklyn Law School where he was the Second Circuit Editor for the Law Review. He published an article entitled: *Habeas Corpus and the Exhaustion Doctrine: Daye Lights Dark Corner of the Law,* 50 Brooklyn Law Review 565 (1984).

Mr. Levit is a member of the New York and New Jersey bars and is admitted to practice before the United States District Courts for the Southern District of New York, the Eastern District of New York and the District of Colorado as well as the United States Courts of Appeal for the Second, Third, and Fourth Circuits.

### *Todd Kammerman,* **Of Counsel**

Mr. Kammerman focuses his practice on securities class action litigation, shareholder derivative litigation, and commercial litigation. Prior to joining Abraham, Fruchter & Twersky, LLP as Of Counsel in 2017, Mr. Kammerman was a partner at Milberg LLP where he practiced for over 14 years. A sample of Mr. Kammerman's successful litigations include *In re CMS Energy Securities Litigation*, No. 02-72004 (E.D. Mich.) ($200 million recovery); *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.) ($90 million recovery); *Scheiner v. i2 Technologies*, No. 01-0418 (N.D. Tex.) ($87.8 million recovery); and *Mich II Holdings LLC v. Schron*, No. 600736/10 (Sup. Ct. N.Y. Cnty.) (represented certain defendants in connection with real estate dispute and successfully litigated motion to dismiss all claims against those defendants).

Mr. Kammerman played a leading role in the *Platinum Partners Value Arbitrage Fund, LP, et al. v. Chicago Board Options Exchange, Inc. and Options Clearing Corporation*, No. 10 CH 54472 (Ill. Cir. Ct. Cook Cnty.) litigation, including litigating the successful appeal leading to the precedent-setting decision, reported at 2012 IL App (1st) 112903 (Ill. App. Ct. 2012), where the Illinois Appellate Court, First District, reversed the previous dismissal of the case on regulatory immunity grounds, and held that regulatory immunity does not apply where self-regulated organizations privately disclose information about the price adjustment of a stock option to selected market participants before that information is made publicly available.

Mr. Kammerman played a pivotal role in the *In re Comverse Technology, Inc. Derivative Litigation,* No. 601272/06 (Sup. Ct. N.Y. Cnty.) ($62 million recovery), particularly in drafting the appellate briefs which led to the seminal New York Appellate Division opinion, reported at 56 A.D.3d 49 (1st Dept 2008), clarifying the standards of demand futility, and holding that a board of directors loses the protection of the business judgment rule where there is evidence of self-dealing and poor judgment by the directors. He was also a member of the team that litigated the appeal in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* before the United States Supreme Court, in which the Supreme Court issued an opinion defining the pleading standard for scienter in all federal securities fraud cases, and is reported at 551 U.S. 308 (2007).

14

Mr. Kammerman has been selected as a New York Metro Super Lawyer from 2014-2016. While attending the Benjamin N. Cardozo School of Law, Mr. Kammerman was named an Alexander Fellow, and through the associated fellowship he worked as a judicial intern in the chambers of the Honorable Joseph A. Greenaway, Jr., United States District Judge in Newark, New Jersey.

Mr. Kammerman is a member of the bars of the States of New York and New Jersey and is admitted to practice before the United States Courts of Appeals for the Third and Eleventh Circuits and the United States District Courts for the District of New Jersey, Southern and Eastern Districts of New York, and Eastern District of Michigan.

### *Takeo A. Kellar,* Of Counsel

Mr. Kellar practices out of the Firm's San Diego office and concentrates his practice in the area of securities litigation on behalf of public and private institutional investors. Prior to joining Abraham, Fruchter & Twersky, LLP, Mr. Kellar practiced securities litigation at Bernstein, Litowitz, Berger & Grossmann LLP, where he prosecuted securities fraud and derivative shareholder actions on behalf of institutional investors. Mr. Kellar has helped obtain significant recoveries on behalf of class members in several nationwide securities class actions, including *In re William Securities Litigation* ($311 million), *In re Maxim Integrated Products, Inc. Securities Litigation* ($173 million), *In re New Century Securities Litigation* ($125 million) and *Atlas v. Accrediited Home Lenders Holding Co.* ($22 million settlement). Mr. Kellar also worked on the trial team responsible for successfully prosecuting the *In re Clarent Corp. Securities Litigation,* which resulted in a favorable jury verdict for shareholders against the company's former CEO. In addition, Mr. Kellar has assisted in successfully prosecuting and settling important shareholder derivative cases pertaining to corporate waste such as the Apollo Group, Inc. and the Activision, Inc. stock option backdating cases.

Mr. Kellar is a graduate of the University of California, Riverside (B.A.) and the University of San Diego School of Law (J.D.). Mr. Kellar is admitted to practice in the State of California and before the United States District Courts for the Northern, Central and Southern Districts of California.

### *Cassandra Porsch*, Of Counsel

Ms. Porsch is Of Counsel in the New York office, where she focuses on securities and financial services-related class action and shareholder derivative litigation. She has extensive experience litigating complex commercial matters on behalf of institutions and investors in both state and federal court. Ms. Porsch earned her undergraduate degree with distinction from Yale University and her J.D. from the Georgetown University Law Center, where she served as Articles Editor of the Georgetown Journal of Legal Ethics. She also obtained an M.B.A. in finance and management from the New York University Stern School of Business. Prior to joining AF&T, Ms. Porsch practiced litigation for ten years in the New

York office of a national law firm. Outside of the office, she is involved with professional and public service activities through the New York City Bar Association and the Financial Women's Association.

### *Jake Nachmani*, **Associate**

Mr. Nachmani prosecutes securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional clients. He is currently a member of the teams litigating securities class actions against Ocwen Financial Corporation, Alere, Inc., Lannett Company, Inc., and American Realty Capital-Retail Centers of America, Inc.

Prior to joining the firm, Mr. Nachmani was a litigation associate at Bernstein Litowitz Berger & Grossmann LLP, where he represented institutional investors in securities class actions, complex commercial cases, and actions alleging claims under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act. He is the co-author of an article concerning bringing class actions oversees, entitled "International Shareholder Litigation: Comparing Outlooks in the US and UK."

### *Wei Chen,* **Associate**

Ms. Chen is an Associate in our New York office where she focuses on securities litigation. She is a graduate of the City University of New York School of Law where she was a recipient of the Charles H. Revson Public Interest Fellowship and a final round participant in the CUNY Moot Court competition. Ms. Chen is admitted to practice in the states of New York, New Jersey, and Connecticut in addition to the U.S. District Court of New Jersey. She is fluent in both the Mandarin and Cantonese dialects of Chinese as well as Taiwanese.

### *Matthew Guarnero,* **Associate**

Mr. Guarnero is an associate in the firm's New York office and focuses his practice on securities and financial services litigation on behalf of institutional investors. Mr. Guarnero previously practiced at Lowey Dannenberg Cohen & Hart P.C. where he gained experience prosecuting antitrust and commodities manipulation claims on behalf of both institutional and individual investors. At Lowey Dannenberg Cohen & Hart P.C., Matthew worked on the *Laydon v. Mizuho Bank Ltd. et. al.* ($206 million partial settlement), *Sullivan v. Barclays PLC et al.* ($309 million partial settlement)*, In re London Silver Fixing, Ltd.*, *Antitrust Litigation*, ($38 million partial settlement), *Frontpoint Asian Event Driven Fund, Ltd et al v. Deutsche Bank et al.*, and *Richard Dennis et al v. JP Morgan Chase & Co. et al.*

Matthew earned his Juris Doctor from the State University of New York at Buffalo Law School and his Bachelor of Arts in Political Science from the State University of New York at Geneseo.

While in law school, Matthew was part of a select group of students to participate in SUNY Buffalo Law School's On Finance and the Law Program. Through this program he studied under a series of experts in the fields of capital markets, corporate, and securities law. Matthew was also a member of the Moot Court Board at SUNY Buffalo Law School.

Matthew is admitted to practice law in New York and New Jersey state courts, and the United States District Court for the Southern District of New York.

### *Sean M. Handron-O'Brien*, Associate

Mr. Handron-O'Brien works in the New York office where he focuses on securities class action litigation and related market research. He is a graduate of New England School of Law | Boston (J.D.), where he was taught by legal experts in the fields of corporate law, bankruptcy, and the Uniform Commercial Code. He earned his bachelor's degree from the University of Massachusetts at Amherst's Isenberg School of Business, graduating cum laude after concentrating on finance and operations management.

Mr. Handron-O'Brien is admitted to practice in both New York and Massachusetts.

### *Erin Dempsey,* Associate (Former)

Ms. Dempsey is an Associate in our San Diego office where she focuses on securities litigation on behalf of public and private institutional investors. Prior to joining AF&T, she served as an Analyst at Goldman Sachs specializing in derivative product trading for institutional clients. As such, she worked to ensure trading accounts were compliant with all applicable global financial regulations, including the most recent AML/KYC policies, and were supported by the appropriate trading agreements.

She earned her Juris Doctor degree from St. John's University School of Law, where she served as Articles and Notes editor for the American Bankruptcy Institute Law Review. She is also a graduate of the State University of New York at Geneseo where she earned her B.A. in Psychology.

### *Furine "FiFi" Blaise,* Staff Attorney

Ms. Blaise works in the New York office and focuses on securities class action litigation. She also has experience with anti-trust, securities fraud, and data protection litigation as well as intellectual property matters. She earned her Bachelor of Arts in Political Science from Fordham University, where she received the Fordham University Emerging Leader ("FUEL") Award. She earned her Juris Doctorate from Albany Law School, where she was a member of the Albany Law Review. She also studied at the Université Paris I Panthéon-Sorbonne in Paris, France with Cornell Law School as part of its comparative international law program. She is the author of a published a legal commentary entitled "Game Over: Issues Arising when Copyrighted Work is Licensed to Video-Game Manufacturers," 15 Alb. L. J. Sci. & Tech. 517 (2005). She is a volunteer attorney for members of the New York entertainment community through the Volunteer Lawyers for the Arts. Ms. Blaise is admitted to practice in New York and the United States District Court for the Southern District of New York.

*Charles Pietrofesa,* **Staff Attorney**

Mr. Pietrofesa works in the New York office where he focuses on securities litigation. He has experience with anti-trust, real estate, and securities fraud matters.  He is a graduate of New York Law School where he was an Executive Notes Editor for the Law Review and a John Marshall Harlan Scholar.  He obtained his Bachelor of Science degree from Brooklyn College where he majored in Business, Management and Finance and was a member of The Phi Beta Kappa Society.  Mr. Pietrofesa is admitted to practice in New York.

*Ashley Dubin,* **Staff Attorney**

Ms. Dubin is a Staff Attorney in our New York office where she focuses on securities litigation. She is a graduate of New England School of Law where she was the Executive Articles Editor of the New England Journal of International and Comparative Law and a Legal Fellow at the U.S. Chamber of Commerce's Center for Capital Market Competitiveness. She obtained her bachelor's degree from Goucher College with concentrations in International Relations and Russian Language, Literature, and Culture. She is a patron of the arts and sits on the Book Committee of the New England Society of New York. Ms. Dubin is admitted to practice in the state of Maryland and is fluent in Russian.