**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUNEDISON, INC. SECURITIES LITIGATION | Civil Action No. 1:16-md-2742 |
| KEARNY INVESTORS S.À.R.L., POWELL INVESTORS L.P., and POWELL INVESTORS II LIMITED PARTNERSHIP, | Civil Action No. 1:16-cv-09566-PKC |
| Plaintiffs, | |
| vs. | |
| GOLDMAN SACHS & CO., DEUTSCHE BANK SECURITIES INC., J.P. MORGAN SECURITIES LLC, MACQUARIE CAPITAL (USA) INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MORGAN STANLEY & CO. LLC, ANTONIO R. ALVAREZ, PETER BLACKMORE, AHMAD CHATILA, CLAYTON DALEY, JR., EMMANUEL HERNANDEZ, GEORGANNE C. PROCTOR, STEVEN TESORIERE, MARTIN TRUONG, JAMES B. WILLIAMS, BRIAN WUEBBELS, and RANDY H. ZWIRN, | |
| Defendants. | |
| CANYON CAPITAL ADVISORS LLC, CANYON BALANCED MASTER FUND, LTD., CANYON CAPITAL ARBITRAGE MASTER FUND, LTD., CANYON-GRF MASTER FUND II, L.P., CANYON VALUE REALIZATION FUND, L.P., and THE CANYON VALUE REALIZATION MASTER FUND, L.P., | Civil Action No. 1:16-cv-09171-PKC |
| Plaintiffs, | |
| vs. | |

ANTONIO R. ALVAREZ, PETER
BLACKMORE, AHMAD CHATILA, CLAYTON
DALEY JR., EMMANUEL HERNANDEZ,
GEORGANNE PROCTOR, STEVEN
TESORIERE, MARTIN TRUONG, JAMES B.
WILLIAMS, BRIAN WUEBBELS, RANDY H.
ZWIRN, GOLDMAN SACHS & CO.,
DEUTSCHE BANK SECURITIES INC., J.P.
MORGAN SECURITIES LLC, MACQUARIE
CAPITAL (USA), INC., MERRILL LYNCH,
PIERCE, FENNER & SMITH INCORPORATED,
and MORGAN STANLEY & CO. LLC,

                Defendants.

---

CANYON CAPITAL ADVISORS LLC and
EP CANYON LTD. (f/k/a PERMAL CANYON
IO LTD.),

                Plaintiffs,

      vs.

ANTONIO R. ALVAREZ, PETER
BLACKMORE, AHMAD CHATILA, CLAYTON
DALEY JR., EMMANUEL HERNANDEZ,
GEORGANNE PROCTOR, STEVEN
TESORIERE, MARTIN TRUONG, JAMES B.
WILLIAMS, BRIAN WUEBBELS, RANDY H.
ZWIRN, GOLDMAN SACHS & CO.,
DEUTSCHE BANK SECURITIES INC., J.P.
MORGAN SECURITIES LLC, MACQUARIE
CAPITAL (USA), INC., MERRILL LYNCH,
PIERCE, FENNER & SMITH INCORPORATED
and MORGAN STANLEY & CO. LLC,

                Defendants.

Civil Action No. 1:16-cv-09172-PKC

## STIPULATION AND [PROPOSED] ORDER

     Plaintiffs in the above-captioned actions ("Plaintiffs") and defendant Goldman Sachs &

Co. ("Goldman Sachs") hereby stipulate, by and through their respective counsel, as follows:

WHEREAS Plaintiffs were permitted, pursuant to the Stipulation and Order entered by the Court on October 5, 2018 (Dkt. 484), to participate in depositions noticed by plaintiffs in *Horowitz et al. v. SunEdison, Inc. et al.*, 16-cv-7917-PKC (S.D.N.Y.) ("Class Plaintiffs");

WHEREAS Class Plaintiffs noticed depositions of Matthew Gibson, Jean-Pierre Boudrias, and Daniel Josephs held on October 26, 2018, November 2, 2018, and February 21, 2019 (collectively, the "Prior Goldman Sachs Depositions"), respectively;

WHEREAS on July 25, 2019, Plaintiffs served a notice of deposition of Goldman Sachs pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Original Notice");

WHEREAS on November 1, 2019, Goldman Sachs moved to quash the Original Notice (Dkt. 674);

WHEREAS, on November 7, 2019, the Court entered an Order (Dkt. 680) regarding Goldman Sachs' submission and the Original Notice; and

WHEREAS, the parties have entered into this stipulation to proceed with discovery consistent with the Court's November 7, 2019 Order.

**IT IS HEREBY STIPULATED AND AGREED**, by the undersigned counsel on behalf of the parties, as follows:

1.      Pursuant to the Court's November 7, 2019 Order, Goldman Sachs hereby designates the following testimony from the depositions of Matthew Gibson, Jean-Pierre Boudrias, and Daniel Josephs, which shall have the same effect as if the testimony were given by such deponent in the capacity of a corporate designee of Goldman Sachs in response to the Original Notice pursuant to Federal Rule of Civil Procedure 30(b)(6):

| Jean-Pierre Boudrias | |
|---|---|
| Start | End |
| 16:12 | 17:25 |
| 19:10 | 19:23 |
| 21:10 | 21:16 |
| 26:19 | 28:10 |
| 29:20 | 29:24 |
| 30:12 | 31:6 |
| 31:7 | 31:17 |
| 32:6 | 33:25 |
| 35:2 | 35:15 |
| 36:16 | 39:11 |
| 39:15 | 41:5 |
| 41:24 | 43:5 |
| 44:3 | 45:4 |
| 46:8 | 47:15 |
| 50:14 | 51:18 |
| 52:8 | 52:19 |
| 53:22 | 53:25 |
| 58:24 | 59:5 |
| 61:2 | 61:16 |
| 62:6 | 62:23 |
| 62:24 | 64:9 |
| 64:19 | 65:13 |
| 65:25 | 69:3 |
| 69:5 | 70:5 |
| 70:6 | 70:17 |
| 71:7 | 73:5 |
| 78:25 | 80:19 |
| 81:24 | 83:16 |
| 83:21 | 87:4 |
| 87:5 | 87:11 |
| 89:7 | 92:2 |
| 99:25 | 100:8 |

| | |
|---|---|
| 103:2 | 105:3 |
| 108:13 | 110:15 |
| 110:16 | 111:9 |
| 112:5 | 112:21 |
| 113:8 | 113:18 |
| 117:7 | 117:17 |
| 121:8 | 122:8 |
| 128:2 | 128:8 |
| 128:9 | 128:24 |
| 129:23 | 131:23 |
| 132:4 | 133:20 |
| 135:24 | 138:20 |
| 140:25 | 142:6 |
| 145:7 | 151:10 |
| 152:24 | 153:5 |
| 154:9 | 155:17 |
| 155:24 | 156:10 |
| 156:11 | 156:13 |
| 156:14 | 156:21 |
| 156:22 | 159:10 |
| 159:25 | 161:17 |
| 164:21 | 165:23 |
| 165:24 | 166:8 |
| 167:15 | 168:25 |
| 169:13 | 169:25 |
| 170:7 | 171:2 |
| 173:12 | 176:8 |
| 176:9 | 177:5 |
| 177:20 | 178:14 |
| 178:15 | 178:22 |
| 180:11 | 181:5 |
| 181:6 | 181:19 |
| 183:18 | 183:25 |
| 184:10 | 184:18 |
| 186:10 | 186:24 |

| | |
|---|---|
| 187:11 | 187:25 |
| 188:14 | 189:16 |
| 189:21 | 190:25 |
| 191:21 | 192:14 |
| 193:9 | 196:11 |
| 199:7 | 199:16 |
| 202:24 | 203:21 |
| 207:10 | 208:19 |
| 215:16 | 217:7 |
| 217:22 | 218:5 |
| 234:16 | 236:5 |
| 236:11 | 240:13 |
| 241:3 | 241:10 |
| 241:11 | 242:25 |
| 250:21 | 251:17 |
| 261:23 | 262:6 |
| 263:21 | 264:9 |
| 264:10 | 264:18 |
| 266:21 | 267:21 |
| 274:21 | 278:21 |
| 275:12 | 275:23 |
| 278:22 | 279:5 |
| 280:7 | 292:16 |
| 292:23 | 295:2 |
| 295:24 | 297:20 |
| 298:2 | 304:6 |
| **Matthew Gibson** | |
| Start | End |
| 19:11 | 20:22 |
| 21:22 | 22:2 |
| 24:4 | 28:19 |
| 28:20 | 29:7 |
| 34:15 | 35:3 |
| 36:19 | 37:7 |

| | |
|---|---|
| 40:6 | 40:17 |
| 42:16 | 42:21 |
| 48:7 | 52:3 |
| 53:20 | 55:23 |
| 56:18 | 56:24 |
| 57:10 | 57:13 |
| 58:9 | 58:14 |
| 60:19 | 61:15 |
| 62:11 | 62:23 |
| 63:9 | 64:10 |
| 67:6 | 68:8 |
| 69:12 | 69:14 |
| 70:3 | 70:9 |
| 71:13 | 71:21 |
| 77:14 | 77:23 |
| 86:12 | 86:18 |
| 87:2 | 88:7 |
| 88:16 | 89:6 |
| 89:11 | 89:20 |
| 91:13 | 92:6 |
| 92:7 | 93:21 |
| 94:13 | 95:14 |
| 95:15 | 96:4 |
| 97:16 | 99:6 |
| 100:1 | 101:4 |
| 101:5 | 101:19 |
| 101:20 | 102:24 |
| 103:13 | 103:23 |
| 103:24 | 104:11 |
| 104:19 | 106:23 |
| 107:1 | 107:23 |
| 108:5 | 108:20 |
| 110:18 | 110:22 |
| 115:3 | 115:15 |
| 117:3 | 118:15 |

| | |
|---|---|
| 119:3 | 121:17 |
| 124:19 | 125:7 |
| 129:12 | 129:18 |
| 129:3 | 129:6 |
| 135:23 | 138:7 |
| 139:12 | 140:21 |
| 139:2 | 139:5 |
| 139:6 | 139:9 |
| 142:4 | 147:24 |
| 149:3 | 150:5 |
| 150:16 | 151:3 |
| 152:11 | 152:23 |
| 153:15 | 153:17 |
| 153:18 | 154:12 |
| 154:15 | 156:18 |
| 158:16 | 158:19 |
| 159:12 | 160:22 |
| 162:16 | 169:7 |
| 169:19 | 171:21 |
| 174:9 | 176:17 |
| 181:15 | 183:1 |
| 185:16 | 186:8 |
| 190:3 | 192:24 |
| 196:9 | 196:24 |
| 197:1 | 197:12 |
| 198:21 | 200:6 |
| 203:13 | 203:17 |
| 204:24 | 205:6 |
| 210:10 | 212:4 |
| 215:22 | 216:11 |
| 219:21 | 220:7 |
| 219:2 | 219:20 |
| 222:12 | 222:24 |
| 223:13 | 224:16 |
| 225:17 | 226:17 |

| 226:24 | 227:3 |
|--------|-------|
| 227:4 | 227:18 |
| 232:20 | 233:23 |
| 233:24 | 234:12 |
| 234:13 | 235:11 |
| 236:17 | 237:2 |
| 238:17 | 239:24 |
| 242:15 | 243:24 |

**Daniel Josephs**

| Start | End |
|-------|-----|
| 14:19 | 14:23 |
| 21:8 | 23:4 |
| 24:15 | 25:2 |
| 25:12 | 26:14 |
| 27:14 | 27:21 |
| 28:24 | 29:12 |
| 33:9 | 34:10 |
| 35:4 | 35:19 |
| 36:22 | 37:6 |
| 37:21 | 38:14 |
| 38:15 | 39:21 |
| 40:14 | 41:2 |
| 41:3 | 41:11 |
| 44:7 | 44:13 |
| 45:2 | 45:9 |
| 46:9 | 47:8 |
| 48:10 | 49:9 |
| 49:20 | 51:3 |
| 51:4 | 51:13 |
| 54:5 | 54:24 |
| 55:17 | 55:24 |
| 55:25 | 56:12 |
| 56:13 | 56:17 |
| 56:19 | 57:24 |

| | |
|---|---|
| 57:25 | 59:13 |
| 59:14 | 60:6 |
| 60:10 | 61:18 |
| 61:19 | 61:25 |
| 63:15 | 63:23 |
| 64:12 | 64:16 |
| 65:11 | 65:16 |
| 68:10 | 69:14 |
| 70:17 | 71:4 |
| 72:10 | 72:17 |
| 74:10 | 75:6 |
| 76:15 | 77:16 |
| 77:17 | 78:5 |
| 80:20 | 81:20 |
| 81:21 | 82:8 |
| 82:9 | 82:22 |
| 83:7 | 85:2 |
| 85:22 | 86:11 |
| 87:12 | 87:25 |
| 88:2 | 89:10 |
| 89:13 | 90:10 |
| 91:16 | 91:22 |
| 92:11 | 93:10 |
| 94:15 | 94:23 |
| 97:14 | 98:12 |
| 98:22 | 99:13 |
| 99:21 | 101:9 |
| 102:24 | 103:12 |
| 104:5 | 109:13 |
| 109:14 | 110:9 |
| 111:19 | 112:5 |
| 113:20 | 113:23 |
| 114:13 | 114:21 |
| 116:9 | 116:15 |
| 116:22 | 117:8 |

| | |
|---|---|
| 117:24 | 119:10 |
| 119:23 | 122:19 |
| 123:20 | 125:2 |
| 125:14 | 125:24 |
| 125:25 | 126:20 |
| 127:19 | 127:24 |
| 128:2 | 128;16 |
| 129:8 | 130:20 |
| 131:19 | 132:7 |
| 134:7 | 135:10 |
| 138:4 | 141:5 |
| 142:19 | 142:24 |
| 143:17 | 144:2 |
| 146:22 | 147:6 |
| 149:14 | 149:20 |
| 150:5 | 151:16 |
| 151:18 | 152:24 |
| 153:10 | 153:13 |
| 155:23 | 156:11 |
| 156:12 | 158:3 |
| 159:3 | 160:17 |
| 160:18 | 161:20 |
| 163:6 | 163:18 |
| 165:20 | 170:10 |
| 170:21 | 173:19 |
| 175:10 | 177:10 |
| 178:3 | 178:22 |
| 179:8 | 179:21 |
| 180:20 | 181:2 |
| 182:6 | 182:15 |
| 184:14 | 185:2 |
| 186:2 | 186:20 |
| 192:22 | 194:23 |
| 196:15 | 196:19 |
| 197:17 | 198:4 |

| | |
|---|---|
| 198:15 | 199:6 |
| 199:7 | 200:4 |
| 200:5 | 203:7 |
| 204:24 | 205:10 |
| 208:2 | 209:3 |
| 210:7 | 210:10 |
| 211:10 | 212:2 |
| 212:3 | 212:12 |
| 212:25 | 213:12 |
| 213:13 | 215:19 |
| 216:4 | 216:14 |
| 217:19 | 218:14 |
| 219:7 | 220:8 |
| 222:16 | 225:7 |
| 225:22 | 226:17 |
| 227:17 | 228:15 |
| 228:16 | 229:17 |
| 233:2 | 233:16 |
| 241:8 | 241:18 |
| 248:2 | 249:20 |
| 257:9 | 257:20 |
| 259:8 | 259:19 |
| 260:5 | 261:10 |
| 262:20 | 263:14 |
| 264:4 | 264:13 |
| 265:7 | 267:4 |
| 268:9 | 268:20 |
| 272:19 | 273:22 |
| 275:17 | 275:23 |
| 275:24 | 276:9 |
| 277:2 | 280:3 |
| 281:16 | 282:3 |
| 282:15 | 283:6 |
| 283:17 | 285:3 |
| 285:20 | 286:10 |

| 286:11 | 286:23 |
|--------|--------|
| 286:24 | 287:23 |
| 289:17 | 292:17 |
| 295:3  | 295:25 |
| 296:11 | 297:6  |
| 297:17 | 297:25 |
| 303:4  | 304:15 |
| 305:12 | 308:6  |
| 310:24 | 312:14 |
| 312:19 | 313:14 |
| 314:5  | 323:10 |
| 323:20 | 324:20 |

2.      Entering into this stipulation shall not constitute a waiver of any party's objections to such testimony except as follows:  Other than as set forth in Paragraph 4, Goldman Sachs shall not dispute that the foregoing testimony from the depositions of Matthew Gibson, Jean-Pierre Boudrias, and Daniel Josephs shall have the same effect as if the testimony were given by such deponent in the capacity of a corporate designee of Goldman Sachs in response to the Original Notice pursuant to Federal Rule of Civil Procedure 30(b)(6).

3.      Goldman Sachs will produce for a deposition a corporate designee and/or designees to testify on behalf of the organization pursuant to the revised deposition notice attached as Exhibit 1 (the "Revised Notice") pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "30(b)(6) Deposition").  Goldman Sachs' agreement to the topics or subtopics set forth in the Revised Notice shall not constitute a waiver—either express or implied—of any privileges or other protections from disclosure, including, without limitation, the attorney-client privilege and work product privilege.

4.      Within 14 days following the 30(b)(6) Deposition(s), if Goldman Sachs identifies any substantive inconsistency between specific testimony from the Prior Goldman Sachs

Depositions designated pursuant hereto and particular answers provided during the 30(b)(6) Deposition(s), Goldman Sachs may send Plaintiffs a letter explaining its intent to de-designate the applicable testimony from the Prior Goldman Sachs Deposition(s) such that the testimony no longer shall have the same effect as if the testimony were given by such deponent in the capacity of a corporate designee of Goldman Sachs in response to the Original Notice pursuant to Federal Rule of Civil Procedure 30(b)(6).  Such letter shall identify, for each portion of applicable testimony that Goldman Sachs seeks to de-designate:  (a) the purportedly inconsistent testimony provided at the 30(b)(6) Deposition(s); (b) a representation by Goldman Sachs' counsel that the purportedly inconsistent testimony provided at the 30(b)(6) Deposition is accurate; and (c) when the purported inconsistency is one based on objective fact, a representation that the testimony being de-designated is inaccurate.  Plaintiffs shall then, within 14 days, respond in writing to Goldman Sachs' letter stating whether Plaintiffs consent to each of Goldman Sachs' requested de-designations, and, if Plaintiffs do not consent to all such requested de-designations (which consent shall not be unreasonably withheld), explaining as to each requested de-designation to which Plaintiffs do not consent:  (y) why Plaintiffs believe that Goldman Sachs has not identified the requisite substantive inconsistency; or (z) why Plaintiffs believe that the portion of testimony being de-designated is accurate and the corresponding purportedly inconsistent testimony is inaccurate (including the record support for such belief).  If there remain disagreements between the parties regarding Goldman Sachs' requested de-designations, then on or before September 30, 2020, Goldman Sachs may file a letter motion with the Court requesting that the Court enforce this stipulation by de-designating the applicable testimony that Goldman Sachs requests be de-designated to which Plaintiffs did not consent, such that the identified testimony no longer shall have the same effect as if it were given by such deponent in the capacity of a corporate

designee of Goldman Sachs in response to the Original Notice pursuant to Federal Rule of Civil Procedure 30(b)(6).  Unless and until any such letter motion is granted by the Court, all of the testimony set forth in Paragraph 1 (other than de-designations proposed by Goldman Sachs for which Plaintiffs have not withheld consent, which de-designations shall take effect immediately following Plaintiffs' transmission of their response letter or, if Plaintiffs have not sent a timely response letter, on the 30th day following the 30(b)(6) Deposition(s)) shall have the same effect as if the testimony were given by such deponent in the capacity of corporate designee of Goldman Sachs in response to the Original Notice pursuant to Federal Rule of Civil Procedure 30(b)(6).

DATED:  July 10, 2020

Stipulated and agreed to by:

/s/ Andrew J. Rossman
Andrew J. Rossman
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
andrewrossman@quinnemanuel.com

*Counsel for Kearny Plaintiffs*

/s/ Jonathan Pickhardt
Jonathan Pickhardt
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
jonathanpickhardt@quinemanuel.com

*Counsel for Canyon Plaintiffs*

/s/ Frank J. Broccolo
Frank J. Broccolo
7083 Hollywood Boulevard
Los Angeles, CA 90028
Telephone: (310) 373-3305
frank@Broccololaw.com

*Counsel for Plaintiffs*

*/s/ Daniel C. Lewis*       
**SHEARMAN & STERLING LLP**
Adam S. Hakki
Daniel C. Lewis
Adam J. Goldstein
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
adam.hakki@shearman.com
daniel.lewis@shearman.com
adam.goldstein@shearman.com

*Counsel for the Underwriter Defendants*

SO ORDERED.

This _13__ day of __July_____, 2020.

P. Kevin Castel
United States District Judge

# EXHIBIT 1

## Goldman Sachs Rule 30(b)(6) Topics[1]

1.      Goldman's knowledge of the process by which the Preferred Shares acquired by the Canyon Plaintiffs and the Kearny Plaintiffs can be traced, as well as: (a) Goldman's knowledge of every account and the holder of every account in which the Preferred Shares acquired by Plaintiffs were deposited prior to being deposited into Plaintiffs' accounts; (b) the contents and creation history of the document bearing the bates stamp GS_SUNE_00406851, and whether and how that document reflects the tracing history of the Preferred Shares; (c) whether Goldman served as a "billing and delivering" Underwriter for the Preferred Offering, as the term was used by Daniel Josephs during his deposition; (d) whether and when the Preferred Shares passed through a syndicate account belonging to Goldman or an affiliate or subsidiary of Goldman; and (e) whether some or all of the Preferred Shares passed through a syndicate account belonging to Goldman or an affiliate or subsidiary of Goldman before going to the investors in the Preferred Offering.

2.      **[A]**    Any disclosures made by Goldman to wall-crossed investors in the Preferred Offering.

**[B]**    SunEdison's Disclosures in the Offering Documents, including, but not limited to: (i) Goldman's knowledge or awareness of any of the disclosures in the Offering Documents related to the First Margin Call and the Margin Loan (including its characterization as recourse or non-recourse), the Goldman Loan, the use of proceeds of the Preferred Offering, SunEdison's accounts payable, SunEdison's cash balances and use of cash committed for construction, and the effectiveness of SunEdison's internal controls over financial reporting (collectively, the "Disclosures"); (ii) all communications within Goldman or between Goldman

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Plaintiffs' Notice of Rule 30(b)(6) Deposition to Goldman Sachs & Co. dated July 25, 2019.

and others concerning or relating to any of the Disclosures in the context of the Preferred Offering; and (iii) any advice received by Goldman, the other Underwriter Defendants, or SunEdison concerning or relating to the Disclosures in the context of the Preferred Offering, including from in-house counsel, outside counsel, or auditors.

3.      Goldman's due diligence relating to or concerning the Preferred Offering specific to the following: (a) the Goldman employees and groups involved and their respective contacts at SunEdison; (b) as to the Commitments Committee memorandum for the Preferred Offering, the Goldman employees, groups, and outside parties involved in its preparation, and the work involved in its preparation; (c) the types of records maintained by Goldman of the due diligence performed, including how those records were shared internally at Goldman; (d) Goldman's policies and practices relating to or concerning due diligence, and facts relating to whether and the extent to which those policies or practices were followed in connection with due diligence relating to the Preferred Offering; (e) any third-party advice Goldman relied on in connection with due diligence relating to the Preferred Offering, including who gave the advice, when the advice was given, what the advice was, and—to Goldman's knowledge—the facts upon which such advice was based; (f) Goldman's communications with any consultants, creditors, or vendors of SunEdison in connection with Goldman's due diligence relating to or concerning the Preferred Offering, including (if there were no such communications) why such communications did not occur; (g) the purported due diligence described in, and contents of, the documents that were produced by Goldman that were cited in Goldman's Amended Response to Plaintiffs' Interrogatory No. 9; and (h) any due diligence concerning or relating to:  (i) the First Margin Call, including its disclosure, SunEdison's ability to pay the First Margin Call, and the sources of cash used to satisfy the First Margin Call; (ii) the disclosure of the Goldman Loan; (iii) SunEdison's liquidity, cash flows, cash

balances (including free or unrestricted cash and cash committed for construction projects), accounts payable balances, cost of capital, and/or access to financing; (iv) the characterization as recourse or non-recourse of the Margin Loan and Exchangeable Notes; (v) whether SunEdison was in compliance with its debt covenants under the Indenture for its 2.375% Convertible Senior Notes due 2022; and (vi) any due diligence that Goldman otherwise intends to rely on at trial.

4.     The Goldman Loan, including, but not limited to: (a) the terms of the Goldman Loan relating to collateral, use of proceeds, and the interest rate on the loan; (b) Goldman's knowledge or awareness of the fees paid by SunEdison in connection with the Goldman Loan; specifically, the amount of such fees, the recipient of payment for such fees, and the purpose for such fees; (c) the negotiations of the Goldman Loan, including how any proposed terms of the loan changed throughout negotiations, including all terms relating to collateral, use of proceeds, and the interest rate on the loan; (d) the timing of closing on the Goldman Loan; (e) any internal communications or opinions within Goldman that the proceeds of the Goldman Loan should not be used to fulfill SunEdison's obligations in connection with the First Margin Call; (f) Goldman's expectations as to how SunEdison would use the proceeds of the Goldman Loan; and (g) Goldman's knowledge or awareness as to how SunEdison used the proceeds of the Goldman Loan.

5.     Goldman's knowledge or awareness from June 30, 2015 until August 21, 2015 of SunEdison's liquidity, cash flows, cash balances (including free or unrestricted cash and cash committed for construction projects), accounts payable balances, and cost of capital, and/or access to financing, including:  (a) the sources of cash used to satisfy the First Margin Call; (b) SunEdison's treatment of available liquidity under its warehouse facilities in any financial model prepared by SunEdison on or after January 1, 2015; and (c) whether SunEdison was deferring or delaying payments on accounts payable.