**ABRAHAM, FRUCHTER & TWERSKY, LLP**

October 9, 2024

**By ECF Filing**

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007-1312

*[Handwritten: Submit a proposed Order within 7 days. SO ORDERED. /s/ Castel, USDJ 10-17-24]*

Re: *In re SunEdison, Inc. Securities Litigation*, No. 1:16-md-2742-PKC (S.D.N.Y.); *In re Terraform Global, Inc. Sec. Litig.*, No. 16-cv-07967-PKC (S.D.N.Y.) (the "Class Action")

Dear Judge Castel:

      We are Lead Counsel for Plaintiffs in the above-referenced Class Action and submit this letter-motion, pursuant to Local Civil Rule 7.1(d), to inform the Court that a second distribution of the Net Settlement Fund, created by the Settlement of the Class Action, is ready to proceed and to request the reopening of the Class Action for the limited purpose of the Court's consideration and approval of the Claims Administrator's request for the payment of its fees and expenses in connection with that second distribution.[1]

      On September 27, 2021, Your Honor issued an Order Authorizing Distribution of the Net Settlement Fund (the "Distribution Order"), providing for distribution of the Net Settlement Fund to those Class Members who submitted valid Proofs of Claim and were found to be Authorized Claimants, who would receive at least $20.00 in the distribution, as determined by the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq").[2] ECF No. 751. That Order further provided that the Court would retain jurisdiction over any further application or matter that may arise in connection with this Action. ECF No. 751 at 6. The Distribution Order was subsequently revised on May 24, 2022 (the "Revised Distribution Order"; ECF No. 755) and, as revised, directed by the Court to proceed. Epiq conducted a disbursement of the Net Settlement Fund to Authorized Claimants (the "Initial Distribution") on June 21, 2022. Pursuant to the Revised Distribution Order, a total of 2,851 claims were distributed via check or wire totaling $35,687,071.15. *See* Declaration of Jordan Broker in Support of a Second Distribution of the Net Settlement Fund ("Broker Decl."), ¶ 3, a copy of which is attached hereto as Exhibit A.

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court (ECF No. 265), as modified by the Settlement Modification Agreement dated September 19, 2019 (ECF No. 659-1), or as set forth in the Settlement Modification Agreement, or in the Notice of Pendency and Proposed Settlement of Class Action (ECF No. 315-1, Exhibit A). References to "ECF No." are to the docket for *In re: SunEdison, Inc. Sec. Litig.*, No. 1:16-md-02742 (PKC) (S.D.N.Y.).

[2] Pursuant to the Court's December 19, 2017 Order Granting Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 269), Garden City Group, LLC ("GCG") was appointed as the Claims Administrator in connection with the proposed Settlement of the above-captioned Action. GCG was acquired by Epiq on June 15, 2018 and has continued operations as part of Epiq.

Hon. P. Kevin Castel
October 9, 2024
Page 2 of 2

      As Epiq states, after the Initial Distribution, Epiq monitored the status of all checks issued, and to ensure that the maximum number of checks were cashed, Epiq implemented a campaign by email and telephone to follow-up with the Authorized Claimants whose checks were initially uncashed, either because they were returned to Epiq as undeliverable or because the Authorized Claimant simply had not cashed the check. *See* Broker Decl., ¶ 4. If the Authorized Claimant did not provide a telephone number, Epiq states that it used various local and national directories to locate telephone numbers. Epiq also stated it performed a National Change of Address search for Authorized Claimants whose checks were returned to Epiq by the United States Postal Service as undeliverable. *Id.* In connection with Epiq's campaign, Epiq urged Authorized Claimants to cash their checks and offered Authorized Claimants the opportunity to have their checks reissued if they lost or damaged their check or otherwise required a new check. Epiq reissued a check upon written instructions from an Authorized Claimant. *Id.*

      Epiq states that after performing its comprehensive outreach program and reissuing checks to Authorized Claimants for whom outreach was successful, as of September 17, 2024, payments totaling $35,532,271.04, or approximately 99% of the amount distributed in the Initial Distribution, have been cashed by or successfully wired to Authorized Claimants. As of September 17, 2024, $251,478.85 remains in the Net Settlement Fund from uncashed or returned awards from closed accounts and the amount held in reserve. *Id.* at ¶¶ 5-6.

      In addition, Epiq represents that it has unpaid fees and expenses for its work through August 31, 2024 and its estimate of fees and expenses to complete a second distribution of the Net Settlement Fund, which total $80,915.98. Accordingly, in connection with the second distribution, Epiq respectfully requests that the Court approves payment in total of $80,915.98 from the Net Settlement Fund that Epiq has incurred or expects to incur through the second distribution of the Net Settlement Fund. Broker Decl., ¶ 9. A copy of Epiq's unpaid invoices and its estimate of its fees and expenses for the second distribution are attached to the Broker Decl. as Exhibit A.

      If the Court approves the payment to Epiq of $80,915.98 and orders the second distribution of the Net Settlement Fund to proceed, Lead Counsel will so inform Epiq and direct it to carry out the Court's instructions.

      Plaintiffs are available at the Court's convenience to address any of these issues.

                                                 Respectfully submitted,

                                                 Lawrence D. Levit

cc: All counsel of Record (by ECF)